IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re:<br>GREGORY B. MYERS,<br><br>Debtor. | ) | Case No. 15-26033-MCR<br>(Chapter 7) |
| BRIAN KING, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROGER SCHLOSSBERG, TRUSTEE,<br><br>Defendant. | ) | Adv. No.: 24-00007 |

**NOTICE OF TRUSTEE'S PROPOSED COMPROMISE AND SETTLEMENT WITH KING PLAINTIFFS**

TO ALL PARTIES IN INTEREST:

PLEASE TAKE NOTE that Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers (the "Trustee"), and the Defendant in the above-captioned adversary proceeding, contemporaneously has filed his *Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs* (the "*Settlement Motion*") seeking authority to compromise and settle the following described matter upon those terms and conditions hereinafter noted.

**Background**

Gregory B. Myers ("the Debtor" or "Mr. Myers") filed a voluntary Chapter 11 bankruptcy petition on November 18, 2015 ("the Petition Date"). The Debtor remained in possession of the estate's assets and managed its financial affairs until February 22, 2017, when the case was

converted to a proceeding under Chapter 7 of the Bankruptcy Code . The Trustee thereafter was duly appointed as the Chapter 7 trustee herein.

In 2017, the Trustee was named as a nominal defendant in the matter of *Brian King, et al. v. Serv Trust, et al*., Case No. 439677-V (the "King Case") then commenced in the Circuit Court for Montgomery County, Maryland ("the State Court");which case subsequently was consolidated with the related matter of *6789 Goldsboro LLC v. Serv Trust, et al*., Case No. 451611-V (the "Goldsboro Case"; collectively, the King Case and the Goldsboro Case are hereafter referred to as "the State Court Cases"). Each of the State Court Cases concerns claims against Serv Trust, with the Goldsboro Case also concerning a claim against the Debtor.

In the King Case, which was designated the "lead" case in the State Court Cases, Brian King, Cristina King, and the Cristina and Brian King Children's Trust (the "King Plaintiffs") sought declaratory judgments that Serv Trust, a Maryland statutory trust, is the alter ego of the Debtor and, further, that Serv Trust's interest in 6789 Goldsboro LLC ("Goldsboro") has been redeemed by Goldsboro in accordance with the entity's governing documents.

In the Goldsboro Case, Goldsboro sued Serv Trust and the Debtor for the alleged breach of a promissory note and guaranty, respectively, and sought an award of monetary damages in excess of $1 million, including accrued interest.[1] The Goldsboro Case originally was brought as

---

[1] The factual milieu out of which the Goldsboro Case arose included the request of the Debtor, in his then-capacity as a co-trustee of Serv Trust, that Goldsboro make pre-petition loans totaling $635,000 to Serv Trust, which then forwarded the funds to the Debtor and his wife. On May 18, 2015, in connection with the foregoing loans, Serv Trust executed a Promissory Note in favor of Goldsboro while the Debtor executed a Guaranty Agreement in which he guaranteed Serv Trust's repayment of the loans made by Goldsboro. The Debtor, however, did not list Goldsboro as an unsecured creditor when he filed his bankruptcy petition six months later; which omission was one of the grounds upon which this Court denied a discharge to the Debtor under 11 U.S.C. § 727(a)(4)(A). *See In re Myers*, 2018 WL 4701387, *8 (Bankr. D. Md. Sept. 28, 2018) ("It is not believable that [the Debtor] simply forgot to include his largest unsecured creditor in the first several versions of his schedules when he had executed a personal guarantee in favor of that creditor six months prior to filing for bankruptcy and was requesting advances from the creditor up to and after filing his petition.").

an adversary proceeding in this Court, *see 6789 Goldsboro LLC v. Myers, et al.*, Adv. No. 18-407, but this Court entered an *Order of Abstention* on January 30, 2019 which ultimately led to the matter being refiled in State Court.

A trial in the consolidated State Court Cases was scheduled to commence on Tuesday, January 3, 2023. However, at approximately 4:30 p.m. on Friday, December 30, 2022 – just minutes before the close of business on the last business day before trial – the Debtor filed a notice of removal purporting to remove the action to the U.S. Bankruptcy Court for the Middle District of Florida, where the Debtor's later-filed and separate Chapter 13 case was pending at the time.[2] The King Plaintiffs immediately filed an emergency motion to remand, noting the various infirmities and inherent bad faith associated with Debtor's attempted removal at the eleventh-hour. On the morning of January 3, 2023, the Florida bankruptcy court remanded the case back to the Circuit Court for Montgomery County in time to allow for the trial of the State Court Cases to proceed as scheduled.

Following the conclusion of the trial on January 3, 2023 – at which evidence was presented showing that, *inter alia*, the Debtor and his wife received the extraordinary sum of $1,217,675.00 out of the $1,371,271.58 distributed by Serv Trust between March 10, 2011 and January 6, 2018 – or more than 88% thereof – the State Court adjudicated Serv Trust to be the alter ego of the Debtor as of and subsequent to the Petition Date. In a subsequent written order entered on January 12, 2023 ("the *Alter Ego Order*"), the State Court memorialized its ruling, holding, *inter alia*, that

[2] The Debtor's Florida bankruptcy case ultimately was dismissed on January 20, 2023. On that day, the U.S. Bankruptcy Court for the Middle District of Florida *sua sponte* entered an order which denied confirmation of the Debtor's proposed Chapter 13 plan, dismissed his Chapter 13 case with prejudice, and imposed a two-year bar on refiling, following the court's determination that Myers filed his Chapter 13 case in bad faith (as a tactic to delay and frustrate his creditors rather than as a means to repay them). *See In re Myers*, 2023 WL 350183 (Bankr. M.D. Fla. Jan. 20, 2023).

"Serv Trust is, and as of November 18, 2015 was, the alter ego of Gregory B. Myers" and that "Serv Trust is a disregarded entity, being the alter ego of Mr. Myers."

In its ruling, the State Court stayed all further proceedings in the State Court Cases as its determination that Serv Trust is the alter ego of the Debtor necessarily rendered the automatic stay of 11 U.S.C. § 362(a) effective as to all remaining causes of action therein. The State Court reasoned that, in light of its alter ego ruling, all claims against Serv Trust must be construed as claims against the Debtor's bankruptcy estate ("the Estate"). *Id*. As a result, the King Plaintiffs' remaining claim against Serv Trust, which seeks a declaration regarding the alleged redemption of Serv Trust's interest in Goldsboro (the "Redemption Claim"), was stayed by operation of 11 U.S.C. § 362(a) (as were Goldsboro's separate claim against Serv Trust in the Goldsboro Case along with its previously stayed claim therein against the Debtor).

Further, as a matter of law, immediately upon entry of the *Alter Ego Order*, Serv Trust and all of its assets became property of the Estate, pursuant to 11 U.S.C. § 541(a), subject to administration by the Trustee as the sole legal representative of the Estate pursuant to 11 U.S.C. § 323. As the *Alter Ego Order* has not been stayed and remains in full force and effect, the Trustee is now the sole person empowered to defend or otherwise act to deal with the remaining claims against Serv Trust in the State Court Cases, which by operation of law are now claims against the Estate.

On February 7, 2023, the Trustee filed in this Court a *Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* (the "*Settlement Procedures Motion*"), [Dkt. #1005], which sought approval of a procedural resolution that would enable the litigation of the Redemption Claim in this Court. The proposed settlement consisted of the following elements:

> (1) The King Plaintiffs and the Trustee would jointly file a stipulation in the State Court Cases pursuant to which the King Plaintiffs would dismiss without prejudice the Redemption Claim against Serv Trust;
>
> (2) In consideration of the foregoing dismissal, the Trustee would agree to toll the statute(s) of limitation applicable to the Redemption Claim *nunc pro tunc* to September 14, 2017, the date the King Case was filed in the State Court; and
>
> (3) The King Plaintiffs and the Trustee would endeavor in good faith to negotiate a resolution to the Redemption Claim and, if negotiations were not successful, the King Plaintiffs would refile the Redemption Claim as an adversary proceeding in this Court within thirty (30) days after the entry of an order approving the settlement.

On February 28, 2023, the Debtor filed a motion to dismiss or strike the Trustee's *Settlement Procedure Motion* ("the *Motion to Strike*"). [Dkt. #1010]. On March 14, 2023, the Trustee filed an opposition to the Debtor's *Motion to Strike*. [Dkt. #1013]. On December 11, 2023, this Court entered a detailed memorandum opinion and *Order* granting the Trustee's *Settlement Procedures Motion* and denying the Debtor's *Motion to Strike*. [Dkt. #1029].

Subsequent settlement negotiations between the parties failed to yield a settlement and, on January 11, 2024, the King Plaintiffs re-filed the Redemption Claim as an adversary proceeding in this Court ('the Adversary Case"). [Adv. Dkt. #1]. The Trustee filed an answer to the adversary complaint on April 15, 2024, [Adv. Dkt. #13], and the Court subsequently issued a *Scheduling Order* on April 26, 2024. [Adv. Dkt. #15].[3]

As the Adversary Case progressed, the King Plaintiffs and the Trustee resumed settlement negotiations. This latest round of negotiations ultimately proved to be fruitful as the parties now have agreed to the following compromise and settlement, subject to notice to creditors and approval by the Court, on the terms and conditions described below.

---

[3] On May 7, 2024, the King Plaintiffs and the Trustee filed a stipulation in the State Court Cases dismissing the Redemption Claim without prejudice.

**Proposed Compromise and Settlement**

The Trustee and the King Plaintiffs have agreed as follows:

(1) The King Plaintiffs will pay to the Trustee, for the benefit of the Estate, the sum of $150,000.00 (the "Settlement Payment") upon Court approval of the settlement, in order to redeem the entirety of Serv Trust's interest in Goldsboro and settle the Redemption Claim in the Adversary Case;

(2) Upon successful negotiation of the Settlement Payment by the Trustee, the parties will file a Stipulation of Dismissal in the Adversary Case dismissing all claims therein with prejudice; and

(3) The King Plaintiffs also will reimburse the Trustee for all reasonable legal fees and expenses that the Trustee incurs in connection with the litigation of any appeals taken by any party in the event that the *Settlement Motion* is granted by this Court (the "Appellate Legal Fees").

**Trustee's Analysis and Recommendation**

For the reasons set forth below, the Trustee, in the sound exercise of his judgment, believes that the above-proposed compromise and settlement is in the best interest of the Estate and all interested parties herein and should be approved.

**A. Applicable Legal Standards.**

Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve a compromise or settlement brought before it on motion by the trustee. Fed. R. Civ. P. 9019(a). In order to approve a settlement, a court must consider the following factors: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *In re Essex Constr., LLC*, 575 B.R. 648, 652-53 (Bankr. D. Md. 2017); *see also In re Bowman*, 181 B.R. 836, 843 (Bankr. D. Md. 1995).

It is not necessary for a bankruptcy court to conduct a "mini trial" or conclusively determine claims subject to a compromise. *See In re New Concept Housing, Inc.*, 951 F.2d 932, 939 (8th Cir. 1991); *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (S.D.N.Y. 1998). Nor is it necessary for the court to find that the proposed settlement constitutes the best result obtainable. *See In re Final Analysis*, *Inc*. 417 B.R. 332, 341-42 (Bankr. D. Md. 2009). Rather, the court need only canvass the issues to determine that the proposed settlement does not fall below the lowest point of reasonableness. *Id*. In doing so, the court does not substitute its judgment for that of the trustee. *See In re Bates*, 211 B.R. 338, 343 (Bankr. D. Minn. 1997). Ultimately, a bankruptcy court's decision to approve or reject settlement may be reviewed only for an abuse of discretion. *In re ASI Reactivation, Inc*., 934 F.2d 1315, 1323-24 (4th Cir. 1991).

**B. Analysis of the King Plaintiffs' Redemption Claim in the Adversary Case.**

The Trustee has thoroughly reviewed the available evidence related to the Redemption Claim asserted by the King Plaintiffs in the Adversary Case and evaluated the potential merits of the King Plaintiffs' request for a declaration that Serv Trust's interest in Goldsboro previously was fully redeemed by the King Plaintiffs. The Trustee also has evaluated the potential defenses available to him, including those defenses and arguments that previously were asserted by Serv Trust during the litigation of the State Court Cases.

It is the Trustee's informed opinion that he has a dim likelihood of prevailing on the merits should the Redemption Claim be tried in the Adversary Case. Thus, if the King Plaintiffs are successful in the Adversary Case, Serv Trust's interest in Goldsboro will be declared to have been redeemed, rendering this asset worthless to the Estate. The proposed compromise and settlement, by contrast, allows the Trustee to obtain a significant recovery for the Estate while limiting the Estate's exposure to the further expenditure of attorney's fees and litigation costs. A detailed explication of the Trustee's analysis is provided below.

**1. Relevant Background Regarding the Redemption Claim.**

In or about late 2012, the Debtor discovered a parcel of real property located at 6789 Goldsboro Road in Bethesda, Maryland (the "Property") that he thought would be suitable for development.[4] On the recommendation of an acquaintance, the Debtor approached Mr. King about financing the acquisition of the Property. At that time, the Debtor was heavily indebted to a myriad of creditors and facing the clear prospect of bankruptcy. He thus sought to conceal his involvement with, and investment in, the Property by acting through Serv Trust, his alter ego.

The Debtor, acting through Serv Trust, and the King Plaintiffs then formed the Goldsboro entity. Goldsboro's Operating Agreement provides for the King Plaintiffs, as Class A members of the LLC, to put up almost all of the money needed to acquire the Property and fund its development while affording Serv Trust (*i.e.*, the Debtor), the sole Class B member of the LLC, a period of three (3) years in which to make the project profitable or risk having its "sweat equity" redeemed by the King Plaintiffs. Goldsboro ultimately purchased the Property on July 18, 2013 for the price of $1.35 million.

Goldsboro's Operating Agreement provides that if all governmental approvals needed to subdivide the Property into at least nineteen (19) townhouse dwellings are not obtained by July 18, 2016, and the Class A members of Goldsboro do not elect to sell the Property, the Class A members may have the Property appraised in accordance with the terms of the Operating

[4] 6789 Goldsboro Road is a 5.23-acre parcel in Bethesda near MacArthur Boulevard and Glen Echo Park. The parcel is perhaps best known for its white, ranch-style mansion that was built in 1935 and was the former residence of Hollywood starlet, Ilona Massey, and her husband, Air Force Maj. Gen. Douglas Dawson, a prominent aide to President Harry S. Truman. *See 19 Townhouses May Replace Bethesda Home of Hungarian Star*, WTOP News (Sept. 19, 2014) (available at https://wtop.com/news/2014/09/19-townhouses-may-replace-bethesda-home-of-hungarian-star/).

Agreement.[5] If the appraised value of the Property is found to be less than the monies invested by the Class A members, the Class A members may cause Goldsboro to redeem the Class B member's interests in consideration of the company's prior distributions or other payments to the Class B member.

Unfortunately for Goldsboro, the necessary government approvals to permit the development of 19 townhomes on the Property were not obtained by July 18, 2016, or at any time thereafter. The Debtor, meanwhile, had become more cash-strapped as the project progressed, leading him to request that Mr. King contribute additional funds to Goldsboro which could then be loaned to Serv Trust and, in turn, to the Debtor, personally, in order to help him defray his ongoing personal expenses. Mr. King agreed and authorized Goldsboro to loan several hundred thousand dollars to the Debtor/Serv Trust. *See* footnote 1, *supra*.

In September of 2016, the King Plaintiffs offered to purchase Serv Trust's Class B shares for the sum of $2 million less repayment of the outstanding loan obligations Serv Trust owed to Goldsboro (for the loans received by Serv Trust for the Debtor's personal benefit). The King Plaintiffs' offer was memorialized in a Memorandum of Understanding ("MOU"), which required: (i) that the offer be accepted by September 12, 2016; and, (ii) if accepted, that closing occur by not later than October 7, 2016. Serv Trust, however, did not accept the MOU by September 12, 2016 and closing did not occur by October 7, 2016.

Several months later, in January 2017, after government officials had denied Serv Trust's bid to develop 19 townhouses on the Property, the Debtor emailed a copy of an executed MOU to

---

[5] The Operating Agreement provides that an appraisal of the Property occurs, *inter alia*, when the Class A members notify the Class B member of a demand for appraisal of the Property. Each class of members then has fifteen (15) days to appoint an MAI appraiser. If the two selected appraisers cannot agree on the value of the Property, then they shall appoint a third appraiser to undertake an additional appraisal to determine the value of the Property.

Mr. King and claimed that Serv Trust had timely accepted the buy-out offer. Mr. King rejected the belated tender of an executed MOU and, soon afterward, terminated the Debtor's role as manager of Goldsboro.

The King Plaintiffs then undertook to have the Property appraised. The appraisal obtained by the King Plaintiffs valued the Property as being worth between $1,000,000 and $1,325,000, which was far less than the approximately $3 million that the King Plaintiffs had invested in the project to that point in time.

On or about August 23, 2017, the King Plaintiffs formally notified Serv Trust of their election to have the Property appraised for purposes of determining the redemption value of Serv Trust's interest in Goldsboro and appointed an appraiser pursuant to the terms of the Operating Agreement. Serv Trust, however, did not respond as required under the Operating Agreement by appointing its own appraiser in response to the election made by the King Plaintiffs.

In the absence of a counter-appraisal by Serv Trust, and given that the appraisal obtained by the King Plaintiffs shows that the value of the Property is well-below the amount invested by the King Plaintiffs, the King Plaintiffs contend that this Court should declare that Serv Trust's interest in Goldsboro has been redeemed in consideration of prior distributions/payments to Serv Trust, pursuant to the Operating Agreement.

**2. Analysis of the Trustee's Potential Defenses to the Redemption Claim.**

The Trustee has concluded that the potential defenses to the Redemption Claim are not likely to be found to be meritorious.

**a. Whether the King Plaintiffs Properly Invoked and Followed the Appraisal Procedures in the Operating Agreement.**

Serv Trust argued in the State Court Cases that the King Plaintiffs did not properly follow the appraisal procedures set forth in the Operating Agreement because: (a) their appraisal was

dated six (6) days prior to the date they formally notified Serv Trust of their election to have the Property appraised; and (b) Serv Trust never appointed an appraiser. With respect to Serv Trust's first contention, the Trustee observes that there is nothing in the Operating Agreement which mandates that an appraisal must be performed *after* notice of an election is given. Rather, the Operating Agreement states that the appraisers selected by each party are to meet to determine whether they agree on the value of the Property. If they agree, the appraisers are to draft a joint report stating the value of the Property. If they disagree, the appraisers are to draft separate reports. The appraisers, however, are not precluded by the Operating Agreement from basing their opinion, or their separate report, on an appraisal conducted prior to the notice of election.

As to the second contention of Serv Trust advanced in the State Court Cases to the effect that it could prevent a redemption simply by refusing to appoint an appraiser, or by declining to cooperate in the appraisal process, the Trustee notes that the same violates the common law rule obligating parties to a contract to act in good faith with respect to their dealings thereunder. Pellucidly, the actions of Serv Trust in urging that that it effectively could render the appraisal provisions of the Operating Agreement nugatory simply by ignoring them constitutes the very essence of bad faith. The Operating Agreement afforded Serv Trust the right to appoint its own appraiser to value the Property in the event the appraisal process was invoked by the King Plaintiffs. By failing to appoint its own appraiser, Serv Trust arguably waived its right to participate in the appraisal process set forth in the Operating Agreement. *See, e.g., BarGale Indus., Inc. v. Robert Realty Co*., 275 Md. 638, 643, 343 A.2d 529, 533 (1975) ("waiver is the intentional relinquishment of a known right… It is elementary that either party to a contract may waive any

of the provisions made for his benefit").[6] Without a competing appraisal to challenge the appraisal performed by the King Plaintiffs' appraiser, there effectively was no disagreement among the parties as to the value of the Property (and, thus, no need for a third appraiser to become involved in the process). Thus, any argument that the King Plaintiffs did not adhere to the appraisal procedures set forth in the Operating Agreement is unlikely to succeed.[7]

**b. Whether Serv Trust Accepted the King Plaintiffs' Buy-Out Offer in the MOU.**

Next, any argument that Serv Trust accepted the buy-out offer memorialized in the MOU also is not likely to succeed. The MOU, by its express terms, required that the offer be accepted by September 12, 2016 and, if accepted, that closing occur by not later than October 7, 2016. Although the Debtor claimed in the State Court Cases that he timely signed the MOU on September 12, 2016 and thereafter mailed it to Mr. King, the Debtor's behavior after September 12, 2016 belies those representations. The Debtor made no effort to draft closing documents (nor did Mr. King, for that matter). There are no email communications from the Debtor acknowledging, or otherwise indicating, that the MOU was accepted (and no original, signed document was ever received by Mr. King). Rather, the email communications between the parties subsequent to Sept. 12, 2016 are focused on meetings with attorneys and advisors in connection with a possible resubmission to local authorities of Goldsboro's proposal to subdivide the Property (which would be of no concern to the Debtor if he, in fact, had timely accepted a buy-out). In any event, closing

---

[6] Unsurprisingly, the King Plaintiffs seek a declaration in the Adversary Case, that "Serv Trust waived its right to appoint an alternative appraiser under the Operating Agreement by not doing so on or before September 11, 2017."

[7] The Trustee suspects that Serv Trust chose not to appoint its own appraiser because it knew that any competent appraiser would not value the Property anywhere near $3 million invested by the King Plaintiffs, where there was no ability to subdivide the parcel in the manner sought by Goldsboro (in light of the denial of such subdivision approval by governmental authorities).

never occurred by the October 7, 2016 deadline expressed in the MOU (and there are no communications agreeing to extend the deadline).

The Trustee also notes that in order for this defense to prevail, the Trustee would have to call the Debtor as a witness at trial and the finder of fact would have to credit the Debtor's testimony against the foregoing evidence to the contrary. For the reasons discussed in greater detail below, the Debtor has no credibility as a witness and it is, therefore, extremely likely – if not certain – that this defense will fail.

**c. Whether the King Plaintiffs Needed to Obtain Serv Trust's Consent in Order to the Redeem Serv Trust's Interest in Goldsboro.**

Lastly, Serv Trust argued in the State Court Cases that Goldsboro could not redeem Serv Trust's interest without Serv Trust's consent.[8] This argument deserves short shrift as the Operating Agreement expressly provides, in relevant part, that "the *Class A Members shall have the unilateral right and authority (without the consent of the Class B Member*) to cause the Company to redeem the Class B Member's Membership Rights solely in consideration for the Company's previous distributions or other previous payments to the Class B Member" in the event that the appraised value of the Property is less than the Class A Members' cumulative investment.

**3. The Debtor's Lack of Credibility as a Witness.**

In any potential trial of the Adversary Case, the Debtor almost certainly would have to be called as a witness and, therefore, the credibility of any testimony he would give would be critically important to the Trustee's case. In light of this most critical element of any prospective trial in this cause, the Trustee has assessed the credibility of the Debtor in connection with his evaluation of the merits of the proposed compromise and settlement.

[8] Serv Trust suggested that the King Plaintiffs were required to call a meeting of Goldsboro's members at which the members would need to vote on whether to approve the redemption of Serv Trust's interest in Goldsboro.

The Trustee, individually and through counsel, has had the opportunity to observe the Debtor's demeanor on numerous occasions, both in court and outside of court. The Trustee has seen the Debtor address the Court and provide testimony in various contested matters and adversary proceedings over the course of this Chapter 7 case (and in the myriad of Chapter 13 cases filed by the Debtor and his spouse, Barbara Ann Kelly). The Trustee and his counsel also have had the opportunity to question the Debtor outside of court in depositions, in Rule 2004 examinations, and in § 341 examinations. The Trustee and his counsel also have reviewed transcripts of testimony the Debtor has given in other forums in other matters.

It is the Trustee's firm opinion that the Debtor is not a credible witness. The Debtor frequently is evasive when responding to questions and seldom gives a candid answer.[9] Indeed, the Debtor's penchant for giving conflicting testimony is well-documented. *See, e.g.*, *United States Trustee's Pre-Trial Statement*, Adv. No. 17-193, Dkt. #56, at p. 3 ("At the Meeting of Creditors, [the Debtor] testified that the monies he and Kelly received from Serv Trust were distributions for the benefit of their children, who are beneficiaries of Serv Trust. At his 2004 examination, the Debtor testified that the monies he and Kelly received from Serv Trust were loans, not distributions."); *Mem. Op.*, Adv. No. 17-193, Dkt. #94, at p. 21 ("Similarly, the line item for the Bethesda Property in the amount $3,860.96 included on his First Amended Schedule J conflicted with his 341 Meeting testimony that he was not making any post-petition payments on that property either.").

[9] This Court made similar observations when it converted the Debtor's case to Chapter 7. *See* Tr. of February 15, 2017 Hearing (Dkt. #711) at p. 301 ("It's troublesome to me that there were major omissions and major errors, and they were not brought to the foreground by the Debtor until caught… I do feel [it's] troublesome, especially because there was some obfuscation, that is refusal to answer certain questions, that might have revealed this. And that is troublesome.").

Further, this Court's previous determination "that Myers knowingly and fraudulently made false oaths in his bankruptcy case sufficient to deny him a discharge under § 727(a)(4)(A)," *see In re Myers*, 2018 WL 4701387, *8 (Bankr. D. Md. Sept. 28, 2018)," weighs heavily against the Debtor's credibility. *See also id.* at * 11 ("The numerous falsities indicate a cavalier attitude toward his schedules and a reckless disregard for the truth sufficient to deny him a discharge under § 727(a)(4)(A). His lack of candor and credibility left his creditors, the United States Trustee, and the Chapter 7 Trustee constantly playing catch up to get an understanding of his finances.").

Moreover, numerous courts, including this one, have concluded that the Debtor is a bad faith litigant which, in turn, further calls into question his trustworthiness and veracity. *See, e.g., In re Kelly*, 656 B.R. 541, 603 (Bankr. D. Md. 2023) ("Ms. Kelly filed this case as part of her and Mr. Myers' ongoing scheme to frustrate, hinder, and delay creditors and to cause creditors as much pain as possible along the way. This case is just the latest leg in a long journey designed to exploit and subvert the bankruptcy process."); *Kelly v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2022 WL 861395, *3-4 (D. Md. Mar. 23, 2022) ("First, the Court finds that Appellants Barbara Ann Kelly and Gregory B. Myers are acting in bad faith… It is plainly clear to this Court that Appellants' appeal tactics have delayed the adjudication of these matters and have prejudiced Appellees by having to incur costs and fees in responding to these appeals."); *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2020 WL 758151, *3, 5 (D. Md. Feb. 14, 2020) ("Myers has undoubtedly used (and abused) the judicial process to prolong proceedings in the bankruptcy matter and thus delay liquidation and distribution of Myers' assets… In this Court's view, Myers once again attempts, seemingly in bad faith, to manufacture further delay in the resolution of his claims.").

Accordingly, the Trustee believes that the Debtor is completely untrustworthy and offers no utility as a witness. As a result, the Trustee would not be materially aided by eliciting testimony

from the Debtor and, in fact, the Trustee's prospects at trial likely will be harmed if the Debtor is called as a witness.

**C. Other Considerations Informing the Trustee's Analysis and Recommendation.**

Even if the Trustee were to try the Adversary Case (at considerable expense) and prevail at trial, there is no guarantee that the Trustee thereafter would be able to liquidate Serv Trust's interest in Goldsboro for more than what is being offered in this proposed settlement. As Goldsboro is a private company, there is no readily accessible market in which the Trustee can liquidate Serv Trust's interest. Further, Serv Trust's interest still would be subject to the King Plaintiffs' ability to invoke the appraisal process to force a redemption. In other words, even if, for example, the Trustee prevails on grounds that the King Plaintiffs did not properly follow the appraisal procedures in 2017, the Trustee cannot prevent the King Plaintiffs from triggering a new round of appraisals following a trial. Given that current online Zillow and Redfin valuations of the Property are roughly between $1.8 - $2.0 million, it is clear that Serv Trust's interest in Goldsboro will be at serious risk of redemption even if the Trustee is successful at trial. This risk of redemption will make it extremely difficult, if not impossible, for the Trustee to market Serv Trust's interest to potential buyers. Thus, the settlement proposed herein is very attractive to the Trustee.

Finally, the Trustee is mindful of the Debtor's propensity to litigate nearly every action that is proposed to be taken by the Trustee and to appeal (and/or to seek reconsideration of) nearly every ruling made by this Court (and by the District Court) that the Debtor perceives to be adverse to his interests.[10] As a result, the Estate has incurred an extraordinary amount of administrative

[10] This is not an overstatement. Since the commencement of the instant Chapter 7 case, the Debtor and his spouse, Barbara Ann Kelly, have filed twenty (20) appeals to the District Court. *See Myers v. United States Trustee*, No. 17-CV-01218; *Kelly v. United States Trustee*, No. 17-CV-01239; *Myers v. Schlossberg, et al.*, No. 17-CV-02537; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, No. 17-CV-02781; *Kelly v. Schlossberg*, No. 17-CV-03846; *Myers v. Schlossberg*, No. 17-CV-03847; *Myers, et al. v.*

expenses defending against the Debtor's multitudinous (and often frivolous) appeals – none of which have proven successful. Accordingly, the Trustee must anticipate that the Debtor will oppose this proposed settlement and will file yet another appeal if the settlement is approved. To mitigate the expense to the Estate in these circumstances, the Trustee insisted that the King Plaintiffs bear responsibility for reimbursing the Trustee for all Appellate Legal Fees incurred in the event that the proposed settlement is approved by the Court. The King Plaintiffs have agreed to this provision as part of the proposed settlement and its value to the Estate cannot be understated. This provision insures that the Estate will reap the full benefit of the $150,000.00 Settlement Payment to be made by the King Plaintiffs, as the Estate will be insulated from the cost of litigating any appeals related to the settlement.

Accordingly, in consideration of the contemplated cost to litigate the Adversary Case through a contested trial and possible appeals, the concomitant risk of adverse rulings, and the omnipresent vagaries of litigation, the Trustee, in the exercise of his business judgment and for all of the reasons expressed above, believes that the proposed compromise and settlement with the

---

*Schlossberg, et al*., No. 18-CV-00336; *Myers v. Fitzgerald*, No. 18-CV-01417; *Myers v. Fitzgerald*, No. 18-CV-01630; *Myers, et al. v. Offit Kurman, P.A., et al.*, No. 18-CV-02536; *Myers, et al. v. Schlossberg*, No. 18-CV-03783; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, No. 19-CV-00245; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, No. 19-CV-00636; *Myers v. United States Trustee*, No. 19-CV-00637; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, *et al*., No. 19-CV-03677; *Myers v. Schlossberg*, No. 21-CV-01184; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, *et al*., No. 21-CV-01185; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, *et al*., No. 21-CV-01186; *Myers v. Specialized Loan Servicing, LLC*, *et al*., No. 22-CV-00778; *Myers v. King, et al*., No. 23-CV-03511-DLB. In addition, Mr. Myers and/or Ms. Kelly have filed six (6) further appeals to the Court of Appeals for the Fourth Circuit. *See Myers, et al. v. Offit Kurman, P.A., et al.*, Appeal No. 18-2144; *Myers v. United States Trustee*, Appeal No. 20-1261; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, *et al*., Appeal No. 20-2007; *Myers, et al. v. Offit Kurman, P.A., et al.*, Appeal No. 20-2309; *Kelly, et al. v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, *et al*., Appeal Nos. 22-1378 and 22-1379 (consolidated). The foregoing list does not include any of the appeals filed by Mr. Myers and/or Ms. Kelly in connection with the myriad of intervening Chapter 13 cases that they have commenced in Maryland, Florida, and Delaware.

King Plaintiffs is in the best interests of all parties-in-interest herein and, therefore, strongly recommends that the proposed compromise and settlement be approved.

**Manner of Objection**

Parties in interest objecting to the proposed action by the Trustee are to file such Objections in writing with the United States Bankruptcy Court, 6500 Cherrywood Lane, Suite 300, Greenbelt, Maryland 20770, by not later than twenty-one (21) days after the date of this Notice; with a copy of said Objection to be provided to the undersigned by the same date. Objections must specifically state the factual and legal grounds upon which such Objection is based. Hearings may be held before the United States Bankruptcy Court upon any such Objections as are filed, or the Court may determine the matter without a hearing. Further, the Court may conduct a hearing in its discretion regardless of whether any Objections are filed. Any party in interest filing an Objection may be required to be present at such hearing as may be held. If no Objection is filed within the period above-provided, the Court may proceed to consider the Debtor's proposed compromise and settlement as above-proposed without further notice to parties in interest. Parties in interest desiring further information should consult the Court file or communicate with the undersigned.

Date: December 30, 2024

Respectfully submitted,

SCHLOSSBERG | MASTRO

By: */s/ Frank J. Mastro*

Frank J. Mastro #24679
Roger Schlossberg
P.O. Box 2067
Hagerstown, MD 21742
(301) 739-8610
fmastro@schlosslaw.com
*Attorneys for Defendant,*
*Roger Schlossberg, Trustee*