# Exhibit A

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| BRIAN KING, *et al.* | : |
| Plaintiffs, | : |
| v. | :    Case No.: 436977-V |
| SERV TRUST, *et al.* | : |
| Defendants, | : |
| and | : |
| ROGER SCHLOSSBERG<br>*In His Official Capacity as Trustee*<br>*of the Bankruptcy Estate of Gregory Myers* | : |
| Nominal Defendant. | : |

**PLAINTIFFS' MOTION TO STAY PROCEEDINGS PENDING**
**DISPOSITION OF DEFENDANT'S SECOND BANKRUPTCY**

Come now Brian King ("Mr. King"), Cristina King ("Mrs. King"), and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (the "Trustee of the Children's Trust," with the trust itself being known as the "Children's Trust") (Mr. King, Mrs. King, and the Trustee of the Children's Trust collectively known as the "Plaintiffs" and each sometimes being known as a "Plaintiff"), by and through undersigned counsel, and move this Honorable Court to stay the above-captioned proceedings pending disposition of Defendant Gregory Myers' bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware.

### I. Introduction

There are only two non-nominal defendants in this case: Gregory Myers ("Mr. Myers") and Serv Trust. The Plaintiffs contend – both as an affirmative claim of their own and as an affirmative defense to the counterclaims of Serv Trust – that Serv Trust is the alter ego of Mr. Myers. Mr. Myers is now a debtor in two separate bankruptcy proceedings, in two separate judicial

1

districts. While the automatic stay no longer governs his first bankruptcy, since his discharge has been revoked on account of, *inter alia*, his extensive fraudulent conduct, it does currently attach to his second bankruptcy proceeding. And in the presence of that automatic stay, this case cannot meaningfully proceed.

Indeed, not only is Mr. Myers personally a party to this action, but Serv Trust – his alter ego – is the only other defendant herein. Governing law makes clear that in such a circumstance, where significant veil-piercing issues are implicated, the automatic stay extends to the non-debtor party (since such party is, legally speaking, an extension of the debtor himself). That is precisely the reality *sub judice*, and any effort to proceed with this case while dodging the veritable minefield of the automatic stay would be so fraught with legal peril and operative absurdities as to render the effort impractical and grossly inequitable.

## II. Factual Background

The factual background of this case is too extensive to set forth in sufficient detail herein, and the Plaintiffs incorporate by reference their First Amended Complaint, the Second Amended Complaint of Serv Trust (which is the subject of a pending motion to dismiss), their answer to the First Amended Complaint of Serv Trust, and the other pleadings comprising this file. In broad strokes, however, this matter concerns a real estate investment entity known as 6789 Goldsboro LLC ("Goldsboro") of which the Plaintiffs and Serv Trust were the original members.

The Plaintiffs originally sought herein a declaration that the membership of Serv Trust in Goldsboro has been redeemed by operation of the entity's operating agreement. Serv Trust, in turn, has filed three iterations of a counterclaim that alleges, generally speaking, contractual breaches and wrongful behavior on the part of one or more of the Plaintiffs.

As discovery in this case has progressed, however, it has become apparent that Serv Trust is actually the alter ego of its trustee, Mr. Myers, who used the trust vehicle to shield assets from

his numerous personal creditors. This has given rise to both an affirmative defense that Serv Trust lacks standing to pursue its counterclaims, as they are an asset of Mr. Myers' first bankruptcy estate, and a freestanding declaratory judgment claim establishing this alter ego construct so that Mr. Myers' bankruptcy trustee (also a party to this case, as a nominal defendant) may prosecute and defend the action accordingly.

To be sure, the alter ego issues are neither isolated nor lightly supported. The record herein shows, in fairly exacting detail, that Serv Trust was originally created by Mr. Myers' mother, for the supposed benefit of Mr. Myers' children. Mr. Myers has been a trustee of Serv Trust at all times relevant and, it appears, has exercised all decision making authority for Serv Trust – notwithstanding the nominal presence of a co-trustee – at all times relevant.

In or before 2009, Mr. Myers experienced financial difficulties and stopped paying the mortgages on numerous pieces of real property owned by himself, his wife, and/or him and his wife jointly. Following Mr. Myers' financial difficulties, Mr. Myers came to understand that his remaining assets, however great or meager, would eventually be subject to the attack and/or attachment of his creditors.

In or about 2013, Mr. Myers personally discovered the property ultimately acquired by Goldsboro, which was listed as being for sale, and which was being marketed as a single family home. Mr. Myers, having a background in the real estate industry, recognized the property to be on a parcel of land that could support additional dwelling units, and believed that parcel of land to be in a desirable location. Mr. Myers, owing millions of dollars to his creditors, facing the likely prospect of declaring bankruptcy in the coming years, and not having access to the funds requisite to acquire the property, sought out an investment partner and was introduced to Mr. King.

In negotiating a partnership with Mr. King, Mr. Myers did not want to take a subordinate

interest in the resulting entity in his own name, knowing that his creditors might be able to attach that interest, obtain a charging order against that interest, or otherwise take it from him. So instead of personally taking the interest in the resulting entity – an interest "funded" by the goodwill of Mr. Myers in finding the property, and the efforts Mr. Myers would expend managing Goldsboro – Mr. Myers indicated the interest would be held by Serv Trust. In accord with this arrangement, Serv Trust became the junior member of the resulting entity. Even though Mr. Myers was supposedly involved with the resulting entity in his role as a trustee of Serv Trust, he personally became the manager of the entity and oversaw efforts to assess development opportunities for the property, putting his own "sweat equity" into the project.

Early in the existence of 6789 Goldsboro, Mr. Myers approached Mr. King, indicated Mr. Myers needed money, and asked for a loan. Mr. King agreed to capitalize Goldsboro with monies to be loaned to Mr. Myers.

Critically, Mr. Myers asked that the loan be made to Serv Trust, instead of to him personally, but that the loan be given to him personally. From 2014 through 2016, Mr. Myers asked Mr. King to capitalize Goldsboro with money for loans to be made on at least twenty-eight (28) separate occasions, with the total of such loans equaling Six Hundred Thirty Thousand Dollars ($630,000.00) (the "Loans") and interest accruing on such loans. Many of the Loans were paid directly to either Mr. Myers or his wife, not to Serv Trust.

In asking for the Loans, Mr. Myers would often indicate the need in a personal regard – not in one aimed at any fiduciary obligation. By way of example, on April 22, 2016, Mr. Myers wrote to Mr. King, "Hey Brian - following up on our conversation the other day - I greatly appreciate you advancing June and July now ($30k) as the insurance company totally f'd me, and I'm on fumes here."

Mr. Myers followed up on April 25, 2016, "Brian - I'm dead in the water without the wire on/before May 2. Please reconsider and advance $15k on Monday May 2 (June advance), with the other $15k on May 8 (July advance). I wouldn't ask you to do this unless it was an emergency."

On June 9, 2016, Mr. Myers sent Mr. King another request for money, indicating that some of the money was needed for one of his children but that most of it was for other, completely unrelated things: "I only want to ask you for what I need to survive right now, which is $40k (which includes $15k to pay past tuition for Teddy so he can get his official transcript from Furman to transfer to Trinitiy; **$5k to keep my Chapter 11 alive**, $2,270 for monthly health insurance premiums; $3,500 in past due utilities; **$10k in legal fees for appeals**; food, gas, etc.)" (emphasis added).

It is believed Serv Trust was not, at the time, party to any litigation pending in any appellate court, and Serv Trust has never been a Chapter 11 debtor.

On July 14, 2016, Mr. Myers wrote to Mr. King, "I am sitting here bleeding waiting for Danielle - I have two checks that will be presented today totaling just **under $7k to an attorney - who, if my checks bounce, will withdraw from my appeal** - as well as my family's health insurance expired on July 1 and I am now past the grace period… I am respectfully requesting that you have Chris wire $10k this morning so I can cover these extremely critical payments while Danielle finishes her edits and we can get papers circulated. Holding up a $10k wire given where we are only hurts me." (emphasis added).

On May 16, 2016, Mr. Myers wrote to Mr. King, "Brian - I appreciate the June draw you sent on May 3, but I still need to get the $15k July draw early just to keep my head above water."

Even though Mr. Myers had personally guaranteed all of the Loans, he did not schedule Goldsboro as a creditor in his first bankruptcy and never mentioned his guarantee in his schedules

or any amendments thereto until such a time as Goldsboro entered an appearance in his bankruptcy proceedings. Both prior to, and during, his bankruptcy, Mr. Myers has used Serv Trust as a tool to access money from Goldsboro without that money becoming part of his bankruptcy estate or being otherwise subject to the attack or collection of his creditors or those of his wife (who has twice been a debtor in bankruptcy since Mr. Myers first became a debtor in bankruptcy).

This behavior is consistent with Mr. Myers' original goal of having the subordinate interest in Goldsboro be acquired by Serv Trust, and not in his own name or that of his spouse, so it would not be attackable by his creditors.

This behavior is also consistent with Mr. Myers' placing a large lien on one of his properties, in favor of Serv Trust (the "Lien"), with the goal of Serv Trust then being able to obtain funds from the sale of that property – for the personal use of Mr. Myers – before junior creditors of Mr. Myers could do so. The Lien became a source of early contention in Mr. Myers' bankruptcy case, as Mr. Myers sold the subject property, disputed nearly every lien on the property – except for Serv Trust's Lien – and made contradictory assertions about the size of the Lien, in an effort to deprive his creditors of money.

On February 15, 2017, following the filing of a motion to convert his first bankruptcy case from Chapter 11 to Chapter 7 (the "Motion to Convert"), filed by the United States of America through a trustee working in the Department of Justice, the United States Bankruptcy Court for the District of Maryland conducted a full evidentiary hearing on the Motion to Convert, at the conclusion of which the Court rendered an oral ruling converting the case to Chapter 7. As the United States Bankruptcy Court for the District of Maryland would later note, Mr. Myers' "failure to list Goldsboro in his initial schedules and his failure to disclose his personal guaranty of Goldsboro's advances to Serv Trust at the 341 Meeting was a significant factor in the Court's

decision to convert Myers' case."

On May 18, 2017, United States of America, by and through a trustee serving in the Department of Justice, brought an adversary proceeding in Mr. Myers' bankruptcy to have Mr. Myers' discharge denied (the "Motion to Deny Discharge"). On September 28, 2018, the United States Bankruptcy Court for the District of Maryland granted the Motion to Deny Discharge, issuing a lengthy written memorandum opinion (the "Denial Order").

In the Denial Order, the United States Bankruptcy Court for the District of Maryland observed "The timing of the loans from Goldsboro and the execution of the Goldsboro Guaranty, combined with Myers' obfuscation on his liability to Goldsboro at the 341 Meeting, are sufficient to find the requisite fraudulent intent for purposes of § 727(a)(4)... It is not believable that he simply forgot to include his largest unsecured creditor in the first several versions of his schedules when he had executed a personal guaranty in favor of that creditor six months prior to filing for bankruptcy and was requesting advances from the creditor up to and after filing his petition."

In the Denial Order, the United States Bankruptcy Court for the District of Maryland also observed "Myers was adamant at trial that every payment that he and/or Kelly ever received from Serv Trust was for the benefit of his children." Such testimony of Mr. Myers would have been untruthful in nature, as significant portions of such money were openly sought to pay Mr. Myers' legal fees in connection with various litigation matters (including his bankruptcy), as anecdotally established by the e-mails discussed above.

The Denial Order also observes, "the Court finds that the amount of Serv Trust's secured claim set forth on the Amended Schedule D was inflated and therefore, was a false claim and a false oath under § 727(a)(4)," going on to note that Mr. Myers seemed inclined to use the Serv Trust Lien as a means of receiving money from the proceeds from a sale of property until such a

time as Goldsboro – an unscheduled creditor – entered an appearance in this case and foreclosed that possibility.

The Denial Order also finds that Mr. Myers did not keep records of the money he received from Goldsboro (which was supposedly being loaned to Serv Trust) or of how that money was spent, even though he insisted (untruthfully) that it was spent on his children. Goldsboro filed a declaratory judgment action in the United States Bankruptcy Court for the District of Maryland, seeking a declaration that Serv Trust is Mr. Myers' alter ego (the "Bankruptcy Declaration Case"). On January 30, 2019, the United States Bankruptcy Court for the District of Maryland issued an order abstaining from the Bankruptcy Declaration Case and indicating it is more properly determined as part of the above-captioned action in this Honorable Court.

Then, in late February, Mr. Myers – in what one can only surmise to be an effort to forum shop his bankruptcy problems away from the court which issued the aforementioned written opinions – filed a second bankruptcy petition, this time in Delaware. Commensurate therewith, he docketed a suggestion of bankruptcy in this case. *See* DE #105.

**III.** **Argument: The Alter Ego Issues Permeating this Case Necessitate its Stay**

It is well settled that where the identity of a bankruptcy debtor and a third party defendant are so intertwined as to raise veil-piercing or alter ego issues, the automatic stay extends to cover the non-debtor party. Here, the trustee from Mr. Myers' first bankruptcy is already a party to this case, given the intertwined nature of his assets and those of Serv Trust. But unless and until the trustee from his second bankruptcy can also be joined herein – which will require obtaining stay relief and the permission of a bankruptcy court in another state – this case simply cannot proceed.

"The automatic stay of 11 U.S.C. § 362(a)(1) prevents the 'commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement' of the bankruptcy case." *Dean v. Trans World*

*Airlines, Inc.*, 72 F.3d 754, 755 (9th Cir.1995). "[A]ctions taken in violation of the automatic stay are void." *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir.2000) (citing *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992)). It is well established that non-bankruptcy courts have concurrent jurisdiction with the bankruptcy court to determine the scope of the automatic stay. *See In re Baldwin-United Corp. Litig.*, 765 F.2d 343 (2d Cir.1985); *see also In re Colasuonno*, 697 F.3d 164, 172 n. 4 (2d Cir.2012).

By its terms, the automatic stay applies to actions against debtors, debtors' property, or estate property. Similarly, however, the stay also applies to non-debtors "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie Ltd. v. Nygard International ("Queenie")*, 321 F.3d 282, 287 (2d Cir.2003). Examples of actions where a claim will have an "immediate adverse economic consequence on the debtor's estate" include (1) "a claim to establish an obligation of which the debtor is a guarantor;" (2) "a claim against the debtor's insurer;" and (3) "'actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant.'" *Id.* at 288–89 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986)); *see also In re Ladieu*, 2011 WL 748566, at *19 (Bankr. D. Vt. 2011); *Ng v. Adler*, 518 B.R. 228, 246 (E.D.N.Y. 2014).

Here, Mr. Myers is the alter ego of Serv Trust, and under the facts presented, this creates such an identity between Mr. Myers and Serv Trust that a judgment in favor of the Plaintiffs against Serv Trust would be a judgment in favor of the Plaintiffs against Mr. Myers. *See Queenie*, 321 F.3d at 288 (applying the stay to a non-debtor corporation wholly owned by the debtor because adjudication of a claim against the non-debtor corporation would have an immediate adverse economic impact on the debtor); *see also In re Ladieu*, No. 07-10868, 2011 WL 748566, at *19.

Because of the nature of the Plaintiffs' allegations and claims it is not possible to draw a meaningful distinction between claims asserted against Mr. Myers and claims asserted by/against Serv Trust. *See Hittle v. City of Stockton, Cal.*, 2012 WL 3886099, at *3 (E.D. Cal. 2012) (citing to *Lewis v. Russell*, 2009 WL 1260290, at *2 (E.D.Cal. May 7, 2009)).

Ruling on issues concerning the liability of Serv Trust would require the court to consider the possible liability of Mr. Myers in violation of bankruptcy stay. *Id.* Therefore, the "'identity of interests' [between Mr. Myers and Serv Trust] provides the special or 'unusual circumstances' which justify an order that stays proceedings against" Serv Trust. *See Hittle v. City of Stockton, Cal.*, 2012 WL 3886099, at *3 (citing to *In re Family Health Servs., Inc.*, 105 B.R. 937, 942 (C. D. Cal.1989)).

The "adverse economic consequence" requirement, as articulated in *Queenie* and as derived from *Robins*, has been construed to include any perceptible economic harm to a non-party debtor's tangible or intangible property interest. *In re Adler*, 494 B.R. 43, 57 (Bankr. E.D.N.Y. 2013); *Stephen Inv. Secs. v. SEC*, 27 F.3d 339, 342 n.5 (8th Cir.1994); *N. Star Contracting v. McSpedon (In re N. Star Contracting Corp.)*, 125 B.R. 368, 370 (Bankr.S.D.N.Y.1991).

Since *Robins* and *Queenie*, courts have found the requisite economic harm to an individual debtor when the veil of a non-debtor corporation is pierced based on the alter ego doctrine, as the individual debtor has thereby been rendered personally liable for the relevant corporate debts. *In re Adler*, 494 B.R. 57-58; *S.I. Acquisition, Inc. v. Eastway Delivery Serv. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1147 (5th Cir.1987); *In re Kuecker Equip. Co.*, 338 B.R. 52, 60–61 (Bankr. W.D. Mo.2 006). Courts have regularly considered piercing the corporate veil or the relationship between the parties in analyzing whether the automatic stay should be extended to a non-debtor. *Ng v. Adler*, 518 B.R. 228, 247 (E.D.N.Y. 2014); *See, e.g., In re Ladieu*, 2011 WL 748566,

at \*19 ("Ladieu is the sole member of Galadieu, and under the facts presented, this creates such an identity between Ladieu and Galadieu that a judgment for Rentreak against Galadieu for default under the Agreement would be a judgment in favor of Rentreak against Ladieu."); *M.E.S., Inc. v. M.J. Favorito Elec., Inc.*, No. 08-CV-0183, 2010 WL 959604, at \*2 (E.D.N.Y. Mar. 15, 2010) (finding that there was "no reason to distinguish this case from Queenie" because it was undisputed that debtors wholly owned the corporations to which the automatic stay was sought to apply).

"Critically, when a corporate veil is so pierced, the controlling debtor's liability attaches not as of the issue date of any formal piercing judgment; rather, it had attached at the moment in time in which the factual elements of the piercing remedy, as dictated by governing law, had materialized." *In re Adler*, 494 B.R. 58. "Consequently, so long as the facts necessary to establish a debtor's liability pursuant to [the state's] piercing doctrine arose prepetition, *Queenie* 's "immediate adverse economic consequences" test had been triggered prepetition, and the automatic stay protected any non-debtor alter ego corporation from further judicial action, just as surely as it shielded the individual debtor, even though its status as an alter ego had not yet been ascertained." *Id.*; *see Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline)*, 472 B.R. 98, 103 (B.A.P. 10th Cir.2012). As such, "if two judicial determinations have been made—(1) one or more non-debtor corporations has been found liable for a prepetition debt on a cause of action asserted in a post-petition proceeding, and (2) the veil between these corporate alter egos and the non-party debtor has been pierced—the § 362(a)(1) stay was violated by the post-petition proceeding." *In re Adler*, 494 B.R. 58. This finding hold true "regardless of any knowledge by the issuing court or plaintiff and in spite of a debtor's formal severance from the proceeding." *Id.*; *see, e.g., Secs.*

*Investor Prot. Corp. v. Bernard Madoff Inv. Secs.*, 460 B.R. 106, 122 (Bankr. S.D. N.Y.2011); *Tucker v. Am. Int'l Grp.*, 745 F.Supp.2d 53, 63–64, 64 n.15 (D. Conn. 2010).

Here, the facts necessary to establish Mr. Myers' liability arose prepetition. Serv Trust was but an indivisible extension of Mr. Myers before this state court action began. Given that Serv Trust was never anything but Mr. Myers' alter ego, Mr. Myers was always the one real defendant contemplated in *Robins* and *Queenie*. Consequently, *Queenie*'s "immediate adverse economic consequences" test was triggered prepetition, and the automatic stay protects any non-debtor alter ego—Serv Trust—from further judicial action, just as surely as it shields the individual debtor, even though its status as an alter ego has not yet been ascertained. *See, e.g., In re Adler*, 494 B.R. 59.

Accordingly, pursuant to the *Robins* and *Queenie* line of cases, Mr. Myers' status as alter ego of Serv Trust would render any state court decision against Serv Trust a violation of 11 U.S.C. § 362(a)(1). *See, e.g., In re Adler*, 494 B.R. 59, *In re Winer*, 158 B.R. 736, 743 (N.D.Ill.1993); *In re Metal Ctr., Inc.*, 31 B.R. 458, 462–63 (Bankr.D.Conn.1983); *Funding Sys. Railcars, Inc. v. Pullman Std., Inc.*, 34 B.R. 706, 709 (N.D.Ill.1983). Since § 362(a)(1) plainly prohibits the "continuation of ... a judicial ... action or proceeding against the debtor," Mr. Myers' status as an alter ego of Serv Trust renders the state court suit a violation of the stay. 11 U.S.C. § 362(a)(1); *In re Adler*, 494 B.R. 59; *In re Pitts*, 2009 WL 4807615, at *3–4. As a violation of the automatic stay, any proceedings herein would be *void ab initio*. *In re Adler*, 494 B.R. 59 (citing *Rexnord Holdings v. Bidermann*, 21 F.3d 522, 527 (2d Cir.1994)).

Furthermore, the consequence of an alter ego determination is not simply the imposition of personal liability on Mr. Myers for the obligations of Serv Trust. Rather, since Serv Trust both lacked an existence separate from the person who controlled it and functioned as less than a bona

fide independent entity during the relevant time period, the acts of Serv Trust are actually the acts of the controlling individual— Mr. Myers. *See Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp.*, 833 F.2d 418, 424 (2d Cir.1987); *Doctor's Assocs. v. Distajo*, 66 F.3d 438, 453–54 (2d Cir.1995) (quoting *Fisser v. Int'l Bank*, 282 F.2d 231, 234 (2d Cir.1960)), *aff'd*, 89 F.3d 109 (2d Cir.1996), *cert. denied*, 517 U.S. 1120 (1996). Accordingly, given the alter ego issues raised herein, the actions and assets of Serv Trust were always, as a matter of fact and law, the actions and assets of the Mr. Myers as an individual.

### IV.  Argument: In the Alternative, the Court Should Utilize its Equitable Discretion to Stay Proceedings Against Serv Trust

In the event that the Court finds that Serv Trust is not covered by the automatic stay, this Honorable Court may still invoke its discretionary authority to stay the proceedings against *sub judice*. Such a stay would be well supported on equitable grounds, as continuing this litigation without Mr. Myers would invite only a parade of inequitable absurdities.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re Mut. Funds Inv. Litig.*, 2011 WL 3819608, at *1 (D. Md. 2011) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n. 6, (1998). Determining whether to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *In re Mut. Funds Inv. Litig.*, 2011 WL 3819608, at *1 (quoting *Landis*, 299 U.S. at 254–55). In striking this balance, courts look to factors such as the length of the requested stay, the hardship that that the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative

litigation. *In re Mut. Funds Inv. Litig.*, 2011 WL 3819608, at *1 (citing *Vasvari v. Rite Aid Corp.*, 2010 WL 3328210 (M.D. Pa. 2010).

Significant factors weigh in favor of this Honorable Court utilizing its equitable discretion to stay proceedings against Serv Trust. Given that Serv Trust was never anything but Mr. Myers' alter ego, Mr. Myers is an indispensable party in this matter and proceeding against Serv Trust alone would severely prejudice the Plaintiffs. Given that Serv Trust both lacked an existence separate from the person who controlled it and functioned as less than a bona fide independent entity during the relevant time period, the acts of Serv Trust are actually the acts of the controlling individual— Mr. Myers. As such, should a trial ensue without Mr. Myers, the Plaintiffs' claims nonetheless dictate that the trial will center around Mr. Myers' wrongful conduct.

Moreover, judicial economy concerns clearly indicate a stay is appropriate because the claims and parties are so interrelated. Proceeding against Serv Trust now would result in a second, nearly identical, litigation of the issues at a later date once Mr. Myers is able to proceed. For example, Mr. King King would have to unnecessarily be subject to deposition twice – once by counsel for Mr. Myers' alter ego of Serv Trust, and once by counsel for Mr. Myers – resulting in myriad potential absurdities and inequitable oddities.

Taking all of these factors into consideration, staying the proceedings against Serv Trust is undoubtedly the most equitable action. And, candidly, given that Mr. Myers' new bankruptcy appears to be a sham proceeding likely subject to dismissal, it is reasonably anticipated a stay need not last that long in any event.

V. **Conclusion**

WHEREFORE, the Plaintiffs respectfully pray this Honorable Court stay the above-captioned proceedings pending disposition of Defendant Gregory Mr. Myers' bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware.

Respectfully submitted,

THE VERSTANDIG LAW FIRM, LLC,

*/s/ Maurice B. VerStandig*

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: 301-444-4600
Facsimile: 301-576-6885
E-mail: mac@mbvesq.com
*Counsel for the Plaintiffs*

## REQUEST FOR HEARING

Pursuant to, and in accord with, Maryland Rule 2-311(f), the Plaintiffs request a hearing on their Motion to Stay.

Maurice B. VerStandig, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2019, I caused a true and correct copy of the foregoing paper to be served upon the following persons via First Class Mail, postage prepaid:

Dominic J. Souza, Esq.
Souza LLC
2543 Housley Road
Annapolis, Maryland 21401
*Counsel for Serv Trust*

Frances Wilburn, Esq.
Offit Kurman, P.A.
4800 Montgomery Lane
Suite 900
Bethesda, Maryland 20814
*Counsel for 6789 Goldsboro LLC*

15

Roger Schlossberg, Esq.
*In His Official Capacity as Trustee*
*of the Bankruptcy Estate of Gregory Myers*
18421 Henson Boulevard
Suite 201
Hagerstown, Maryland 21742

Michael B. Joseph, Esq.
*In His Official Capacity as Trustee*
*of the Second Bankruptcy Estate of Gregory Myers*
824 Market Street
P.O. Box 1351
Wilmington, DE 19899

_____
Maurice B. VerStandig, Esq.