# Exhibit B

55

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
------------------------------X
                              :
BRIAN KING,                   :
                              :
        Plaintiff,            :
                              :
             v.               :        Civil No. 436977
                              :
SERV TRUST,                   :
                              :
        Defendant.            :
                              :
------------------------------X
```

MOTIONS HEARING

Rockville, Maryland                    September 23, 2019

DEPOSITION SERVICES, INC.
12321 Middlebrook Road, Suite 210
Germantown, Maryland 20874
(301) 881-3344

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
-----------------------------X
                             :
BRIAN KING,                  :
                             :
          Plaintiff,         :
                             :
               v.            :        Civil No. 436977
                             :
SERV TRUST,                  :
                             :
          Defendant.         :
                             :
-----------------------------X
```

Rockville, Maryland

September 23, 2019

WHEREUPON, the proceedings in the above-entitled

matter commenced

BEFORE:   THE HONORABLE DEBRA L. DWYER, JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

MAURICE B. VERSTANDIG, Esq.
The Verstandig Law Firm, LLC
9812 Falls Road #114-1460
Rockville, Maryland 20854

FOR THE DEFENDANT:

DOMINIC J. SOUZA, Esq.
Souza, LLC
2543 Housley Road
Annapolis, Maryland 21401

## I N D E X

| | Page |
|---|---|
| Judge's Ruling | 10 |

1                        P R O C E E D I N G S

2              THE BAILIFF:  All rise.  Circuit Court for Montgomery

3    County is now in session.  The Honorable Debra Dwyer presiding.

4              THE COURT:  Good morning, everyone.  You can be

5    seated.  Thank you so much.

6              All right.

7              FEMALE CLERK:  Calling civil case number 436977 --

8              THE COURT:  Now, wait a minute.  I want to call just

9    a couple matters first.  I just have to put one thing on the

10   record.  So I'm going to call these, the criminal cases.

11             THE CLERK:  Calling Civil Case No. 436977, Brian

12   King, et al. versus Serv Trust, et al.

13             MR. VERSTANDIG:  Good morning, Your Honor.  Maurice

14   Verstandig on behalf of Brian King, Cristina King, and the

15   Christina and Brian King Children's Trust.

16             THE COURT:  All right, good morning.

17             MR. PELLETIER:  Good morning, Your Honor.  Eric

18   Pelletier here on behalf of 6789 Goldsboro, LLC.

19             THE COURT:  Good morning.

20             MR. PELLETIER:  Good morning.

21             MR. MASTRO:  Good morning, Your Honor.  Frank Mastro

22   on behalf of Roger Schlossberg, Chapter 7 bankruptcy trustee.

23             THE COURT:  Good morning.

24             MR. DUNBAR:  Good morning, Your Honor.  Justin Dunbar

25   on behalf of Serv Trust.

1          MR. ANDRES:  Good morning, Your Honor.  Ben Andres on

2     behalf of Mr. Myers.

3          THE COURT:  Okay.  Good morning, all of you.  Okay.

4     You can all have a seat if you'd like.  So we're here on a

5     couple of motions.  We have -- the first one is Docket Entry

6     No. 131, which is 6789 Goldsboro, LLC's motion to compel and

7     for sanctions against defendant Greg Myers for failing to

8     appear at his deposition.  I think the parties have agreed in

9     our conference call that this motion is now moot.  Is that

10    right?

11         MR. PELLETIER:  Your Honor, Eric Pelletier for 6789.

12    Just for the record, we withdrew that motion, so that is

13    correct.

14         THE COURT:  So it is withdrawn?

15         MR. PELLETIER:  It is withdrawn.  We withdrew it

16    thinking we were going to be in trial today.

17         THE COURT:  Okay, so that matter is resolved.  So now

18    we'll move to Docket Entry 163, which is defendant Gregory

19    Myers's amended motion to dismiss 6789 Goldsboro, LLC's amended

20    complaint.  And at Docket Entry 185 is Goldsboro's response.

21    So I have -- before we get started, I just want you to know, my

22    clerk and I have read all the pleadings since we spoke.  We

23    have them all here in front of me.

24         My clerk and I have talked about the issues.  He's

25    prepared a memo for me.  So I think I'm very familiar with the

1  arguments that you've raised.  So with that said, I'm happy to

2  hear from you.  Happy to hear any arguments that you want to

3  highlight for me, any case law, but please know I have read

4  everything.  I have a nice chart here of all of the arguments,

5  particularly when we get into the second motion at Docket Entry

6  164, which is a little more complex.

7          But with that said, I'm happy to hear from everyone.

8  But please know I have read it all and I think I know what the

9  issues are.  So if you want to highlight anything or remind me

10 of anything, I'm happy to hear from you.  So with that said,

11 Mr. Andres, this is Mr. Myers's motion to dismiss.  So I'm

12 happy to hear from you.  And then I'm happy to hear from Mr.

13 Pelletier and anyone else who would like to join in.  So Mr.

14 Andres?

15          MR. ANDRES:  Your Honor, with respect to 6789

16 Goldsboro, LLC's complaint, we had -- Mr. Myers had raised two

17 issues in the motion to dismiss.  One of them involved the

18 automatic stay of the bankruptcy court.  Recently within the

19 past two weeks, Mr. Myers has dismissed the Chapter 13

20 bankruptcy.  So Mr. Myers does believe that that is moot, so we

21 won't be pursuing that any further.

22          THE COURT:  Okay, so the argument that you made,

23 which was your initial argument, which I had kind of referred

24 to as the stay argument, you believe is no longer applicable?

25          MR. ANDRES:  That is correct.  And I don't believe I

1  have anything to add to what you've seen in the motion from the

2  claim, so I don't think I would require any further time.

3          THE COURT:  All right, so just for the record, in

4  Docket Entry 163, which is Defendant Myers's amended motion to

5  dismiss Goldsboro's amended complaint, there were two arguments

6  raised in support of the motion to dismiss.  The first was what

7  I'm calling and my clerk and I are calling the stay argument.

8  And that is that Myers was alleging that Goldsboro violated the

9  stay that was put in place.  Oh, go ahead.

10         MR. ANDRES:  Mr. Myers wanted me to --

11         THE COURT:  Is this Mr. Myers?

12         MR. ANDRES:  This is Mr. Myers.

13         THE COURT:  So Mr. Myers, do you want to speak to

14  your counsel?

15         MR. ANDRES:  He wants to come and sit here, though.

16         THE COURT:  Sure, that would be great.

17         MR. ANDRES:  But I just want to clarify that in terms

18  of this case for right now, we don't believe that this would --

19  the stay would prevent that case from moving forward.

20         THE COURT:  I understand.

21         MR. ANDRES:  We don't have any argument with regard

22  to any violation of that --

23         THE COURT:  I understand.  So the first argument that

24  you raised was that Goldsboro violated the automatic stay that

25  had been put in place and you articulated that argument very

1  clearly and your position now today that because the bankruptcy

2  I think you said was denied -- is that right?

3          MR. ANDRES:  Voluntarily withdrawn.

4          THE COURT:  Okay, so it was voluntarily withdrawn.

5  Therefore the arguments related to the stay, for purposes of

6  Docket Entry 163 are -- you're not making those arguments, am I

7  right?

8          MR. ANDRES:  That is correct.

9          THE COURT:  Okay, and so the second argument that you

10  raised in Docket Entry 163 was Myers alleged that Goldsboro's

11  complaint failed to state a claim for breach of contract.

12  There really wasn't any argument elaborated there, but I think,

13  what I got, the gist of Mr. Myers argument was that there was

14  no contract because there was no meeting of the minds.  And so

15  with that, I will turn to -- let's see here -- Mr. Pelletier.

16          MR. PELLETIER:  Thank you, Your Honor.

17          THE COURT:  So first the stay argument, I don't think

18  I need to hear from you on that.  But if there's anything you'd

19  like to say related to the accuracy of the claim, I'm happy to

20  hear from you -- the breach of contract claim -- I'm happy to

21  hear from you on that.

22          MR. PELLETIER:  I just want to make the record clear

23  as to the first argument with respect to the stay.  From what I

24  understood, Mr. Andres -- I think it's Andres -- he just got

25  the case.  I'm not familiar -- is that --

1          MR. ANDRES:  Yes.

2          MR. PELLETIER:  That argument with respect to the

3    stay and a stay violation -- they're not making it now, but

4    they're not waiving it.

5          THE COURT:  Yes.

6          MR. PELLETIER:  Okay, as I understood the argument to

7    be in any event was that what Mr. Myers had argued was that he

8    had filed the case, that the discharge was denied back in

9    September.  He filed our amended complaint adding him and then

10   after that, he filed a second bankruptcy.  Before we filed our

11   amended complaint to add him, he filed a motion for

12   reconsideration.  I just want to note for the record that we

13   cited cases that are on point that say a motion for

14   reconsideration would not have stayed the case further.  And

15   the cases that he cited didn't have anything to do with it.

16   So --

17         THE COURT:  And I agree with that.

18         MR. PELLETIER:  Good.  I'm glad we agree.  Thank you,

19   Your Honor.  Moving on, the next argument is whether we have a

20   claim for breach of contract.  You know, along with the amended

21   complaint, we attach both the promissory note and the guarantee

22   which are executed by Mr. Myers.  I won't belabor the point,

23   but breach of contract claims are one of the most simple claims

24   to state, which we did.  There was a contract, a contract for

25   payment and guarantee.  They were breached.  No payments were

10

1  made.   That's the entire case we have here.   And that we stated

2  a claim.

3          And so Mr. Myers made some argument that I'm not

4  fully clear about.   You've tried to decipher it.   But outside

5  the pleadings, it incorporates something from somewhere and

6  tries to argue that we can state a claim.   But that would be a

7  summary judgment issue.   And it wasn't set up correctly for

8  summary judgment.   There were no supporting affidavits and so

9  on.   So we would ask that his motion be denied in that regard.

10         THE COURT:   Okay.   Mr. Andres, did you want to

11  respond?

12         MR. ANDRES:   Your Honor, I think Mr. Myers is --

13  again, Mr. Myers filed this motion pro se, so I would refer to

14  Mr. Myers's motion that he had asked for the complaint

15  attached, the motions that Mr. Myers's basically has put

16  forward that the documents attached fail to evidence a contract

17  and that the plaintiffs in this case should be held to relying

18  on the documents that they produced.   And if the documents

19  produced as Mr. Myers set forth in the motion fail to produce

20  an actual contract, then they have not properly alleged a

21  contract and their breach of contract claim should be

22  dismissed.

23                         JUDGE'S RULING

24        · Okay.   So a couple of things.   I think what goes

25  without saying is that Myers incorrectly relies on a document

1  outside the pleadings.  By attaching whatever it is he attached

2  to that and asking the Court to look at that document,

3  Goldsboro is saying and arguing that this motion to dismiss

4  that Mr. Myers filed essentially becomes a motion for summary

5  judgment.  Because in a motion to dismiss, the Court is not

6  allowed to look outside the four corners of the charging

7  document, but in a motion for summary judgment, we would be

8  permitted to do so.

9          So by attaching the documents and asking the Court to

10  look at them, Mr. Goldsboro is saying that Mr. Myers is

11  actually asking for a motion for summary judgment.  So I think

12  that's what your argument is, and I think that you're right, if

13  that's what your argument is.  And it's not correct to look

14  outside the documents.  Docket Entry 163 is Myers's motion to

15  dismiss, and so the Court must look at the pleading and what is

16  alleged in the pleading and must consider those facts pled as

17  true and in the light most favorable to Goldsboro, the non-

18  moving party.

19          And I think it's clear that in reading the complaint,

20  it clearly states a breach of contract claim.  It states that

21  there were two contracts that were breached.  There's a

22  promissory note and a guarantee, and it states in two contracts

23  there was a breach and there were damages.  And I think it

24  clearly sets out that dispute of fact and I think it legally

25  does so and sufficiently does so.

1          And so accordingly, as I said, I'm treating this as a

2    motion to dismiss, because that's what it is entitled as.   I

3    think because of that, I will deny defendant -- Mr. Gregory's

4    amended motion to dismiss at Docket Entry 163.

5          So we'll move to -- you did turn that heat down,

6    didn't you?  I don't know what happened.  So we'll move to

7    Docket Entry 164.   Docket Entry 164 is again Mr. Myers's

8    motion, and it is Mr. Myers's motion to dismiss the King

9    parties' first amended complaint, and their complaint is for

10   declaratory judgment.   And the King party is represented by Mr.

11   Verstandig.   So Mr. Andres, I will hear from you.

12         There are a number of reasons and arguments raised in

13   Docket Entry 163, and I just want to try and summarize them and

14   then I'm going to try to focus you, Mr. Andres, on what I would

15   like to hear from -- there are several arguments raised.   First

16   is that there's no actual controversy between the parties that

17   would require a declaratory judgment.

18         The second argument is the stay argument that was

19   raised in the motion to dismiss against Goldsboro, so I don't

20   really think I need to hear anything related to the stay

21   argument.

22         There's the third argument, which is an argument of

23   insufficient process.   Mr. Myers's alleges that the complaint

24   that the King parties filed was improperly served.   And Mr.

25   Myers argues he was not served with a summons.

1       The fourth argument is that the Court has no personal

2   jurisdiction over Mr. Myers because he doesn't have continuous

3   and systemic contacts with Maryland.  I'll hear from you.  If

4   you want to touch base on that argument with anything -- I know

5   you didn't elaborate on it in your motion.  I don't know that I

6   really need to hear from you, but I will if you'd like to say

7   something on it for the record.

8       The fifth argument is the argument I'd like to hear

9   from you on, Mr. Andres.  Mr. Myers argues the Court lacks

10  subject matter jurisdiction because the King parties didn't

11  have standing to bring this suit.  And this is what I have

12  referred to -- my clerk and I have referred to as this alter

13  ego argument.  Apparently the bankruptcy court said we're not

14  going to rule on the alter ego issue.  Let the Circuit Court --

15  and that would be me -- rule on that.

16      So I do obviously want to hear from the parties on

17  that argument and well get back to that.

18      The sixth argument is Mr. Myers says that the King

19  party complaint fails to state a claim for declaratory judgment

20  because there's  no claim or controversy for the Court to

21  decide.  There's no claim against -- the Myers alleged that

22  they haven't alleged any liability or any fraud or any harm.

23  So there's no claim or controversy for this Court to decide.

24  There's no claim against the Myers's alleged, that they haven't

25  alleged any liability, any fraud or any harm.  So there's no

1   claim or controversy for this Court to decide.  I'll hear from
2   you on that if you'd like to put anything on the record on that
3   argument.

4         The next argument is that the operating agreement
5   prevents Serv Trust from transferring its interest to Myers.
6   I'm happy to hear from you on that.  The next argument is this
7   judicial estoppel argument that Myers says the Kings' complaint
8   is barred by judicial estoppel.  I'm not so sure that's going
9   to persuade me, but I'm happy to hear from you on that.

10        The next argument Mr. Myers raises is one called the
11  doctrine of waiver.  He alleges that the Kings' complaint is
12  barred by the doctrine of waiver.

13        · The next argument is that the Kings' complaint
14  against Myers is barred by collateral estoppel and res
15  judicata.  Again, I'm not sure that I'm persuaded by the
16  arguments I've read in your pleadings, but I'm happy to hear
17  from you.

18        The next argument that Mr. Myers raises is that the
19  complaint is barred by the statute of limitations.  Mr. Myers
20  argues that the three year statute of limitations has run
21  because the plaintiffs had knowledge of the cause of action
22  beyond this period.  I'm not sure and persuaded on that
23  argument.  Mr. Myers does not really elaborate on that argument
24  in his pleadings.  So I'm not really sure.  But I'm happy to
25  hear from you, Mr. Andres, on that.

1          So with that said, I'm not going to limit your

2    argument.  We have all morning.  I think there are 11 different

3    arguments that you've raised.  But again, I really would like

4    you to focus your arguments on this alter ego argument.  I'd

5    like to hear from you as to why the Myers argument on this

6    alter ego theory fails, is not supported by law.

7          MR. ANDRES:  Thank you, Your Honor.

8          THE COURT:  Or not the Myers argument -- yes, the

9    Myers argument.  Sorry.

10          MR. ANDRES:  Thank you, Your Honor.  I would address

11    a couple of those first issues.  Similar to the Goldsboro

12    complaint, Mr. Myers does not waive any argument that the

13    plaintiffs in this case violated the automatic stay by bringing

14    the actions.  But we won't be -- we will waiving that argument

15    for purposes of this proceeding.  Similarly, I don't -- Mr.

16    Myers and I do not withdraw any of the deficiencies that we

17    have alleged in the service of process made upon Mr. Myers, but

18    at this point, Mr. Myers is here and we believe that that issue

19    would be moot.  Mr. Myers will waive or withdraw any objection

20    to personal jurisdiction that this Court would have over him at

21    this time.

22          With that said, I will move on.  I believe that Your

23    Honor is correct that there are two issues here that are

24    particularly problematic with the Kings' complaint, and that is

25    the substance of the alter ego allegation and the standing that

1   the King parties have to bring that.

2           First is that by -- I will address the standing of

3   the King parties first, Your Honor, and that is as an operation

4   of federal law, the claims that would allow such an alter ego

5   claim to bring against a bankruptcy debtor -- and this is well

6   established -- belong solely to the trustee.  And this includes

7   claims that could be brought by the creditor -- or by the

8   debtor himself in an action to recover money for the estate or

9   claims that would be brought against -- by a creditor to bring

10  that into the estate.  And Your Honor, I'm sure you've seen the

11  cases cited in the briefing, but I'm happy to --

12          THE COURT:  Go ahead.

13          MR. ANDRES: I would specifically refer to Wilson v.

14  Dollar General Corp., 717 F. 3d 337 and In Re: Charles Edwards

15  Enterprises, Inc. at 344 B.R. 788.  And these cases and many

16  others are very clear that a claim such as an alter ego claim

17  are the exclusive property of the bankruptcy trustee and can

18  only be pursued by that trustee in a bankruptcy proceeding

19  unless there is a specific judicial determination that it may

20  be pursued elsewhere.  A planning of abstention that the

21  bankruptcy court does not want to hear the alter ego claim is

22  not a judicial determination that other creditors are entitled

23  to bring a claim that belongs only to the trustee.

24          Furthermore, even if the trustee, who is Mr.

25  Schlossberg in the bankruptcy case, had filed the complaint,

1  that would have been disallowed because there is also a law

2  that they are separate from the Maryland statute of limitations

3  on any claim.  There is a limitation when a trustee may bring

4  claims, such as an alter ego claim, against the debtor.  And

5  that is limited to within a year of his appointment of trustee

6  in this case.

7       Of course, Your Honor, this does not concede any

8  claim actually exists, but even the authority to allege a claim

9  would only exist with the trustee and only within the time

10 period which I believe based on the filing in this case would

11 have expired in February of 2018.  So there is no authority for

12 the King parties in particular or even the trustee at this time

13 to have brought the allegations in the second amended -- or on

14 the first amended complaint.  Excuse me.

15      THE COURT:  All right.

16      MR. ANDRES:  Furthermore, even if they were allowed

17 to bring the claim in that regard, the claim for an alter ego

18 theory simply does not state a claim for which this Court can

19 grant any relief.  There is -- I mean, it is a matter of

20 constitutional law that a claim must require an actual wrong

21 and an actual controversy.  The allegations of the King parties

22 are against Serv Trust.  There is no allegation that by use of

23 this alleged alter ego that additional harm has been done to

24 them.

25      The granting of this declaratory judgment would not

1   resolve any controversy.  The alleged debts are all presented

2   in the complaint against Serv Trust or in the other case that

3   has been consolidated, 6789 Goldsboro's complaint against both

4   Serv Trust and Mr. Myers, which is, irrespective of an alter

5   ego theory, that's based on a promissory note and a personal

6   guarantee.  There would be no change to any of the judiciable

7   issues that are present in the pending litigation between the

8   parties, even if this Court were to grant or agree that there

9   has been an alter ego use of the trust.

10          So therefore, there is no actual controversy and the

11  declaratory judgment is a nullity.  It is not asking for any

12  proper relief.  The King parties don't have standing to bring

13  it.  I think the -- I think the impact of this is pretty clear.

14  If you look at -- and I'm sure you have as well, but in the

15  relevant cases cited in our motion, and in the response

16  motions, there are many cases that have been brought where a

17  creditor has brought an alter ego action against an individual

18  who has been trying to use a trust or a corporation as a means

19  of shielding money from creditors.

20          And one common thread in all of these is that it is

21  the debtor -- the corporation -- and they bring an alter ego

22  theory to try to access the funds of the individual who is not

23  in bankruptcy, because the actual debtor, the nominal debtor is

24  bankrupt, and they can't access the funds.

25          So here, we flip that on its head, and Mr. Myers is

1    the one in bankruptcy.  The debtor, there has been no
2    allegation that Serv Trust, if it is in fact a debtor, if they
3    were to prevail on their original claims, would be the one that
4    owes money.  The would be in a better position to collect money
5    from Serv Trust if they did not bring the alter ego theory.
6    The only reason that they would have brought an alter ego
7    theory is because they expect to have a deal worked out with
8    the trustee in order to access these funds by settling the
9    case, right, Mr. Myers or Serv Trust being able to present
10   their own defenses, because they expect that the bankruptcy
11   trustee would be presenting a more favorable settlement offer
12   to them.

13          There would be no other basis for bringing a claim in
14   this way, because they would be in effect compromising their
15   position by throwing themselves in with Mr. Myers's other
16   creditors rather than existing as they are now, the only
17   potential creditor of Serv Trust.  So therefore, there is no
18   actual relief that they would gain that this Court could grant
19   them in the alter ego theory.  So Count 2 of the first amended
20   complaint must be dismissed, because it fails to state a claim.
21   Brief indulgence, Your Honor.

22          THE COURT:  Okay, than you.  Is there anything else
23   you want to tell me about any of your remaining arguments?

24          MR. ANDRES:  Brief indulgence, Your Honor?

25          THE COURT:  Sure.

1          MR. ANDRES:  Your Honor, there are, as you alluded

2     to, there are several other arguments that Mr. Myers raised in

3     his proceeding.  And I'd be happy to address those later, but I

4     think it might be more helpful for us to allow Mr. Verstandig

5     to respond at this point.

6          THE COURT:  Okay.  All right. That's fine.  All

7     right, so who would like to -- Mr. Verstandig, you'd like to

8     probably be heard from?

9          MR. VERSTANDIG:  Yes, Your Honor.

10          THE COURT:  Would anyone else like to be heard from

11     on this argument?

12          MR. VERSTANDIG: Your Honor, I think depending or the

13     sufficiency or lack thereof of my comments, Mr. Mastro, who

14     represents the bankruptcy trustee -- might be more eloquent

15     than myself or he might be less eloquent than myself.

16          THE COURT:  All right, that's fine.  So I'll hear

17     from you first then, Mr. Verstandig.

18          MR. VERSTANDIG:  Thank you, Your Honor.  Maurice

19     Verstandig, again on behalf of the King parties.  Let me say at

20     the outset, there's a bit of an oddity to this motion.  We

21     joined Mr. Myers as a "necessary party" because we're seeking

22     declaratory judgment and Serv Trust is an alter ego.  Serv

23     Trust moved to dismiss the claim that was denied by Judge

24     Burrell.  Serv Trust moved for summary judgment and was denied

25     by Judge Burrell.  Serv Trust filed an answer on our alter ego

1    claim against Serv Trust.

2         If Mr. Myers doesn't wish to be present to contribute

3    evidence or testimony or whatever it may be towards

4    adjudication of this matter, we have no objection to him being

5    let out of the case.  He is here solely as a necessary party.

6    And they are very much accurate when they say we are not

7    asserting -- meaning my client -- I don't speak for Mr.

8    Pelletier -- we are not asserting a monetary claim against

9    them.

10         Maryland has a compulsory joinder rule.  Under that

11   rule, I had to join Mr. Schlossberg, which is why Mr. Mastro is

12   here.  And I had to join Mr. Myers, which is why they are here.

13   But Maryland case law is also pretty clear that if you have

14   knowledge of a case, the joinder rule you sort of kind of

15   follow, then you choose not to participate, judgment is still

16   binding.

17         I don't mean this in a smart-alecky way, and I don't

18   mean to say I stand up and concede the motion or anything like

19   that.  But we're going forward on this claim one way or

20   another.  It strikes me as very strange that Mr. Myers would

21   not want to avail himself of the opportunity to participate at

22   trial.  I certainly believe we were successful there as well.

23         As an initial matter -- and it sounds like you are

24   better prepared than almost any other judge I've been in front

25   of in a while, I brought a copy --

1           THE COURT:  That's a compliment to you, Andrew.

2           MR. VERSTANDIG:  I brought a copy of the extension

3   order.  I also brought a copy of the bankruptcy court's order

4   clarifying the applicability of the automatic stay, which I

5   think is relevant because it sort of anticipates that this

6   Honorable Court will make a ruling.  May I approach?  This is

7   the order clarifying my statement -- the last paragraph I'll

8   point to, that's the one.  I have copies for any lawyer or want

9   or needs it.

10          MR. MASTRO:  If you've got a copy, I'll take it.

11  Thank you.

12          THE COURT:  Can I keep this?  Is this for me?

13          MR. VERSTANDIG:  Absolutely.  It's all yours.  Your

14  Honor, my clients are being sued by Serv Trust for myriad

15  claims that are not the subject of today's motions, but that

16  are part of this case.  My clients are being sued for breach of

17  fiduciary duty, breach of contract, constructive fraud and so

18  on and so forth.

19          Our position, very simply, is that Serv Trust cannot

20  sue us for these things, because it does not own any litigation

21  rights to such claims to the extent they exist at all.  And the

22  reason is litigation rights are an asset.  In the bankruptcy

23  world, litigation rights are frequently purchased.  Litigation

24  rights are frequently settled.  They are viewed as an asset of

25  the debtor to the point that there's a place on a debtor's

1    schedule to list litigation rights.

2          If Serv Trust is Mr. Myers's alter ago as we allege

3    -- and I believe we have adequately endeavors and activities

4    that suggest it is his alter ago, then any litigation rights

5    belonging to Serv Trust really belong to Mr. Myers and the

6    moment Mr. Myers filed bankruptcy, those inure to the benefit

7    of Mr. Schlossberg.  So I'm saying that Serv Trust, Mr. Myers,

8    and the collection of attorneys on the other side of this

9    courtroom, much as we may respect them, have no right to bring

10   these causes of action against my clients.

11         Rather, the only party capable of bringing these

12   causes of action against my clients is Mr. Schlossberg, who is

13   represented by counsel here today.  And the bankruptcy court is

14   well aware of this.  That's why I passed up the two orders.  We

15   didn't want to go rogue on the bankruptcy court.

16         In terms of what is there that is a justiciable

17   controversy, that is it.  We have alleged that they don't have

18   standing to be sniping at us for lack of a more eloquent term.

19   And that in reality, the claims they endeavor to adjudicate in

20   this court belong to the bankruptcy trustee which creates two

21   parallel problems.

22         One, we're being chased by someone who has no right

23   to chase us.  But two, to whatever extent those claims have

24   merit -- and I would urge on the record they have no merit --

25   chasing them in this court without the bankruptcy trustee

1  prosecuting them actually damages the assets of Mr. Myers's

2  bankruptcy estate.   That is why the alter ego claim is relevant

3  and material.   If these claims -- strike that.

4         If Serv Trust is Mr. Myers's alter ego, these claims.

5  belong to his bankruptcy estate, not to Serv Trust.   And we

6  ought not be here.   One of the more interesting things about

7  the motion to clarify the applicability on that is the

8  instruction from the judge in the last paragraph.   In the event

9  the Circuit Court for Montgomery County, Maryland determines

10  that Serv Trust is the debtor's alter ego, then the automatic

11  stay provided by Section 362 of Title XI in the United States

12  Code shall immediately apply to Serv Trust, and any further

13  proceedings against Serv Trust in the matters filed at King, et

14  al v. Serv Trust, et al, Case No. 436977V in the Circuit Court

15  for Montgomery County shall be stayed pending further order of·

16  this Court.

17         These are assets of the bankruptcy court.   They need

18  to be adjudicated and liquidated in the bankruptcy court, both

19  from a federal venue point of view, a jurisdictional point of

20  view, and an equitable point of view.

21         So we seek that determination.   I believe that is

22  more than a justiciable controversy in the fact there's a

23  federal court I believe politely inappropriately nudging this

24  Honorable Court to make that determination weighs heavily in

25  favor of them.   Ultimately, Mr. Mastro will support that the

1   trustee would certainly have an interest in these claims.

2          There was a reference towards the end of Mr. Andres's

3   argument, which I think has appeared at least one before, or

4   there is argument in papers that we have some underhanded deal

5   with the trustee to settle these claims.  Let me be very clear.

6   We have entered into no agreements with the trustee to resolve

7   these claims.  If they become an asset of the bankruptcy court,

8   will I call Mr. Mastro the next morning and tried to settle

9   these claims?  Absolutely.  I'd be negligent not to.

10         There is no agreement in place.  It's not there.

11  There's also a reference in one of the footnotes to this motion

12  that my client is paying Mr. Mastro's attorney's fees.  That

13  would come as a surprise to me and give me disclosure as

14  requisite of a bankruptcy trustee and his counsel, and that

15  would come as a surprise to the bankruptcy court.  There's no

16  reason to credit that.

17         There is case law that establishes that bankruptcy

18  courts take note of where there's an alter ego.  I don't think

19  that was really raised today or issued today.  And I'm not too

20  worried about that.  I do want to say in terms of the

21  limitations argument that sort of suggested the two years,

22  that's for an avoidance action.

23         THE COURT:  That's what?

24         MR. VERSTANDIG:  That's for an avoidance action.

25  That's where you're trying to unwind a conveyance of assets on

1  the eve of bankruptcy to a third party.  We're not suggesting a

2  fraudulent conveyance.  We're suggesting an alter ego.  Mr.

3  Myers used this trust as his personal bailiwick.

4         THE COURT:  So I guess I just -- a lot of what you

5  say make sense.  But how do I -- how do I not take into

6  consider what Mr. Andres argued, because the alter ego claims

7  -- and I think the case law on this is really clear.  So tell

8  me what I'm missing.  Alter ego claims belong to the trustee.

9         MR. VERSTANDIG:  Yes.  The trustee has asked us to

10  pursue such matters in this case and the bankruptcy court has

11  been very clear in suggesting through its order of extension

12  that the State court litigation was ongoing and judicial

13  economy favors a resolution as part of this case.  If you

14  prevail, my clients do not have the right to start seizing Mr.

15  Myer's assets.  I think that's the critical distinction.  My

16  clients can't go out and ask the sheriff to levy upon Serv

17  Trust's lawn mower.  I don't think Serv Trust actually owns a

18  lawn mower, but for these purposes -- my clients get no

19  monetary benefit out of this.  The benefit of the claim goes to

20  the bankruptcy trustee and then derivatively to the creditors

21  in Mr. Myers's bankruptcy estate.

22         Once it's established that Serv Trust is its alter

23  ego, if there's going to be a marshaling of Serv Trust's

24  assets, it certainly falls on Mr. Schlossberg in the bankruptcy

25  court to take the discovery requisite to determine what those

1   assets are, to levy upon them, to seize upon them, to liquidate

2   them, and to proceed accordingly.  My client would have no

3   standing to do that.  And candidly, my client had no interest

4   in doing that, because my client is not a creditor of the

5   bankruptcy estate.

6          So we're not trying to pierce a veil for purposes of

7   recovering a monetary judgment.  And I think that's the

8   distinction with much of the case law that's been referenced

9   herein.  We're saying that because of an alter ego construct,

10  the party coming at us -- and for want of a more eloquent term

11  -- lacks standard to do so -- and we've got a bankruptcy court

12  and a bankruptcy trust cognizable or making these claims, and

13  the trustee seems to be supportive of our making these claims.

14  I don't mean to suggest the bankruptcy court takes an interest

15  one way or another.  And these are things that have to be

16  determined.

17         If not, it would create a terrifically inequitable

18  situation because if my clients and I prevail at trial, and it

19  turns out that there was some merit to the claims, which again,

20  there was not, we would have defeated an asset of the

21  bankruptcy estate.  Similarly, if Serv Trust were to prevail at

22  trial and seize money from my clients upon its affirmative

23  claims, it would be taking money that belongs to Mr.

24  Schlossberg in his official capacity.  So that's the

25  distinction I would urge.  The fact is that we're not seeking

1  money.  We're not trying to recover on a judgment.  And I think

2  that's what distinguishes us from existing case law and that

3  also explains the orders from the bankruptcy court and this

4  somewhat unique posture of this case.

5          Your Honor, perhaps I've rambled too long and Mr.

6  Mastro might be more eloquent than myself on some of the

7  bankruptcy points.

8          THE COURT:  Okay, I'm happy to hear from him.

9          MR. VERSTANDIG:  And as with Mr. Andres, I'd rest on

10  my papers for the other arguments.

11          THE COURT:  Okay.

12          MR. VERSTANDIG:  I don't mean to suggest anything

13  else.

14          THE COURT:  Okay.  Thank you.  So Mr. Mastro -- is it

15  Mastro?

16          MR. MASTRO:  Mastro.  Yes.

17          MR. ANDRES:  If I may?  Did you file any motions

18  based on -- in this --

19          MR. MASTRO:  I have not filed any motions.  The

20  bankruptcy trustee is not a party to these pending motions.

21  The bankruptcy trustee has been added as a nominal defendant in

22  these cases as Mr. Verstandig has described.  And really, I

23  think the purpose of me standing here is not necessarily to

24  argue one side or another, but to just advise the Court that,

25  you know, in bankruptcy cases, it's not uncommon for --

1  trustees have very limited resources to pursue all these
2  actions.
3          So many times, a creditor will pursue an action.  And
4  the creditor in this case has been authorized by the trustee to
5  do that. I believe this has all been disclosed and filed with
6  the bankruptcy court.  So had I known this was going to come up
7  today, I would have, you know, brought that stuff.  But to the
8  extent that there's any argument that this is being pursued
9  without the knowledge of the trustee or without the trustee's
10  consent, I can tell you that that's not the case.  And you
11  know, I'm happy to answer any other questions.  I think Mr.
12  Verstandig stated correctly, about 546, that that limitation
13  only refers to the trustee's avoidance powers.
14          A bankruptcy court would not be an avoidance action.
15  It would simply be classified as an adversary case to determine
16  whether or not this is an asset of the bankruptcy estate or
17  not.  And that's how it started in the bankruptcy court, and
18  then Judge Lipp decided to abstain and said alter ego is really
19  a state law determination, Montgomery County should do that.
20  And that's my understanding of how we got here.  And I'm happy
21  to answer any questions the best I can, Your Honor.
22          THE COURT:  And I'm going to ask you the same
23  question I asked of Mr. Andres -- Mr. Verstandig suggests --
24  and again, I hadn't read this order upon motion to clarify
25  acceptability of automatic stay until this morning.  Mr.

1  Verstandig suggests that the last paragraph is the bankruptcy

2  court --

3         MR. MASTRO:  Judge Lipp, Your Honor.

4         THE COURT:  Okay -- is sort of nudging me, the

5  Circuit Court for Montgomery County, to determine that Serv

6  Trust is Myers's alter ego.  Do you agree with that?

7         MR. MASTRO:  Well, the way I read it, Your Honor, I

8  mean, I don't know that the bankruptcy court is telling you to

9  rule one way or the other.  I think what the bankruptcy court

10 is saying is that upon a ruling, if that ruling is in favor of

11 Mr. Verstandig's client, then at that very moment, the

12 automatic stay would attach.

13        THE COURT:  Yes, right.

14        MR. MASTRO:  Because then Serv Trust becomes an asset

15 of the bankruptcy estate.

16        THE COURT:  Right. Serv Trust becomes an asset at

17 that point.

18        MR. MASTRO:  Correct.  Correct.

19        THE COURT:  All right.  Okay.  I appreciate your

20 comments.

21        MR. MASTRO:  You're welcome, Your Honor.  If you need

22 anything else, I'm here.

23        THE COURT:  Okay, so hang on one second while I take

24 a note here, Mr. Andres.  So, Mr. Andres, tell me why Mr.

25 Verstandig is wrong.  Tell me why his interpretation -- you

1  know, the federal law that you cited, the <u>Wilson</u> case an

2  others, you said it's just obvious, Judge, it's as obvious that

3  can be that the claim for -- these alter ego claims, this alter

4  ego theory can only be pursued by the trustee.  It only belongs

5  to the trustee.  Alter ego claims -- and I wrote this -- I

6  think this was your language -- are exclusive property of the

7  trustee.  So tell me why what Mr. Verstandig said is not

8  persuasive, should not be persuasive to me?

9        MR. ANDRES:  Well, Your Honor, I don't believe that

10  Mr. Verstandig addressed the issue that the trustee must be the

11  one to bring the claim.  And they have brought Mr. Mastro here

12  and they have put forward that nothing is being done without

13  the trustee's knowledge.  And Mr. Schlossberg is aware of these

14  claims.  That is not what the bankruptcy law and the case law

15  requires.  There has to be -- in order for a derivative

16  standing to exist for a creditor, that has to be a judicial

17  determination that is given to the creditor.

18        THE COURT:  Well, Mr. Verstandig said that the

19  trustee has asked the plaintiff to pursue these claims.

20        MR. ANDRES:  The trustee -- while on one hand he

21  denies any, you know, deals and communications he has, and on

22  the other he says that he has gotten the blessing of the

23  trustee, but that is not reflected in any orders or hearings --

24  or proceedings in the bankruptcy court, where the trustee would

25  give a notice of standing.  There would be an opportunity to

1    object and the Court could then enter an order granting

2    derivative standing.

3           THE COURT:  Okay.

4           MR. ANDRES:  The orders that Mr. Verstandig presented

5    don't do that.  They are simply -- one is simply a note that

6    the bankruptcy court is not going to hear the issue.  And I

7    think even if Mr. Mastro were correct, there was no indication

8    one way or another in that bankruptcy court's order.  There is

9    nothing saying Judge Dwyer, please grant this, this is what you

10   should do.  But simply saying, I don't want to hear it, if the

11   Circuit Court does something, then something can happen here.

12   But that is not an affirmative grant of derivative standing,

13   which is what is required by the bankruptcy code and the case

14   law.

15          Further, to the extent that the motion to clarify the

16   applicability of automatic stay was entered in -- that was

17   entered in Case 19-17428, that is the case that has been

18   dismissed.  I have a copy of the order dismissing that.  I can

19   show you that if you would like to see that.

20          MR. VERSTANDIG:  I don't know what it is.  I'm sorry.

21          MR. ANDRES:  It is the order showing that that case

22   was dismissed.  Again, I don't think that that order actually

23   portends anything as that simply stated that the bankruptcy

24   court is not objecting to the stay and if the case is

25   dismissed, then certainly there would be no stay from that

1  case.  As you can see from the other order that Mr. Verstandig

2  presented, there is still bankruptcy proceeding and Mr. Myers

3  is still a bankruptcy debtor.  Any claims in that action still

4  belong solely to the trustee unless there is an affirmative

5  judicial determination that derivative standing exists for

6  someone else, for a creditor to bring that claim.

7        And I have more cases, but I think from the memos and

8  all the case law stated, I think Your Honor can see -- I

9  disagree that I just went with the interpretation that 546

10  doesn't present at any adversary proceeding, including this

11  claim for an alter ego theory, which would -- it has the same

12  effect that they are attempting to bring money that was

13  allegedly fraudulently removed from the bankruptcy debtor's

14  estate back into the estate and that such an action would be in

15  the domain of the trustee and therefore governed by the statute

16  of limitations of a trustee bringing those claims, which has

17  long since expired.

18        And I think -- I just want to make sure that Your

19  Honor keeps it clear that there are really two standing issues.

20  The first is the grant of authority for this matter to be heard

21  or brought by any creditor rather than only by the trustee in

22  the bankruptcy court.  The other is -- and this might go more

23  to Mr. Verstandig's first point that although Serv Trust has

24  already filed a motion that was denied, Mr. Myers has filed a

25  motion to dismiss and Mr. Myers, if successful, it's not an

1  allegation that Mr. Myers should be dismissed as a defendant.

2           But this is an allegation that Count 2 of the first

3  amended complaint, the claim for declaratory judgment, should

4  be dismissed.  The fact that Judge Burrell previously denied

5  other motions does not prevent you from issuing, if you are

6  persuaded by the arguments put forward by Mr. Myers, that the

7  Count 2 of the first amended complaint is without merit, you

8  are certainly free to do that with regard to some prior ruling

9  by Judge Burrell in this case.

10          THE COURT:  So let me ask you about that.  Clearly

11 this argument was not raised in front of Judge Burrell,

12 correct?

13          MR. VERSTANDIG:  It was.

14          THE COURT:  It was?

15          MR. ANDRES:  It was not.

16          MR. VERSTANDIG:  I want to be clear -- not every

17 nuance, or that I would suggest that every citation was in

18 there necessarily.  But yes, I stood up and defended the

19 argument that alter ego liability is not a thing that ought to

20 happen.

21          THE COURT:  Is not what?

22          MR. VERSTANDIG:  Is not a thing that ought to be

23 found in the prism of this case.  Again, many specifics were

24 different and it would be disingenuous for me to say it was

25 absolutely identical.  But no, I defended it in front of Judge

1  Burrell, that the alter ego claim does not state a colorable

2  claim for similar reasons and may not proceed for similar

3  reasons.  And we were fortunate to prevail in front of Judge

4  Burrell.  Which is why I believe we're going forward against

5  Serv Trust one way or another.

6            THE COURT:  And that was in the -- the motion you

7  made in front of Judge Burrell was what?

8            MR. VERSTANDIG:  I didn't -- I was defending their

9  motion to dismiss and the motion for summary judgment.

10           THE COURT:  And your client Serv Pro?

11           MR. VERSTANDING:  No, I represent the King parties.

12 Serv Trust --

13           THE COURT:  So why were you -- Serv Pro was the

14 subject of the motion to dismiss.

15           MR. VERSTANDIG:  Yes, Your Honor.  My clients are the

16 ones that are seeking the declaratory judgment that Serv Trust

17 is the debtor's alter ego.  So Serv Trust brought a motion to

18 dismiss my client's claim and a motion for summary judgment on

19 my client's claim.

20           THE COURT:  Okay.

21           MR. VERSTANDING:  And I was fortunate to defend those

22 tangential -- counsel pointed out to me, there was an

23 application for derivative standing that underlies the order of

24 abstention.  It's referenced on page 2 of the order of

25 abstention towards the bottom.

1          THE COURT:  Okay.  So what else --

2          MR. MASTRO:  Your Honor, if I may?  I was not in the

3  case at the time that the Serv Trust motion was argued.  But I

4  do have a copy of the motion that Serv trust filed and that was

5  ruled on by Judge Burrell and it raises one of these issues.

6  It raises the issue of whether a proper claim under the

7  Declaratory Judgment Act was stated by Count 2.  There was no

8  allegations in the -- that I see in the motion by Serv Trust

9  that the bankruptcy court retained its jurisdiction on the

10  trustee and not a creditor has standing.  So I don't believe

11  that that issue was actually considered by Judge Burrell in her

12  ruling.

13          Furthermore, and I remind you that regardless of what

14  Judge Burrell decided, under Electric General Corporation v.

15  Lebance (phonetic sp.), one judge of a trial court ruling on a

16  matter is not bound by a prior ruling in the same case by

17  another judge.

18          THE COURT:  I understand.  And understand.  I just

19  was curious as to how she ruled.  So I guess going back to the

20  whole Serv Trust thing in front of Judge Burrell, and maybe not

21  going back to that, but would Serv Trust have standing -- an I

22  guess this question is for you, Mr. Verstandig -- if Serv Trust

23  would have standing because the litigation rights belong to the

24  trustee, does that question make sense to you?

25          · MR. VERSTANDING:  I think you mentioned the King

1    parties have standing.  Serv Trust is the alleged alter ego.

2         THE COURT:  Right.  Okay, so well, I guess I meant to

3    ask Mr. Andres the question, not you.  So I mean, if Serv Trust

4    would have standing because the litigation rights would belong

5    to the trustee --

6         MR. VERSTANDIG:  I'm not sure I understand your

7    question, Your Honor.

8         THE COURT:  Yes, I don't think I understand it

9    either.  Okay --

10         MR. ANDRES:  Your Honor, I think I can clarify the

11    answer to that on two fronts.  If we're correct that the

12    litigation rights belong to the trustee, Serv Trust has no

13    standing to bring the claims in this Court.

14         MR. DUNBAR:  Your Honor, that's an issue that's an

15    issue for trial.

16         THE COURT:  All right --

17         MR. ANDRES:  I agree, whether we're correct is a

18    triable fact.

19         MR. DUNBAR:  That's all.

20         MR. ANDRES:  I am not asking you to make an alter ego

21    finding today, Your Honor.

22         THE COURT:  Okay, so what did you just say again?

23    And you were sort of interrupted there by Mr. Dunbar.  Tell me

24    again what you just said -- Myer -- if you're correct --

25         MR. ANDRES:  If the King parties are correct that the

1  litigation rights belong to the trustee, Serv Trust does not

2  have standing to bring them in this case.  Period.  Hard stop.

3  They are counter claims, and that is why the alter ego issue

4  has to be adjudicated, because Serv Trust is positing them as

5  counter claims.

6          THE COURT:  So if King is correct that the litigation

7  rights belong to the trustee -- all right --

8          MR. ANDRES:  Yes?

9          THE COURT:  Then Serv Trust, you agree, has no

10  standing.  Is that what you said?

11          MR. ANDRES:  That's our position, absolutely.  If

12  they belong to the trustee, Serv Trust cannot -- because Serv

13  Trust is the debtor's alter ego -- if that is true, Serv Trust

14  is the debtor's alter ego.  The debtor can't pursue claims

15  against the debtor himself.  That would be backhanded and

16  create vast chaos.  And that's why we seek this determination,

17  because it goes to whether or not their counter claims can even

18  be heard in this case.  Only because I repeatedly nudged -- and

19  I think there's importance -- I don't mean to go back to this -

20  - the trustee expressly and enthusiastically consents to

21  derivative standing and the bankruptcy court was aware of that,

22  et. cetera, when it was ordered that this matter be heard in

23  this court.

24          But Your Honor, if my client is correct, Serv Trust's

25  counter claims don't exist in this court.  It's not just that

1  they can't pursue them.  No offense to Your Honor, but you

2  don't have jurisdiction to hear them, because they're an asset

3  of the bankruptcy estate under 28 U.S.C. 157.  Don't hold me to

4  that.  It's a court proceeding that can only be administered in

5  a federal court.  Liquidation of the bankruptcy estate's assets

6  including litigation rights is the province of the bankruptcy

7  court and the province of the trustee.  Serv Trust can't do

8  that in this court.

9       THE COURT:  All right, what else do you want me to

10  hear from you?  Anything else on this issue?  Alter ego?

11  Anybody else want to say anything on the alter ego issue?  I'll

12  come back to you.  Anybody else?

13       MR. VERSTANDING:  We'll submit on papers.

14       THE COURT:  All right, Mr. Andres?  Oh, I'm sorry,

15  did you --

16       MR. ANDRES:  Just a couple of clarifications I think,

17  Your Honor.  First, the order that they're referring to that

18  they passed up where it says an attached e-mail shows that the

19  trustee expressly consents.  That expressly consents to

20  Goldsboro pursuing the complaint.  There's not even an

21  allegation that --

22       THE COURT:  Where are we?

23       MR. ANDRES:  Bottom of page 2 of the order of

24  abstention.

25       THE COURT:  Yes, I don't see it there.  Can you be

1  more specific?  Where at the bottom?

2          MR. ANDRES:  The last two sentences.

3          THE COURT:  Okay, on December 14 -- right?

4          MR. ANDRES:  Right.  December 14, 2018, plaintiff

5  filed a motion for derivative standing to pursue the complaint

6  to which an attached e-mail indicates that the trustee

7  expressed a consent to go over pursuing the complaint.

8          MR. ANDRES:  Right.  And that is to Goldsboro pursing

9  in its position of the plaintiffs, Goldsboro and the King

10 parties are not the same.  So that would have no bearing on the

11 King parties bringing this complaint.

12         THE COURT:  All right.

13         MR. ANDRES:  Second, there is a statement in here

14 that there was a motion for derivative standing filed but there

15 is I think no order granting a motion for derivative standing,

16 or plaintiffs would certainly have presented that if the

17 bankruptcy court had so ruled.

18         THE COURT:  All right.

19         MR. ANDRES:  So simply filing a motion doesn't

20 entitle someone to relief.

21         THE COURT:  All right.

22         MR. ANDRES:  Furthermore in regards to Mr.

23 Verstandig's argument as to if they are successful, there is no

24 standing -- that is only partially correct.  That is not --

25 that does not mean if they are successful there is no claim

1    against the King parties.  It means someone else would be

2    responsible and have the decision-making authority to pursue

3    that claim.

4              This is not the purpose of the Declaratory Judgment

5    Action.  It is supposed to -- it would be to resolve a

6    judiciable claim.  That is not what would happen here.  This

7    would simply give the King parties a more favorable opposing

8    party to·deal with.  It would not resolve an issue.  Whether or

9    not it is heard in this Court -- and I would suggest that it's

10   not a court proceeding and if they are permitted to come from

11   the bankruptcy court to pursue this claim here, then there is

12   no reason the same claims could not also be granted by the

13   bankruptcy court to allow that secondary proceeding to also

14   occur here.

15             So it does not resolve the claims against the King

16   parties, it simply gives them a more favorable opposing party.

17   And finally, this is all moot because the claims only belong to

18   the trustee.  The trustee must be the one to bring the claim.

19   And even·if the trustee had -- even if the trustee were

20   properly a party bringing the claim here, he cannot do so

21   because it is past the statute of limitations.  He has passed

22   his opportunity to bring such a claim against Myers to try to

23   bring the Serv Trust property into the bankruptcy estate and

24   adjudicate it in that fashion.

25             THE COURT:  All right, so let me just go back and I'm

1  going to try -- maybe I'm not understanding, but Mr.

2  Verstandig, just tell me in the most simple language you can

3  find why isn't Mr. Anders right in that his last few arguments

4  from way back in the very beginning.  Why isn't the trustee the

5  only one that can bring the claim?  Why?  Tell me why in two

6  sentences.

7          MR. VERSTANDIG:  Because we're not seeking money.

8          THE COURT:  You're seeking to have Mr. Myers declared

9  the alter ego of Serv Trust.  Why isn't that relief only

10 allowed to the trustee?

11         MR. VERSTANDIG:  Two reasons.  One, because it is

12 raised in a counter claim, we are defending their standing.  We

13 are arguing their lack of standing to bring the counter claim.

14 Let me give an analogy on that.  Let's suppose that we sued

15 them for assault and there's no assault claim in this case.

16 And let's suppose they counter claimed for breach of a

17 promissory note.  And on the back of the promissory note, there

18 was an endorsement from them to some third party.

19         We would have every right to seek a declaration in

20 this court that they don't have the right to enforce that

21 promissory note.  It's been endorsed over to a third party.  It

22 belongs to the third party.  And then we would probably go out,

23 we'd get the third party, we'd tell the third party come join

24 us in this court as an interested party because hey, we might

25 owe money under a promissory note.  We deny it.  But if we

1  don't owe money to the third party, we certainly don't want to

2  pay a promissory note twice.

3          THE COURT:  Yes.

4          MR. VERSTANDIG:  I also cannot stress enough the

5  trustee's consent, the bankruptcy court's acknowledgment of the

6  trustee's consent to derivative standing, and the bankruptcy

7  court's decision to -- I don't want to say direct this court,

8  because that's a misstatement, but to make very clear that it

9  understands this matter is being adjudicated in this court and

10  it seems knowledgeable to posture.

11          I mean, trustee's consent has been reiterated on the

12  record today.  But because it's a counter claim and thus

13  something we have to deal with here, we're allowed to stand up

14  and say, whoa, we don't want to pay an assigned promissory note

15  twice, and we certainly don't want to be sued by someone who

16  doesn't have standing to enforce an assigned promissory note.

17  And that's basically what we're doing.

18          If the judge's ruling that the trustee, in lieu of

19  being a nominal defendant must be a nominal plaintiff, I'd have

20  to have a conversation with the trustee and I can't speak for

21  them, but I'd imagine we'd simply ask you to recapture the

22  case.  I mean, they're here, the bankruptcy court knows they're

23  here.  This matter is being pursued and the trustee is

24  exceedingly interested.

25          THE COURT:  All right.  Second prong of Mr. Andres's

1    argument, the statute of limitations argument.  Why is he

2    wrong?

3            MR. VERSTANDIG:  For two reasons.  One, this isn't a

4    fraudulent conveyance case.  Two year limitations under 546 and

5    548 of the bankruptcy code says that -- and I'm using a

6    hypothetical that has nothing to do with this case.  John Doe

7    knows he's going to go into bankruptcy.  Three months before he

8    files his bankruptcy petition, he writes his oldest son a check

9    for $7 million and says son, take this money and use it well.

10   And by the way, buy me dinner when I get old.  The bankruptcy

11   court has got two years to reach back and pull that money

12   aside.

13           Contrast -- six months before John Doe files

14   bankruptcy, John Doe takes $7 million and puts it in a bank

15   account that he doesn't tell anyone about.  When he files his

16   bankruptcy petition, eh doesn't list that bank account on the

17   schedules.  The trustee finds out four years later that John

18   Doe concealed that bank account and it should have been an

19   asset of the estate all along.  Two years limitation doesn't

20   apply.  It's not a fraudulent conveyance it is a failure to

21   list an asset of the estate, and a judicial determination of

22   what the assets of the estate are.  If Serv Trust is his alter

23   ego, we're not clawing back their property.  We're saying your

24   property has been his property at all times relevant.

25           THE COURT:  Okay.  All right, Mr. Andres, I'm going

1  to give you the last word.  It's your motion.

2      MR. ANDRES:  Thank you, Your Honor.  Your Honor, I

3  think first that the idea that the trustee would now

4  enthusiastically join as a nominal plaintiff, I'd like to point

5  out that the trustee has stated in the bankruptcy that he is

6  not pursuing any further actions against Mr. Myers's bankruptcy

7  estate.  Even as late as last week when we were confirming the

8  claims and issues with Your Honor, Mr. Mastro, for Mr.

9  Schlossberg, stated that Mr. Schlossberg is not pursing

10  anything in this case.  He is not pursuing an action.  This is

11  entirely a fabrication by the King parties in order to not

12  achieve a resolution which you undermined the authority of the

13  correct parties to facilitate this trial of these issues.

14      There is no -- I mean, Mr. Verstandig's hypotheticals

15  are irrelevant.  There's no situation here where the King

16  parties will have to pay twice on a promissory note if

17  subsequently there is a bankruptcy situation.  If Serv Trust

18  receives assets and the trustee had the authority to re-start a

19  claim against the Myers bankruptcy or from the Myers bankruptcy

20  estate against Serv Trust and bring those assets into the case,

21  anything that the King parties had paid to Serv Trust would

22  simply be brought into Mr. Myers.

23      There's no new case that would be coming against the

24  King parties.  That is simply fanciful and an attempt to -- I

25  actually have no idea what the point of that is, because there

1   is no chance of that happening.  There is one claim, whether
2   they make a payment that subsequently the bankruptcy trustee
3   attempts to claim, assuming that he had the authority to do so,
4   which to be clear, he does not -- that would not impact the
5   King parties.  They would have paid whatever was due by them,
6   assuming that they -- or assuming that Serv Trust is successful
7   on its counter claim.  There is no potential damage to the King
8   parties about this.  The only basis for this declaratory
9   judgment action is to undermine the ability of these parties to
10  defend it.  It did not resolve the claim.  It simply gets them
11  a more favorable, friendly opposing party with whom they think
12  they can reach a better deal.
13          THE COURT:  And do you want to respond to that?
14          MR. VERSTANDIG:  I have no doubt that the trustee
15  would be a more reasonable opposing party if it would stop the
16  impetus for doing that.  And that's not meant as an insult to
17  Mr. Andres.  By the way, if we cut a deal with the trustee,
18  it's still subject to bankruptcy court approval.  Everybody has
19  the right to object, including the debtor.  Everyone has the
20  right to be heard on the merits of that deal.  It's under I
21  believe Federal Law Bankruptcy Procedure 90.19.  It's not as
22  though if we prevail on this matter, we can go into a back room
23  with Roger Schlossberg, have my client hand over $200 and
24  decide we're done.  It doesn't work that way.
25          THE COURT:  Right.

1          MR. VERSTANDIG:  With regard to being sued twice, I

2     mean, I think Mr. Schlossberg would do it here -- I would hope

3     not -- but here's the reality.  I'll go back to my promissory

4     note analogy.  And I'll put it in the context of a bankruptcy.

5     If the debtor is owed money on a promissory note and files

6     bankruptcy and the promissory note becomes an asset of the

7     estate.  And the debtor goes out and gets John Doe to make a

8     payment on the note.  And the debtor takes that money and

9     spends it on food, vacation, whatever it may be.  You can bet

10    the bankruptcy trustee is not going to credit that payment.

11          THE COURT:  He's not going to what?

12          MR. VERSTANDIG:  Credit that payment.  So yes, there

13    would be the risk of being sued twice, but again, they just

14    don't have standing to bring these counter claims.  And because

15    they're counter claims, we uniquely have to deal with them in

16    this case.  We came here seeking declaratory judgment on a

17    different matter that's not at issue today, dealing with

18    redemption of an interest in an LLC.  Because it's been posited

19    as counter claims, we are forced to confront them in this case,

20    which is what invites the admittedly peculiar and somewhat

21    generous posture that the Court confronts today.

22          But I believe the bankruptcy court has been as clear

23    as it can be in guiding and understanding what's happening

24    here.  It's good with what's happening here, and it looks

25    forward to hearing what the outcome of what happens here may

1  be.  If this Honorable Court were to decline to rule on the

2  merits of the alter ego claim, Your Honor -- and that sounds

3  darker than I mean it to -- but I'd have to go back to the

4  bankruptcy court and ask for some other means of having that

5  court adjudicate it, because this court felt it was not proper,

6  ripe, whatever it may be.  And that's just going to create a

7  procedural dizziness, the likes of which I haven't seen in my

8  remarkable young legal career.  Thank you, Your Honor.

9        THE COURT:  All right.  Thank you. So let's go back.

10  There are a whole lot of other defenses or claims raised in

11  Docket Entry 164.  Do you want to put anything on the record

12  about that, Mr. Andres?

13        MR. ANDRES:  Your Honor, in reviewing Mr.

14  Verstandig's opposition, I think that that might be correct in

15  that these claims are similar to the other issues.  It would be

16  involving docket entries and things that are not part of the

17  pleadings and be more appropriate as a summary judgment or

18  affirmative defenses.  So I would say that we would not be

19  abandoning those claims, but I don't see that there is a good

20  way for us to pursue them here today in the posture that we're

21  in right now.

22        THE COURT:  All right.  Okay.  All right, so I'm

23  going to take a short recess and look at a couple of things and

24  then we'll be back.

25        MR. VERSTANDIG:  Thank you, Your Honor.

1        THE COURT:  Thank you.

2        THE BAILIFF:  All rise.

3        THE CLERK:  The Court stands in recess.

4        (Recess)

5        THE BAILIFF:  All rise.

6                  JUDGE'S RULING

7        THE COURT:  Thank you.  You can be seated.  All

8 right, so just to start, we're now on Docket Entry 164.  I've

9 already ruled on the other, 163.  And I just wanted to have the

10 record be clear that in Docket Entry 164, Mr. Myers raises

11 several reasons to support his motion to dismiss the King

12 parties' first amended complaint and declaratory judgment.  And

13 I think there were actually like perhaps 11 different arguments

14 put forth, and I was prepared to address all of them.  But in

15 light of Mr. Andres's saying on the record this morning that he

16 -- the stay argument, one of those arguments is this -- what I

17 can refer to as the stay argument.  And Mr. Andres I think has

18 waived the stay argument and so we haven't heard anything on

19 that.

20        Mr. Verstandig had comments on the stay argument as

21 it relates to Docket Entry 163.  And I said -- sort of off the

22 cuff, but not really, I know we're on the record here -- that I

23 tend to agree with Mr. Verstandig's arguments as they relate to

24 the stay.  But I'm just treating the stay argument as being

25 waived by Mr. Andres.  Is that correct, Mr. Andres?  When I say

1   use of the word waiving it, because you made no argument on it,

2   and I'm not going to rule on it.

3           MR. ANDRES:  As a part of these proceedings?

4           THE COURT:  Yes.  So I'm not going to rule on that. .

5   And then there were a number of other arguments that you have

6   on behalf of Mr. Myers raised in your Docket Entry 164 that

7   again -- and they include but are not limited to no actual

8   controversy, the insufficient process, the personal

9   jurisdiction.  It's my understanding that you're also today,

10  for purposes of this hearing, waiving those arguments.  I am

11  not going to rule on their merits.  I'm just not addressing

12  them.  Is that how you want me to proceed?

13          MR. ANDRES:  You know, with the understanding that

14  other than personal jurisdiction and service of process, we

15  would reserve those arguments for a future motion.

16          THE COURT:  Okay.  So I think you can file any future

17  motions you want, but I'm not going to rule on their merits

18  today.  And I hope the record is clear on that.  So the one

19  argument that we've heard -- you've spent a lot of time this

20  morning on, that I will rule on -- I think it's your fifth

21  argument in the order of your memo -- is this -- you claim the

22  Court has no subject matter jurisdiction because the Kings have

23  standing to raise this alter ego theory.

24          And I appreciate counsel taking the time to walk me

25  through this.  I think it's really interesting and it's not

1   something that I have a lot of professional dealings with in my

2   career.  So I appreciate you sort of educating me this morning.

3   And all of your arguments were very helpful to me as were the

4   pleadings, the motions that you've previously filed.

5           So I tend to agree with the plaintiff's arguments,

6   and I'll tell you why.  A couple of things were important to my

7   decision and I think should be on the record here.  It is a

8   distinction that deserves noting that the Kings are not

9   creditors of the Myers -- of Mr. Myers.  What King wants in

10  their suit, they want Serv Trust's interest in this LLC, this

11  Goldsboro, LLC to be revoked.  And I think this is a redemption

12  argument that they have made. They're not seeking money.

13  They're seeking that Serv Trust's interests in the LLC be

14  revoked.

15          The case law that was cited by Mr. Myers in support

16  of his theory that only the trustee can bring this action has

17  subtle differences to the facts in this case.  And that is that

18  those cases, the creditors were trying to get money from

19  debtors and were therefore -- they were trying to promote this

20  alter ego theory to sort of pierce the veil or get underneath

21  the veil of the corporation of the debtor, corporate debtor, to

22  get money, to get monetary relief.  And here, as I said, the

23  Kings aren't creditors.  And I think the facts are therefore

24  different.

25          So I think they do have standing to pursue the claim.

1   I also think it's important -- it's important to my ruling

2   today that the trustees -- that the trustee, Mr. Schlossberg,

3   is on board with the Kings pursuing this alter ego declaration.

4   Mr. Verstandig and Mr. Mastro as officers of the Court have

5   shared that with me and I think it's obvious that that is so.

6   And so the facts in this case are just too different from the

7   facts in the case law cited by Mr. Myers that sort of stands

8   for this theory that only the trustee can pursue an alter ego

9   theory.   I think that might be true under the facts of the case

10  as you've cited, but they just don't fit here.   And I think

11  this case is a little more unique in that the trustee is on

12  board.   Mr. Mastro representing the trustee has told me that.

13  Mr. Verstandig has told me that as an officer of the court.

14          And I also have, you know, this side action, this

15  parallel action in bankruptcy court, and in the order upon

16  motion to clarify applicability of automatic stay, which today

17  is the first time I've seen that, was ordered -- was entered

18  and signed on July 8, 2019, the last paragraph of that order

19  says that in the event the Circuit Court for Montgomery County,

20  Maryland -- that's me -- determines that Serv Trust is Mr.

21  Myers -- and he calls him the debtor -- Myers's alter ego, then

22  the automatic stay provided by Section 362 of Title XI shall

23  apply to Serv Trust any and further proceedings against Serv

24  Trust in the matter styled as King v. Serv Trust in this Court,

25  which is Case No. 436977, shall be stayed.

1          So upon that happening, Serv Trust becomes an asset

2     of the bankruptcy estate.  And so based on all of that, I hope

3     my record is clear.  I do think the facts of this case are

4     distinguished from the cases that Mr. Myers cited and for those

5     reasons, I do think it is appropriate to allow the plaintiff

6     King to pursue their amended -- their first amended complaint

7     for declaratory judgment.

8          And so accordingly, I will deny Mr. Myers's motion to

9     dismiss at Docket Entry 164 for the reasons that I've stated

10    here on this record.  So I think that covers everything that

11    we're here to do this morning.  And I guess we'll hear from you

12    soon.

13              MR. VERSTANDING:  Thank you, Your Honor.

14              MR. ANDRES:  Thank you, Your Honor.

15              THE COURT:  Thank you all very much.  Thank you.

16              (The proceedings were concluded.)

17

18

19

20

21

22

23

24

25

√ Digitally signed by Lauren Araya

## DIGITALLY SIGNED CERTIFICATE

**DEPOSITION SERVICES, INC.** hereby certifies that the attached pages represent an accurate transcript of the electronic sound recording of the proceedings in the Circuit Court for Montgomery County in the matter of:

Civil No. 736977

BRIAN KING

v.

SERV TRUST

By:

_____
LAUREN ARAYA
Transcriber