# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY B. MYERS,

    Plaintiff,

v.

JUDGE MARIA ELENA CHAVEZ-RUARK,
in her official capacity; RAMONA D. ELLIOTT,
ROGER SCHLOSSBERG, FRANK MASTRO,
SCHLOSSBERG & ASSOCIATES, P.A., and
MAURICE B. VERSTANDIG,

    Defendants.

Case No. JMC 25CV2085

USDC - GREENBELT
'25 JUN 30 AM 9:58

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff GREGORY B. MYERS ("Myers" or "Plaintiff") brings this COMPLAINT AND DEMAND FOR TRIAL BY JURY (the "Complaint") against Defendants JUDGE MARIA ELENA CHAVEZ-RUARK, in her official capacity ("Ruark"); RAMONA D. ELLIOTT ("Elliott"); ROGER SCHLOSSBERG ("Schlossberg"), FRANK MASTRO ("Mastro"), SCHLOSSBERG & ASSOCIATES, P.A. ("Schlossberg Law"), and MAURICE B. VERSTANDIG ("VerStandig") (with Ruark, Elliott, Schlossberg, Mastro, Schlossberg Law, and VerStandig being collectively known as the "Defendants" and each sometimes being known as a "Defendant"), and does allege as follows:

### INTRODUCTION

A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it. Compensation for the government's taking of a person's property is constitutionally mandated, full stop. See United States Constitution, Amendment V; *Knick v. Township of Scott*, 139 S. Ct. 2162, 2172 ("'[I]n the event of a taking, the compensation remedy is required by the Constitution.'" (quoting *First English Evangelical Lutheran Church of*

1

*Glendale v. County of Los Angeles*, 482 U.S. 304, 316 (1987))); id. ("rejecting the view that the Constitution does not, of its own force, furnish a basis for a court to award money damages against the government" (internal citation and quotation marks omitted)); id. at 2170 ("[I]f there is a taking, the claim is 'founded upon the Constitution'" (quoting *United States v. Causby*, 328 U.S. 256, 267 (1946)); *First English*, 482 U.S. at 315 ("claims for just compensation are grounded in the Constitution itself"); *id.* ("'suits [for just compensation are] founded upon the Constitution of the United States'") (quoting *Jacobs v. United States*, 290 U.S. 13, 16 (1933)).

Former U.S. Attorney General John Ashcroft's remarks neatly summarize this case:

> Bankruptcy court corruption is not just a matter of bankruptcy trustees in collusion with corrupt bankruptcy judges. The corruption is supported, and justice hindered by high-ranking officials in the United States Trustee Program. The corruption has advanced to punishing any and all who mention the criminal acts of trustees and organized crime operating through the United States Bankruptcy Courts. As though greed is not enough, the trustees, in collusion with others, intentionally go forth to destroy lives. Exemptions provided by law are denied debtors. Cases are intentionally and unreasonably kept open for years. Parties in cases are sanctioned to discourage them from pursuing justice. Contempt of court powers are misused to coerce litigants into agreeing with extortion demands. This does not ensure integrity and restore public confidence.

Furthermore, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984)); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 42 (2021) (noting that in *Pulliam*, "the plaintiff sought an injunction only to prevent the judge from enforcing a rule of her own creation").

## PARTIES

1. Plaintiff Myers is a natural person and a citizen of the state of Florida.

2. Defendant Ruark is a bankruptcy judge of the United States Bankruptcy Court for the District of Maryland and is being sued in her official capacity.

2

3. Defendant Elliott is Principal Deputy Director and General Counsel of the Executive Office of the United States Trustees (EOUST).

4. Defendant Schlossberg is a citizen of Maryland and owner of Defendant Schlossberg Law.

5. Defendant Mastro is a citizen of Maryland and, upon information and belief, an owner of Defendant Schlossberg Law.

6. Defendant Schlossberg Law is a partnership operating in and organized under the laws of Maryland.

7. Defendant VerStandig is, upon information, a citizen of Nevada and an attorney practicing law in Maryland and Florida.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 1331, because this case asserts claims arising under the Constitution or laws of the United States.

9. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants, and the claims are for a sum greater than seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

10. This Court has jurisdiction under 28 U.S.C. § 2201, *et seq.*, because the case arises from an actual controversy within the jurisdiction of this Court, and is not subject to any exception in 28 U.S.C. § 2201(a). This Court is therefore vested with the power to declare the rights and legal relations of Plaintiff as he is an interested party.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## BARTON DOCTRINE DOES NOT APPLY

12. This case falls squarely within the "ultra vires exception" to the Barton doctrine which allows suits by individuals as a matter of right when a receiver or trustee, by mistake or wrongfully, acted beyond their official capacity and takes possession of property belonging to another. For example, seizing property not belonging to the bankruptcy estate falls under this exception. Myers alleges at the outset of this suit facts that establish a prima facie case against the Defendants, including Schlossberg, and demonstrates that the Defendants knowingly and purposefully acted outside the scope of their authority in a manner that is contrary to clearly established law where there was sufficient precedent at the time of the Defendants' unlawful actions, factually similar to Myers's allegations, to put the Defendants on notice that their conduct was constitutionally prohibited. Moreover, a court-appointed receiver has no immunity where, as here, Myers has alleged the Defendants stole non-estate property being held in an escrow account and belonging to Myers and his wife, Barbara Ann Kelly ("Kelly"), as tenants by the entireties. As theft is an inherently unlawful act, it is impossible that any court authorized any Defendant to commit theft, and therefore the allegations are necessarily outside the scope of any judicial authority or immunity.

13. The Barton Doctrine is not intended to shield trustees from constitutional violations and does not apply to a Fifth Amendment taking claim against a trustee acting outside his authority or in a way that is not protected by the doctrine. Accordingly, the Defendants have no qualified immunity from constitutional violations and Myers may bring suit against the Defendants personally and hold the Defendants personally liable for their unlawful conduct. Furthermore, the Eleventh Circuit has ruled that the Barton Doctrine's protection ceases when no estate assets

remain. In such instances, a district court decision would not impact the bankruptcy estate, and the doctrine would not remove the district court's jurisdiction.

## FACTUAL ALLEGATIONS

14. On March 23, 2004, Myers and Kelly purchased the real property commonly known as Lot 6, Seaside 14, Santa Rosa Beach, Florida 32459 ("Lot 6").

15. On November 18, 2015, Myers filed a voluntary petition for bankruptcy relief under the reorganization provisions of Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), Case 15-26033 (the "Myers Bankruptcy Case").

16. On November 18, 2015, the Bankruptcy Court entered a *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines*, which states:

> The debtor is permitted by law to keep certain property as exempt. <u>Exempt property will not be sold and distributed to creditors, even if the debtor's case is converted to chapter 7</u>.

(Case 15-26033; Doc. 6) (emphasis added).

17. On October 27, 2016, Myers and Kelly sold Lot 6 and $1,238,598.91 in net sales proceeds were wired to the law firm of McNamee Hosea Jernigan Kim Green & Lynch, P.A. ("McNamee Hosea") and deposited in the "McNamee, Hosea Attorneys Escrow Account" (the "Escrow Funds").

18. The Escrow Funds are not "property" of Myers's bankruptcy estate under 11 U.S.C. § 541.[1]

---

[1] *See Alvarez v. HSBC Bank USA (In re Alvarez)*, 733 F.3d 136, 141 (4th Cir. 2013), holding "under our precedent ... only [the debtor's] interest in the entireties property, and not the whole of the entireties property owned by the marital unit, became part of his bankruptcy estate." (Alterations supplied). The *Alvarez* Court also makes clear that a bankruptcy trustee obtains only custody of a *debtor's interest* in entireties property. *Id.* at 141 (internal citations omitted). See also *In re Hunter*, 284 B.R. 806 (Bankr.E.D.Va.2002), holding that the bankruptcy court lacked

5

19. On February 15, 2017, the Bankruptcy Court (Lipp, J) ruled that the Escrow Funds are owned by Myers and Kelly as tenants by the entireties (i.e., "I ruled based on the law that the asset was T by E and therefore monies had to be released.").

20. On February 15, 2017, the United States Trustee for Region Four, through its counsel Lynn Kohen, told the Bankruptcy Court, "Generally T by E funds we say are not property of the estate."

21. On February 22, 2017, the Myers Bankruptcy Case was converted from a case under chapter 11 to a case under chapter 7 and Schlossberg was appointed as chapter 7 trustee of the bankruptcy estate of Gregory B. Myers (the "Chapter 7 Trustee").

22. On March 21, 2017, Myers filed an amended Schedule C, inter alia, claiming an exemption in Lot 6 at "100% of fair market value, up to any applicable statutory limit."[2]

23. On August 3, 2017, the Chapter 7 Trustee filed an objection to Myers's amended Schedule C claim of exemptions.

24. On August 31, 2017, the Bankruptcy Court (Lipp J)—without authority[3] or jurisdiction and over the objection of Myers and Kelly—ordered McNamee Hosea to transfer custody of the Escrow Funds to Schlossberg subject to the following conditions:

---

authority to alter rights in property owned by the debtor and his spouse as tenants by the entireties because only the debtor's interest in the entireties property, rather than the whole of the property, was before the bankruptcy court.

[2] Lot 6 was a Florida property, and therefore both Lot 6 and the sale proceeds (Escrow Funds) are governed by Florida law. Myers is a Florida citizen and is therefore entitled to Florida exemptions. Florida's statutory exemption for entireties property is unlimited. When a monetary exemption is greater than or equal to the value of the subject property, the owner's possessory and pecuniary interests are both fully protected.

[3] See *In re Hunter,* 284 B.R. 806 (Bankr.E.D.Va.2002), holding that the bankruptcy court lacked authority to alter rights in property owned by the debtor and his spouse as tenants by the entireties because only the debtor's interest in the entireties property, rather than the whole of the property, was before the bankruptcy court.

6

> 2. Within ten (10) days of the entry of this Order, the law firm of McNamee Hosea Jernigan Kim Green & Lynch, P.A. (the "Firm") shall transfer custody to the Trustee of the Net Sale Proceeds (the "Net Sale Proceeds") currently being held by the Firm as escrow agent under the Court's sale order (Doc. No. 175) (the "Lot 6 Sale Order"). The Trustee shall hold possession of the Net Sale Proceeds, but shall make no payments, credits, offsets, or any other reduction in the Net Sale Proceeds absent further order(s) of the Court. Any liens, claims, or interests in, on, or to the Net Sale Proceeds, shall continue on the Net Sale Proceeds notwithstanding the movement of the funds to the Trustee and shall be subject to further Order of the Court.
>
> 3. The Court does not determine, and nothing in this Order, or in the change of custody or possession of the Net Sales Proceeds from the Firm to the Trustee, shall eliminate, create, alter, or effect in any way, rights in favor of any person or party.

25. On September 13, 2017, Elliott, then Deputy Director/General Counsel, Department of Justice, Executive Office for United States Trustees (EOUST), filed a brief in the United States District Court for the District of Maryland, Case 8:17-cv-01239-PX, in which Elliott and the Department of Justice confirmed that "because her [Ms. Kelly's] interest in that property [Lot 6] was in the nature of tenants-by-the-entireties, her interest never became part of the bankruptcy estate. *See Alvarez,* 733 F.3d at 141". Elliott and the Department of Justice *counterfactually* represented to the Court that as of September 13, 2017, "[t]he $1,238,598.91 remains in the escrow account today."

26. On December 12, 2017, counsel for the Chapter 7 Trustee, Paul Sweeney ("Sweeney"), testified under oath in the Myers Bankruptcy Case, admitting to actual conflicts of interest with numerous principals of the Offit Kurman, P.A. law firm ("Offit Kurman"), stating:

> "Obviously I knew that Offit Kurman was a creditor. Obviously I see that their attorney of record is Mr. Hoffman, Mr. Poppleton, and now we have Mr. Johnson who is also known to me. But at no time did any of **those conflicts** register as a connection[.]"

(Emphasis added). "[T]hose conflicts" with Offit Kurman also included attorney Maurice VerStandig. "[T]hose conflicts" with Offit Kurman were imputed to the Chapter 7 Trustee.

27. On December 12, 2017, Bradford F. Englander, Esq., counsel for Ms. Kelly, made the following statement to Judge Lipp in open court in the Myers Bankruptcy Case:

> "What's really going on here, and the only thing that's going on here, **is an effort by the trustee and Offit Kurman to grab T-by-E property**...there is nothing in the Bankruptcy Code that gives a trustee in a bankruptcy case the power to do that. *** **We all know what this is, it's -- and my words -- a money grab.** *** So in every extent possible, it appears that this is an end run around virtually every applicable provision of the Bankruptcy Code and unsupported by any specific provision of the Bankruptcy Code."

(Emphasis added). When, on December 12, 2017, Mr. Englander questioned the Chapter 7 Trustee about his "surcharge" of fully exempt property (i.e., the Escrow Funds), Schlossberg testified under oath, telling the Bankruptcy Court, "**guilty as charged**."

28. On December 22, 2017, after an evidentiary hearing on December 19, 2017, the Bankruptcy Court (Lipp, J.) entered an order (the "Exemption Order") flatly overruling the Chapter 7 Trustee's objection to Myers's amended Schedule C claim of exemptions. The Chapter 7 Trustee did not appeal the Exemption Order. The Exemption Order was effective immediately and is final and binding on all parties. Accordingly, any collateral attack by the Chapter 7 Trustee (Schlossberg) on the Escrow Funds is in derogation of Myers's and Myers's substantive property rights and is expressly barred by statute.

29. In January 2018—notwithstanding the Chapter 7 Trustee's admitted conflicts of interest with numerous principals of Offit Kurman—the Chapter 7 Trustee transferred $525,000 of the Escrow Funds to the Offit Kurman law firm.

30. On April 10, 2018, the Bankruptcy Court (Lipp, J) confirmed that the Escrow Funds are exempt and not subject to administration by the Chapter 7 Trustee:

> MR. MYERS: Respectfully...there is an exemption order and the property that was on my amended schedule C is now exempt.
> THE COURT: **Understood. And that's understood.**

(Emphasis added).

31. On October 18, 2018, the Chapter 7 Trustee filed a motion in the Myers Bankruptcy Case admitting that Lot 6 and the Escrow Funds are fully exempt property not subject to administration by the Chapter 7 Trustee:

> Although the Debtor's original Schedule C filed on December 16, 2015 only sought to exempt the property located at 700 Gulf Shore Blvd. in Naples, Florida, McNamee Hosea later filed an Amended Schedule C on March 21, 2017 which claimed exemptions for the following additional properties:
>
> (1) 4505 Wetherill Road, Bethesda, Maryland
> (2) 147 Silver Laurel Way, Santa Rosa Beach, Florida
> (3) Lot 6, Seaside Beach Subdivision, Santa Rosa Beach, Florida
> (4) "Open space and natural areas" of The Villages at Seagrove Planned Unit Development
>
> Additionally, although the Trustee later filed an objection to the Debtor's claimed exemptions on Amended Schedule C, the bankruptcy court ultimately overruled the Trustee's objections and the above exemptions were allowed to stand.

32. On October 29, 2018—after having transferred $525,000 of the Escrow Funds to Offit Kurman— the Chapter 7 Trustee *counterfactually* represented to the Bankruptcy Court (Lipp, J) that "the only fund that we have in this case is the fund that was turned over to me from [McNamee, Hosea], that was the $1,110,247.01."

33. On May 6, 2019—after having transferred $525,000 of the Escrow Funds to Offit Kurman— the Chapter 7 Trustee *counterfactually* testified under oath in the Myers Bankruptcy Case that the Escrow Funds "[were] not administered" as follows:

> MR. SCHLOSSBERG: On March 21, 2017, that decision not to claim it as exempt went by the wayside and they amended to claim it as exempt property. \*\*\* **The property was not administered.** I

9

> certainly tried my best with respect to that argument—**I lost it and you have to move on**.

(Emphasis supplied). Schlossberg also testified under oath that he "took" $190,000.00 of the Escrow Funds (i.e., *non*-estate property):

> MR. SCHLOSSBERG: I can't remember the exact numbers now, $190,000.00 I believe out of the funds – **I took those from that**.

(Emphasis added).

34. On April 6, 2021, Judge Maria Ellena Chavez-Ruark held a hearing in the Myers Bankruptcy Case at which time the following statements were placed on the record:

> THE COURT: Counsel, parties, please identify yourselves for the record.
> MR. MASTRO: Good morning, Your Honor, Frank Mastro, on behalf of the Chapter 7 Trustee, Roger Schlossberg.
> MR. SCHLOSSBERG: Good morning, Your Honor, Roger Schlossberg, Chapter 7 Trustee.
> THE COURT: Good morning, gentlemen.
> MR. LUDWIG: Good morning, Your Honor, David Ludwig on behalf of the Debtor, Gregory Myers. And Mr. Myers is here as well.
> MR. PALIK: I think we're talking over one another, Craig Palik on behalf of McNamee Hosea. Good morning, Your Honor.
> MR. JOHNSON: Good morning, Your Honor, Gregory Johnson on behalf of Offit Kurman. We do not, we are only going to be appearing in an observatory status and do not plan to participate otherwise.
> THE COURT: Okay, thank you, Mr. Johnson.
> MR. HODGES: Good morning, Your Honor, Daniel Hodges, on behalf of McNamee, but only in connection with the adversary proceeding involving Barbara Ann Kelly. So at this point I don't think I'm involved in this part of the hearing, but nonetheless, I am here.
> THE COURT: Thank you very much. And Mr. Palik are you here for the main case and the adversary? Or are you here only for the adversary?
> MR. PALIK: I'm here for the main case. And to the extent necessary for the adversary, but Mr. Hodges is going to handle that as counsel for McNamee.
> THE COURT: All right, thank you.
> ***
> THE COURT: So Mr. Ludwig, the motion to compel is your motion, so I'm going to start with you. Do you -- can we all agree, and I'm

> going to ask the Trustee this as well, can we all agree that Lot 6 was owned T by E, that when it was sold, the sale proceeds are held, are also owned T by E, and that the Trustee filed an objection to exemptions which dealt with other issues. Dealt with where the Debtor was domiciled, and whether the property -- well actually dealt with this issue, whether this property was owned T by E. **And the Court concluded that the property is, was owned and sale proceeds are held in a T by E interest.** Can we agree on that?
> MR. LUDWIG: Yes, Your Honor, that's our position and I believe the Court has already ruled on that issue some years ago.
> **THE COURT: Mr. Mastro, do we agree that the property and sale proceeds are owned T by E, and that the objection to exemptions on that particular issue was overruled?**
> **MR. MASTRO: That's correct, Your Honor. It was originally a T by E property, and the objection to exemptions was overruled.**
> THE COURT: Okay, good. What I'm trying to do is, I'm trying to understand where the parties agree and where the parties disagree so that we don't spend a lot of time with arguments on issues where there is no disagreement.

(Emphasis added).

35. On April 21, 2021, Judge Maria Ellena Chavez-Ruark made the following ruling in the Myers Bankruptcy Case:

> **THE COURT**: Next Ms. Kelly argues that both Lot 6 and the Lot 6 sale proceeds are exempt from process under Florida Law and that Lot 6 itself and Ms. Kelly's interest in Lot 6 have never been property of the Debtor's Bankruptcy estate. That's in her motion at paragraph 8 and 9. **The Court agrees that Ms. Kelly's interest in the Lot 6 property and Lot 6 sale proceeds is not property of the Debtor's Bankruptcy estate.**

(Emphasis added). See, e.g., *Sitomer v. Orlan,* 660 So.2d 1111 (Fla. Dist. Ct. App.1995) (internal citations omitted), holding the "non-severability doctrine preserves the entireties status of funds even after one spouse transfers money from it without the consent of the other" such that the non-consenting spouse may recover funds from the possession of a third party after they had been transferred without her consent from an entireties account.

36. Neither the Bankruptcy Court nor the Chapter 7 Trustee has jurisdiction or authority to attach, take control of, appropriate, convert or otherwise administer the Escrow Funds, including

ordering the Escrow Funds be transferred to the Chapter 7 Trustee, Offit Kurman, or McNamee Hosea.

37. Contrary to repeated demands by Myers, Kelly, and their counsel, the Chapter 7 Trustee has refused and failed to return the Escrow Funds ($1,110,247.01) lawfully belonging to Myers and Kelly as tenants by the entireties.

38. The Defendants have, at all relevant times, acted in coordination with the Chapter 7 Trustee and/or supported the Chapter 7 Trustee and/or benefited from the Chapter 7 Trustee's unauthorized actions in connection with Myers's rights, interests and fully exempt property, including the Escrow Funds.

## COUNT I
### Declaratory Judgment
### (28 U.S.C. § 2201)

39. Plaintiff incorporates paragraphs 1 through 38 of the Complaint as though they were fully set forth within this count of the Complaint.

40. There is an actual, present, and practical need for declaratory relief because Myers's interest in the Escrow Funds and these issues are actual controversies that are real and substantial, and involve a genuine conflict of tangible interests.

41. Plaintiff therefore requests that this Court determine his rights and other legal relations with regard to the Escrow Funds, and the Chapter 7 Trustee's purported right vel non to possess, control, administer, transfer, disburse, or retain same.

## COUNT II
### 42 U.S.C. § 1983
### (Takings Claim Under United States Constitution, Amendment V)

42. Plaintiff incorporates paragraphs 1 through 38 of the Complaint as though they were fully set forth within this count of the Complaint.

43. Myers's interest in the Escrow Funds was his constitutionally protected property.

12

44. Defendants actions in seizing, possessing, controlling, administering, transferring, disbursing, or retaining the Escrow Funds wrongfully deprived Myers of his property without just compensation and due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

## COUNT III
### (Conversion)

45. Plaintiff incorporates paragraphs 1 through 38 of the Complaint as though they were fully set forth within this count of the Complaint.

46. The Defendants had no right or authority to seize, possess, control, administer, transfer, disburse, or retain any portion of the Escrow Funds.

47. Nevertheless, Defendants seized and took possession of the Escrow Funds without authorization from Myers and Kelly.

48. The Defendants actions were intentional, and constituted a conversion of Myers's property..

49. The Defendants actions caused damages to Myers by depriving him of his rightful property, and by preventing him from realizing the use and benefit of the Escrow Funds

## COUNT IV
### (Wrongful Retention)

50. Plaintiff incorporates paragraphs 1 through 38 of the Complaint as though they were fully set forth within this count of the Complaint.

51. The Defendants taking of the Escrow Funds was not authorized by Myers and Kelly, was intentional, was without permission or justification, and constituted a conversion of Myer's property.

52. The Defendants acted with actual malice in converting the Escrow Funds to their own use. The Defendants enjoyed monetary gain from the appropriation of the Escrow Funds to

enrich .

53. The Defendant's conversion of Myers's property deprived him of the use and benefit of the Escrow Funds beginning October 2016 and continuing to the present. If Myers would have had access to the Escrow Funds for this period, hhe would have benefitted from them in an amount to be proved at trial. The Defendants retained the Escrow Funds and used them in their business(es) and/or personally benefitted from them in spite of repeated demands by Myers and Kelly to return the Escrow Funds to Myers and Kelly.

54. The Escrow Funds had a value of $1,110,247.01 at the time of conversion. The Defendants, acting with malice, used Myers's Escrow Funds to benefit themselves or other third parties. The Defendants had no legal right to convert and then retain the Escrow Funds.

## COUNT V
### (Constructive Fraud)

55. Plaintiff incorporates paragraphs 1 through 38 of the Complaint as though they were fully set forth within this count of the Complaint.

56. The Defendants acted in concert and conspired to wrongfully appropriate the Escrow Funds.

57. The Defendants knew of the fraudulent scheme and willfully aided in its execution. See *Etgen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing

injury regardless of the degree of culpability. *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 97 P. 10, 14."). Id. at 418.

58. The Defendants held positions of public trust and owed a duty of good faith and fair dealing to all parties, including Myers.

59. The Defendants owed a further fiduciary duty to Myers as a consequence of taking possession and/or control of the Escrow Funds.

60. The Defendants breached their duty to uphold the public's trust intentionally with malice, and/or with reckless disregard for Myers's rights by willfully and intentionally seizing control of the Escrow Funds without legal authority or justification.

61. The Defendants breached their fiduciary duty to Myers intentionally with malice, and/or with reckless disregard for Myers's rights by willfully and intentionally seizing control of the Escrow Funds without legal authority or justification.

62. The Defendants actions were taken with support and cooperation of all Defendants, despite actual knowledge of all relevant law and facts.

63. As a result of the Defendants breach of their legal, public, and fiduciary duties, Myers has suffered material harm and material damages, and will continue to incur material harm and material damages due to loss of the Escrow Funds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a. That this Court enter a enter a declaration that the Escrow Funds are not part of the bankruptcy estate of Gregory B. Myers, and that the Chapter 7 Trustee has no right or authority to seize, possess, control, administer, transfer, disburse, or retain the Escrow Funds;

b.  That this Court enter a judgment instructing the Chapter 7 Trustee to immediately return the Escrow Funds to Myers and Kelly as the lawful tenants by the entireties owners of the Escrow Funds;

c.  That this Court enter a judgment against the Defendants, jointly and severally, for actual damages in an amount not less than Ten Million Dollars ($10,000,000.00);

d.  That this Court enter a judgment against the Defendants, jointly and severally, for punitive damages in an amount not less than Thirty Million Dollars ($30,000,000.00);

e.  That this Court enter a judgment awarding Plaintiff his attorneys' fees and suit costs incurred in connection with the prosecution of this matter;

f.  That this Court award any other relief it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands to exercise his right to a trial by jury on all claims or issues so triable.

Dated: June 30, 2025

Respectfully submitted,

Gregory B. Myers, pro se
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net