**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

In re:

GREGORY B. MYERS,

      Debtor.

_____/

BRIAN KING, *et al.*,

      Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

      Defendant.

_____/

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

**DEBTOR'S MOTION TO VACATE JULY 3, 2025 SETTLEMENT ORDER PURSUANT TO FED. R. CIV. P. 60(b)(1), 60(b)(2), 60(b)(3), 60(b)(4), 60(b)(5), AND 60(b)(6), MADE APPLICABLE BY FED. R. BANKR. P. 9024, PRESERVING RELIEF UNDER FED. R. CIV. P. 60(d)(1) AND 60(d)(3), AND REQUEST FOR INDICATIVE RULING UNDER FED. R. BANKR. P. 8008**

Debtor and party in interest Gregory B. Myers moves under Federal Rule of Civil Procedure 60(b)(1), 60(b)(2), 60(b)(3), 60(b)(4), 60(b)(5), and 60(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 9024, to vacate the Bankruptcy Court's July 3, 2025 Order Approving Trustee's Compromise and Settlement with King Parties entered in this adversary proceeding at Docket No. 61 (the "Settlement Order"). Myers also preserves relief under Rule 60(d)(1) and Rule 60(d)(3), requests a full evidentiary hearing, requests targeted discovery, requests preservation of documents and electronically stored information, and requests a verified accounting concerning all payments, transfers, reimbursements, fee payments,

1

72

indemnity payments, settlement payments, and related consideration connected to the Settlement Order, the King Parties, the Trustee, Trustee's counsel, Goldsboro, Offit Kurman, VerStandig, Mastro, and any related person or entity. If the Court concludes that a pending appeal limits its authority to grant immediate relief, Myers requests an indicative ruling under Federal Rule of Bankruptcy Procedure 8008.

The Settlement Order fails before Rule 9019 discretion begins. The threshold defects are jurisdictional, constitutional, procedural, factual, and equitable. The Settlement Order rested on a structure that purported to resolve, monetize, redeem, transfer, compromise, or affect alleged rights in Serv Trust's interest in 6789 Goldsboro LLC without first establishing that Serv Trust's property was property of Myers's bankruptcy estate in a proceeding capable of binding the necessary parties.

The Bankruptcy Court could not approve a settlement affecting alleged non-debtor trust property without a Trustee-filed adversary proceeding against Serv Trust, the current Serv Trust trustee, the Serv Trust beneficiaries, 6789 Goldsboro LLC, and other necessary parties, with proper service, due process, and a final adjudication that Serv Trust's Goldsboro interest was property of the estate. That never happened.

The Settlement Order also rested on the interlocutory December 11, 2023 settlement-procedure order, a nonfinal state-court partial order, a King-filed adversary proceeding by parties lacking standing, late King proofs of claim that Myers objected to and that could not be withdrawn as of right after objection, conflict-tainted litigation conduct, and mischaracterizations concerning the alleged Serv Trust redemption. Newly discovered or newly confirmed evidence further demonstrates that the alleged redemption narrative was shaped through counsel-directed alteration or sanitization of the documentary record, including the reason for the alleged

2

redemption and the date of the alleged redemption.

For the reasons set forth below, the Settlement Order should be vacated under Rules 60(b)(1), (2), (3), (4), (5), and/or (6), or the Court should issue an indicative ruling under Bankruptcy Rule 8008 stating that it would grant the motion or that the motion raises substantial issues.

## I. RELEVANT BACKGROUND

The adversary proceeding was filed by the King Parties against Chapter 7 Trustee Roger Schlossberg. It was not filed by the Trustee against Serv Trust, the current trustee of Serv Trust, the Serv Trust beneficiaries, 6789 Goldsboro LLC, or other necessary parties.

The adversary therefore was not a Trustee action to recover property, determine interests in property, obtain turnover, avoid a transfer, pierce a trust, adjudicate alter ego as to absent trust parties, determine the validity of a redemption, or obtain a Section 541 determination that Serv Trust's Goldsboro interest was property of Myers's estate.

The Trustee admitted the essential missing predicate. He admitted that he never filed an adversary proceeding against Serv Trust. He admitted that he never filed any action against Serv Trust. He did not file an adversary proceeding against 6789 Goldsboro LLC. He did not name the current Serv Trust trustee. He did not name the Serv Trust beneficiaries. He did not obtain service on the persons and entities whose property rights were implicated.

The Trustee also admitted that he could not enter into an agreement binding non-estate property. He admitted that his estate-property theory depended on Judge Lease's state-court order. He admitted that he did not attend the Montgomery County hearings. He admitted that he did not review the Serv Trust trust agreement in connection with the settlement. He admitted that he did not know the history of 6789 Goldsboro LLC before the First Amended Operating

3

Agreement.

The state-court order on which the Trustee and King Parties relied was titled "Order Entering Partial Judgment and Stay." Judge Lease stated on January 3, 2023 that anything entered that day would be nonfinal because all claims against all parties were not being adjudicated, and that there would be no final judgment under any circumstance. In the earlier Appellate Court of Maryland proceedings, King, Goldsboro, and the Trustee represented that the January 12, 2023 order was nonfinal. No final state-court judgment has determined that Serv Trust's Goldsboro interest is property of Myers's bankruptcy estate.

On July 3, 2025, the Bankruptcy Court approved the Rule 9019 settlement. The Court stated that the King Parties and Trustee were asking approval of a settlement that included payment of $150,000 "to redeem the entirety of Serv Trust's interest in Goldsboro, LLC" and settle the adversary proceeding. The Court also stated that the King Parties and Trustee were not asking the Court to determine that Myers is the alter ego of Serv Trust, that Serv Trust assets are property of Myers's bankruptcy estate, or that the Trustee has authority to administer the assets of Serv Trust.

That framing confirms the defect. The unresolved "if any" question was the jurisdictional and estate-property question. Rule 9019 could not be used to approve a transaction affecting alleged non-debtor trust property while leaving the estate-property predicate unresolved.

## II. THE DECEMBER 11, 2023 SETTLEMENT-PROCEDURE ORDER WAS INTERLOCUTORY, MERGED INTO THE JULY 3, 2025 SETTLEMENT ORDER, AND IS CHALLENGED HERE

The December 11, 2023 order approving settlement procedures did not finally resolve the King redemption claim, did not finally adjudicate whether Serv Trust's Goldsboro interest was property of Myers's bankruptcy estate, did not adjudicate King standing, did not adjudicate the King proofs of claim, did not adjudicate Myers's objections to those claims, and did not bind

Serv Trust, the current trustee, the beneficiaries, 6789 Goldsboro LLC, or other necessary parties.

The December 11, 2023 order instead created the procedure that led to the July 3, 2025 Settlement Order: late King proofs of claim, dismissal without prejudice of the state-court redemption claim, tolling of the redemption claim, negotiations between King and the Trustee, and, if negotiations failed, a King-filed adversary proceeding in this Court.

The December 11, 2023 order was interlocutory. It merged into the July 3, 2025 Settlement Order because the Settlement Order was the final order approving the settlement structure created by the December 11, 2023 order. Myers therefore challenges the December 11, 2023 order as part of this Rule 60(b) motion to vacate the July 3, 2025 Settlement Order.

The Bankruptcy Court could not use an interlocutory settlement-procedure order to create standing, create a late proof-of-claim path, authorize a King-filed adversary, bypass removal limitations, substitute for a Trustee-filed adversary proceeding, or supply the missing Section 541 estate-property adjudication. Because the July 3, 2025 Settlement Order rests on the interlocutory December 11, 2023 order, the defects in the December 11, 2023 procedure are grounds for relief from the Settlement Order under Rule 60(b).

## III. GROUNDS FOR RELIEF UNDER RULE 60(b)

Rule 60(b), made applicable by Bankruptcy Rule 9024, authorizes relief from a judgment or order for mistake, newly discovered evidence, fraud, a void judgment, a judgment whose predicate has been satisfied, released, discharged, reversed, vacated, or whose prospective application is no longer equitable, and any other reason justifying relief. Myers invokes every category of Rule 60(b) applicable to the July 3, 2025 Settlement Order, including Rules 60(b)(1), (2), (3), (4), (5), and (6).

5

The Bankruptcy Court may consider this Rule 60(b) motion notwithstanding the appeal posture. If the Court concludes that it cannot grant immediate relief because of a pending appeal, Bankruptcy Rule 8008 authorizes the Court to defer consideration, deny the motion, state that it would grant the motion if the appellate court remands for that purpose, or state that the motion raises a substantial issue.

**A. Rule 60(b)(1): Mistake, Inadvertence, Surprise, or Excusable Neglect.**

Relief is warranted under Rule 60(b)(1) because the Settlement Order rests on mistake, inadvertence, legal misapprehension, and procedural error. The Bankruptcy Court approved a settlement affecting or purporting to affect Serv Trust's Goldsboro interest without first requiring the Trustee to file the adversary proceeding necessary to determine whether that interest was property of the estate. The Court treated a nonfinal state-court partial order, the December 11, 2023 settlement-procedure order, late King proofs of claim, a King-filed adversary, and Rule 9019 approval as substitutes for the required Section 541 and Rule 7001 adjudication. Those were mistakes warranting relief.

The Court also mistakenly proceeded on the premise that the Trustee could compromise, monetize, redeem, or transfer whatever interest the estate might have without first determining whether the estate had any such interest. The "if any" question was the threshold jurisdictional and property-of-the-estate question. If Serv Trust's Goldsboro interest was property of the estate, that fact had to be established in a proper proceeding. If it was not property of the estate, the Bankruptcy Court lacked authority to approve relief affecting it.

The Settlement Order also reflects mistake because it relied on the January 12, 2023 state-court partial order as though that order supplied an estate-property predicate, even though the order was nonfinal on its face. The Court further erred by treating the King proofs of claim as

6

useful to the settlement structure while failing to adjudicate Myers's objections to those claims.

**B. Rule 60(b)(2): Newly Discovered Evidence.**

Relief is warranted under Rule 60(b)(2) based on newly discovered or newly confirmed evidence bearing on VerStandig's conflict of interest, Offit Kurman's conflict-tainted role, the counsel-directed alteration or sanitization of the alleged Serv Trust redemption narrative, the relationship between the consolidated Maryland actions, and the integrity of the proceedings that produced the Settlement Order.

This evidence is material because the Settlement Order was not an ordinary distribution compromise of an allowed claim. It arose from a procedurally irregular structure in which the King Parties, through counsel, filed an adversary proceeding in Myers's bankruptcy case concerning Serv Trust property, while the Trustee relied on that adversary and the December 11, 2023 settlement-procedure order to obtain Rule 9019 approval.

The conflict evidence bears on standing, party alignment, candor, motive, settlement integrity, the use of a creditor-filed adversary, the treatment of Serv Trust and 6789 Goldsboro LLC property, the nonfinal state-court order, the asserted redemption process, the King proofs of claim, and the effort to obtain bankruptcy consequences without a Trustee-filed adversary against the necessary parties.

**Exhibit A** is an October 10-11, 2019 email chain involving Brian King, Mac VerStandig, Eric Pelletier, Timothy Lynch, and others concerning the 2018 Serv Trust K-1, the 6789 Goldsboro LLC tax return, and the language describing the alleged redemption of Serv Trust's interest. In that chain, Brian King sent the K-1 to VerStandig and stated that the return reflected redemption of ownership and "0.00%" in partner share accounts. VerStandig responded that the language was "a bit of a problem," objected to the statement that redemption occurred because

7

Serv Trust was "going through bankruptcy," and asked whether the language could be edited. VerStandig also stated that it might be wise to have Eric Pelletier weigh in because Pelletier was "officially 6789's counsel" and that if VerStandig's "fingerprints" were on the issue, "it could well fuel another Greg motion." Pelletier then suggested omitting reference to bankruptcy, being "more vague on the date," and using language that Serv Trust's interests were redeemed pursuant to the operating agreement "no later than" a selected date, including "9/14/2017 or 1/1/2018."

**Exhibit A** is material because it shows counsel involvement in altering or sanitizing the language used to describe the alleged Serv Trust redemption. The original K-1/tax-return language apparently referenced bankruptcy as the reason for the redemption. VerStandig objected that the language was "a bit of a problem," stated that Serv Trust had not been in bankruptcy, and warned that if his "fingerprints" were on the issue, it could "fuel another Greg motion." Pelletier then advised omitting the bankruptcy reference, being "more vague on the date," and using "no later than" language keyed to a selected date. That communication is probative of misrepresentation, concealment, conflict, and manipulation of the documentary record concerning the alleged redemption.

Pelletier's "pick a date" instruction is especially material because the date of alleged redemption was not a neutral drafting detail. It affected whether Serv Trust's alleged interest existed, whether King or Goldsboro could claim redemption rights, whether bankruptcy-related issues were implicated, and whether the later state-court and bankruptcy settlement narrative rested on a reliable contemporaneous record or on a lawyer-edited litigation position.

The Court need not decide on this motion whether the conduct constitutes evidence tampering, fraud on the court, or another sanctionable violation. For Rule 60(b) purposes, the point is that the email chain is material evidence of counsel-directed alteration or sanitization of

8

the redemption narrative, including the reason for redemption and the date of redemption, both of which later became central to the King/Goldsboro/Serv Trust litigation and the July 3, 2025 Settlement Order.

**Exhibit B** is a June 18, 2013 email from Timothy Lynch of Offit Kurman to Myers and Brian King concerning the Goldsboro property. Lynch stated that he had spoken with each of them about the matter, that he was happy to assist, but that because both Myers and King were clients, he could not advise either of them about the deal. Lynch stated that the most he could do was create documents with terms Myers and King had agreed to. **Exhibit B** is material because it confirms that Offit Kurman/Lynch was involved at the inception of the Goldsboro property transaction and recognized that both Myers and King were clients in connection with that transaction.

**Exhibit C** is the June 7, 2018 Souza letter to VerStandig giving formal notice of conflict and intent to seek disqualification. The letter stated that Souza represented Serv Trust, that VerStandig represented the King Parties in litigation against Serv Trust, and that VerStandig also represented 6789 Goldsboro LLC in litigation against Serv Trust. The letter further stated that the King Parties owned 50% of Goldsboro as Class A Members and Serv Trust owned 50% as the sole Class B Member, and that VerStandig's representation of both the LLC and the King Parties constituted a conflict of interest.

**Exhibit D** is VerStandig's June 13, 2018 response. VerStandig admitted that he represented Goldsboro LLC in the collection case and represented Brian and Cristina King in the declaratory judgment case. He attempted to avoid disqualification by characterizing the matters as separate and by stating that Goldsboro LLC was represented by separate counsel in the declaratory judgment case.

9

**Exhibit E** is the August 14, 2018 consolidation order. On August 14, 2018, the Circuit Court for Montgomery County consolidated 6789 Goldsboro LLC v. Serv Trust, Case No. 451611-V, and Brian King, et al. v. Serv Trust, Case No. 436977-V, for all purposes, designated Case No. 436977-V as the lead case, and directed that future filings be made in the lead case.

The consolidation order materially undercuts any attempt to separate Goldsboro's collection case from the King declaratory action for conflict, party-alignment, and settlement-integrity purposes. After consolidation for all purposes, the Goldsboro collection case and King declaratory action were no longer cleanly separable in any practical litigation sense. The same consolidated litigation later became the factual and procedural engine used to support the December 11, 2023 settlement procedure and the July 3, 2025 Settlement Order.

The conflict issue became worse, not better, when Offit Kurman/Pelletier later took over Goldsboro's representation in the consolidated Maryland litigation, because Lynch/Offit Kurman had already recognized Myers and King as clients in connection with the Goldsboro property transaction, and Pelletier later participated in communications concerning the Serv Trust K-1/redemption language.

Taken together, Exhibits A through E show that the alleged Serv Trust redemption was not an isolated, neutral corporate event. The record reflects counsel involvement by VerStandig and Offit Kurman in the same Goldsboro transaction and later in the language used to describe the alleged redemption. Lynch/Offit Kurman recognized Myers and King as clients in connection with the Goldsboro property transaction, VerStandig represented Goldsboro in the collection case and the Kings in the declaratory judgment case, the cases were consolidated for all purposes, and Pelletier/Offit Kurman later participated in revising the redemption narrative. Those facts bear directly on conflict, candor, standing, party alignment, misrepresentation, and

10

the integrity of the settlement structure approved by the July 3, 2025 Settlement Order.

At minimum, this evidence requires a full evidentiary hearing, targeted discovery, and a verified accounting. The Court approved the Settlement Order without a full evidentiary record on the VerStandig/Offit Kurman conflicts, the consolidated Maryland litigation, the "pick a date" communication, the Serv Trust K-1/redemption language, the role of counsel in shaping the alleged redemption narrative, the payment flows, the reimbursement arrangements, and the effect of those facts on the fairness and integrity of the Rule 9019 process.

## C. Rule 60(b)(3): Fraud, Misrepresentation, or Misconduct.

Relief is warranted under Rule 60(b)(3) because the Settlement Order was procured through fraud, misrepresentation, misconduct, and material mischaracterization of the operative record, party relationships, conflict record, redemption narrative, and procedural posture.

The Trustee and King Parties relied on a nonfinal state-court partial order as though it supplied a final estate-property predicate. They relied on a King-filed adversary as though King had standing to obtain bankruptcy relief concerning Serv Trust property. They relied on late King proofs of claim as though those claims created bankruptcy standing, while simultaneously treating Myers's objections to those same claims as moot or avoidable. They relied on Rule 9019 as though settlement approval could substitute for a Trustee-filed adversary, service, necessary parties, claim adjudication, and estate-property adjudication.

The fraud and misconduct evidence includes the conflict and documentary-record evidence attached as Exhibits A through E. **Exhibit B** shows that Lynch/Offit Kurman was involved in the original Goldsboro property transaction and recognized that both Myers and King were clients. **Exhibit C** shows that the conflict issue was formally raised in 2018. **Exhibit D** shows that VerStandig admitted his dual litigation roles while attempting to preserve a separation

11

between the Goldsboro collection case and the King declaratory action. **Exhibit E** shows that the state court consolidated those actions for all purposes. **Exhibit A** then shows VerStandig, King, Offit Kurman/Pelletier, Lynch, and accountants involved in revising the language concerning the alleged Serv Trust redemption.

The Settlement Order was entered without the Bankruptcy Court having a full and fair record concerning VerStandig's role, Offit Kurman's role, Lynch's prior-client relationship, the consolidated Maryland actions, the Goldsboro transaction, the Serv Trust K-1/redemption language, and the later litigation and settlement positions taken against Myers and Serv Trust. Those omissions and mischaracterizations impaired Myers's ability to obtain a fair adjudication of the threshold defects.

The issue was never merely whether the Trustee exercised business judgment. The issue was whether the Bankruptcy Court had authority to approve the settlement structure at all, and whether the parties presenting that structure were candidly disclosing the relevant conflict, standing, party, redemption, payment, reimbursement, and property-rights facts. By presenting the matter as an ordinary Rule 9019 compromise while relying on unadjudicated and disputed factual predicates as though they were established, the Trustee and King Parties prevented the Court from addressing the actual threshold questions: estate property, standing, due process, finality, claim allowance, conflict, misconduct, redemption, payment flows, and the rights of absent nonparties.

## D. Rule 60(b)(4): The Settlement Order Is Void.

Relief is required under Rule 60(b)(4) because the Settlement Order is void.

The Bankruptcy Court lacked authority to adjudicate, bind, transfer, compromise, redeem, extinguish, enforce, implement, or affect rights in Serv Trust property, 6789 Goldsboro

LLC, the current Serv Trust trustee, Serv Trust beneficiaries, Myers, or other absent or affected parties without a Trustee-filed adversary proceeding, proper service, necessary parties, due process, and a final adjudication that Serv Trust's Goldsboro interest was property of Myers's bankruptcy estate.

No such adjudication occurred. Serv Trust was not before the Court in a Trustee-filed adversary. The current trustee was not before the Court. The beneficiaries were not before the Court. 6789 Goldsboro LLC was not before the Court. No court of competent jurisdiction entered a final judgment determining that Serv Trust's Goldsboro interest was property of Myers's estate. No final state-court order supplied that predicate. No Rule 9019 order could supply it.

A judgment entered without jurisdiction, without due process, or in excess of the court's constitutional and statutory authority is void. The Bankruptcy Court could approve only a compromise of rights the estate actually owned or had authority to litigate. It could not use Rule 9019 to create estate property, adjudicate nonparty trust property, bind absent beneficiaries, validate a creditor-filed adversary by parties lacking standing, or approve a transaction built on unresolved property rights.

### E. Rule 60(b)(5): Predicate Failure, Reversal, Vacatur, Discharge, Release, Satisfaction, or Prospective Inequity.

Relief is warranted under Rule 60(b)(5) because the Settlement Order rests on predicates that have been satisfied, released, discharged, reversed, vacated, displaced, barred, or rendered inequitable for prospective enforcement.

First, the Settlement Order relied on a state-court partial order that was nonfinal and incapable of supplying a final estate-property predicate. To the extent the Settlement Order depends on that state-court order as a predicate, the predicate is invalid, ineffective, void,

13

voidable, displaced, or incapable of supporting continued prospective enforcement of the Settlement Order.

Second, the Settlement Order relied on King claims that could not proceed in light of the Florida bankruptcy order sustaining Myers's objection to King's claim. The Florida order prevented King from proceeding on claims against Myers and barred the claim structure later used in Myers's Maryland Chapter 7 case. A Rule 9019 settlement cannot prospectively rest on claims that were already disallowed, barred, precluded, or unable to proceed.

Third, the Florida order preventing claims against Myers from proceeding independently undermines the Settlement Order's claim predicate. The King Parties could not use a Maryland bankruptcy settlement-procedure order, late proofs of claim, or a King-filed adversary to revive claims or remedies barred by the Florida order.

Fourth, to the extent the Settlement Order has prospective effect, prospective application is no longer equitable because it operates on unresolved and invalid predicates: a nonfinal state-court order, barred King claims, unresolved proof-of-claim objections, absent necessary parties, undisclosed or inadequately disclosed conflicts, counsel-directed alteration or sanitization of the redemption narrative, and the lack of any final adjudication that Serv Trust's property was estate property.

Rule 60(b)(5) therefore applies because the Settlement Order's continued prospective enforcement depends on predicates that are invalid, displaced, barred, released, discharged, satisfied, reversed, vacated, or inequitable to enforce.

## F. Rule 60(b)(6): Any Other Reason Justifying Relief.

Relief is warranted under Rule 60(b)(6).

The Settlement Order rests on unresolved estate-property predicates, a nonfinal state-

14

court partial order, a creditor-filed adversary by parties lacking a direct claim against Myers, unresolved proof-of-claim objections, a Florida order barring King claims against Myers, the absence of Serv Trust, the current trustee, the beneficiaries, 6789 Goldsboro LLC, and other necessary parties, and newly discovered or newly confirmed conflict and fraud evidence relating to the Goldsboro transaction, Serv Trust K-1/redemption language, consolidated Maryland litigation, and the parties' later litigation positions.

Allowing the Settlement Order to stand would permit Rule 9019 to function as a substitute for due process, adversary procedure, claim adjudication, estate-property adjudication, final judgment, conflict disclosure, candor, and proper party participation. It would also allow a bankruptcy settlement order to have practical consequences for nonparty trust property while the persons and entities whose rights are implicated were never served with a complaint or afforded the process required by the Bankruptcy Code, Bankruptcy Rules, and Constitution.

Those circumstances justify relief under Rule 60(b)(6).

## G. Rule 60(d)(1) and Rule 60(d)(3): Independent Action and Fraud on the Court.

Myers also preserves relief under Rule 60(d)(1) and Rule 60(d)(3).

Rule 60(d)(1) preserves the Court's power to entertain an independent action to relieve a party from a judgment, order, or proceeding. To the extent the Court concludes that any aspect of the requested relief cannot be granted directly under Rule 60(b), Myers preserves the right to seek relief through an independent action, including relief on behalf of, or concerning the rights of, Myers, Serv Trust, the current Serv Trust trustee, the Serv Trust beneficiaries, 6789 Goldsboro LLC, and other affected parties.

Rule 60(d)(3) preserves the Court's power to set aside a judgment for fraud on the court. The conflict evidence, the counsel-directed alteration or sanitization of the alleged Serv Trust

redemption narrative, the "pick a date" communication, the undisclosed or inadequately disclosed roles of VerStandig, Offit Kurman, Pelletier, Lynch, King, and Goldsboro, and the use of the settlement process to affect alleged non-estate property without the required adversary proceeding preserve a fraud-on-the-court issue.

Myers requests discovery and an evidentiary hearing concerning fraud, misconduct, counsel conflicts, party alignment, settlement integrity, payment flows, reimbursement arrangements, and the source, destination, and use of funds connected to the Settlement Order.

## IV. THE JULY 3, 2025 ORAL RULING CONFIRMS THE MISSING ESTATE-PROPERTY AND AUTHORITY PREDICATES

The Bankruptcy Court's July 3, 2025 oral ruling confirms the missing predicates. The Court stated that the King Parties and Trustee were "not asking this Court to determine that the Debtor is the alter ego of Serv Trust, that Serv Trust assets are property of the Debtor's bankruptcy estate, or that the Trustee has the authority to administer the assets of Serv Trust." Yet those were threshold issues that had to be determined before the Court could approve a settlement directed at redemption of Serv Trust's alleged Goldsboro interest.

The Court also stated that it was not required to determine the validity and merits of the claims and was not required to define the rights and interests being settled or transferred. That was the central error. Rule 9019 does not authorize a court to approve a compromise of undefined rights in alleged non-debtor trust property. The Bankruptcy Court first had to determine whether the estate owned the rights being compromised or whether the Trustee had authority to compromise them.

The oral ruling's treatment of the Serv Trust beneficiaries confirms the due-process defect. The Court concluded the beneficiaries were no longer beneficiaries because Serv Trust had been disregarded by the alter-ego order. That reasoning uses the disputed, nonfinal alter-ego

16

order to eliminate the very parties entitled to contest whether their trust interests could be disregarded.

The oral ruling also confirms that the Bankruptcy Court approved the settlement without adjudicating Myers's claim objections and without considering the VerStandig conflict issue. The Court overruled the claim objections as moot because the King claims were to be withdrawn, even though the ruling also stated that the claims were deemed withdrawn only when the Settlement Order became final and non-appealable. The Court also stated that the VerStandig conflict issue was not properly before it and would be addressed later. These rulings confirm that material threshold issues were bypassed, not adjudicated.

The written Settlement Order cannot cure or expand the Bankruptcy Court's oral ruling. The oral ruling expressly disclaimed any determination that Serv Trust assets were estate property or that the Trustee had authority to administer Serv Trust assets. The written order therefore cannot be construed to supply findings the Court expressly said it was not making.

## V. RELATED APRIL 15, 2026 ORDERS AND PENDING APPEAL

After the July 3, 2025 Settlement Order, the Bankruptcy Court entered additional orders in this same adversary proceeding on April 15, 2026 at Docket Nos. 116, 117, 118, 119, 120, and 121. Those orders denied Myers's motion to intervene, motion to dismiss for failure to join indispensable parties, motions to disqualify the presiding judge, motion to disqualify counsel, and motion for summary judgment. Myers thereafter filed a protective motion seeking, among other relief, vacatur of those April 15, 2026 orders as void and, alternatively, an indicative ruling under Bankruptcy Rule 8008.

On May 26, 2026, the Bankruptcy Court denied that protective motion. The Bankruptcy Court stated that the motion was untimely and that, under the "functional test," the Court had

17

jurisdiction to consider the six motions. Myers appealed the May 26, 2026 order on June 1, 2026, and that appeal is pending in the United States District Court for the District of Maryland as Case No. 8:26-cv-02175-TDC.

The pending appeal from the May 26, 2026 order does not eliminate the need for this Rule 60(b) motion directed to the July 3, 2025 Settlement Order. The April 15 orders and the May 26 order arose after the Settlement Order and present related but distinct issues concerning the Bankruptcy Court's post-appeal authority, intervention, indispensable parties, disqualification, counsel conflict, and summary judgment in Adv. Proc. No. 24-00007.

The relevance here is narrower. The April 15 orders and the pending appeal confirm that the same adversary proceeding remains procedurally and jurisdictionally contested, including as to party status, indispensable parties, counsel conflict, judicial disqualification, and the Bankruptcy Court's authority to enter substantive orders affecting the adversary structure. Those issues overlap with, but do not replace, the grounds for Rule 60(b) relief from the July 3, 2025 Settlement Order.

Nothing in the April 15 orders, the May 26 order, or the pending appeal should be treated as curing the defects in the July 3, 2025 Settlement Order. Nor should any of those later orders be treated as preclusive against Myers in connection with this Rule 60(b) motion while their validity and effect are themselves pending before the District Court. The later orders cannot retroactively supply the missing July 3, 2025 predicates: a Trustee-filed adversary proceeding against Serv Trust and necessary parties, proper service, due process, King standing, claim adjudication, a final state-court judgment, or a final Section 541 determination.

The pending appeal further supports an indicative ruling under Bankruptcy Rule 8008 if this Court concludes that it lacks authority to grant immediate Rule 60(b) relief. The District

18

Court is already addressing related appellate issues in Case No. 8:26-cv-02175-TDC concerning the same adversary proceeding and the Bankruptcy Court's authority to enter orders affecting that proceeding. An indicative ruling would allow the District Court to determine whether remand is appropriate for this Court to grant relief from the July 3, 2025 Settlement Order or to address the substantial issues raised by this motion.

## VI. THE TRUSTEE NEVER FILED THE REQUIRED ADVERSARY PROCEEDING AGAINST SERV TRUST AND NECESSARY PARTIES

If the Trustee wanted to establish that Serv Trust's Goldsboro interest was property of Myers's bankruptcy estate, he had to file a proper adversary proceeding in bankruptcy court against Serv Trust, the current Serv Trust trustee, the Serv Trust beneficiaries, 6789 Goldsboro LLC, and any other necessary parties, with proper service, and obtain a Section 541 determination.

He did not.

The Trustee admitted that he never filed an adversary proceeding against Serv Trust. He admitted that he never filed any action against Serv Trust. The Trustee did not file an adversary proceeding against 6789 Goldsboro LLC. He did not name the current Serv Trust trustee. He did not name the beneficiaries. He did not obtain service on the persons and entities whose property rights were being affected.

The Trustee also admitted that he could not enter into an agreement binding non-estate property. He admitted that his estate-property theory depended on Judge Lease's order. He admitted that he did not attend any Montgomery County hearings. He admitted that he did not review the Serv Trust trust agreement in connection with the settlement. He admitted that he did not know the history of 6789 Goldsboro LLC before the First Amended Operating Agreement.

Those admissions confirm the missing predicate. Without a final state-court judgment,

19

without a Trustee adversary against Serv Trust and the necessary parties, without review of the trust instrument, and without a Section 541 determination, the Trustee had no established Serv Trust property interest to bind, settle, redeem, or transfer.

The King Parties and Goldsboro previously recognized the required steps. VerStandig told Judge Dwyer that if alter ego were established, marshaling Serv Trust assets would fall on Schlossberg in bankruptcy court and that Schlossberg would have to determine what those assets were, levy upon them, seize them, liquidate them, and proceed accordingly. Mastro told Judge Dwyer that the bankruptcy proceeding would be an adversary case to determine whether the disputed property was property of the estate.

Those steps never occurred. The Trustee did not marshal Serv Trust's property, levy on it, seize it, liquidate it, or file an adversary to determine whether Serv Trust's Goldsboro interest was property of the estate.

If the Trustee's theory depended on avoidance, recovery, alter ego, fraudulent transfer, nominee, veil-piercing, trust disregard, redemption, or any similar estate-creation theory, the Trustee had to bring that claim timely and directly. He did not. The Trustee cannot use Rule 9019, a creditor-filed adversary against himself, or disputed background allegations to accomplish indirectly what he did not do directly.

The King Parties' adversary against the Trustee did not cure that defect. The King Parties could not place Serv Trust's property rights, 6789 Goldsboro LLC's property rights, Myers's rights, or absent-party rights before the Bankruptcy Court by suing Schlossberg and alleging facts about absent nonparties.

Section 541 defines property of the estate. Section 704 authorizes the Trustee to collect and reduce to money property of the estate. Rule 7001 requires an adversary proceeding to

20

recover money or property, determine interests in property, or obtain declaratory relief relating to those matters.

The Trustee never obtained a Section 541 determination. He never recovered Serv Trust's property. He never obtained possession, turnover, control, title, or authority to administer Serv Trust's Goldsboro interest. The Trustee had no adjudicated Serv Trust property interest to settle, redeem, or transfer.

## VII. RULE 9019 COULD NOT SUBSTITUTE FOR THE MISSING ADVERSARY OR SECTION 541 DETERMINATION

Rule 9019 is a settlement-approval procedure. It is not an adjudication of property rights.

Rule 9019 does not create estate property. It does not recover non-estate property. It does not adjudicate title. It does not bind absent non-debtor property owners. It does not decide redemption, valuation, appraisal rights, MOU performance, alter-ego consequences, trust disregard, ownership of Serv Trust's Goldsboro interest, or the rights of absent nonparties.

The King Parties confirmed that the Rule 9019 hearing was not a merits trial. VerStandig stated that Rule 9019 is not a mini trial of the underlying case. He confirmed that the King Parties were not asking the Bankruptcy Court to determine that Serv Trust's assets were assets of Myers's estate. They were asking approval of a settlement of whatever the estate's interests may be. He further argued that a trustee can sell an estate interest to the extent it exists, if at all, even where the interest is potentially nonexistent.

The Bankruptcy Court made the same point. It stated that it had not been asked to determine whether the bankruptcy estate has rights. It further stated that if the estate had no rights at all, receiving $150,000 would be a benefit for the estate.

That was the error. A trustee cannot monetize and transfer non-estate property on the theory that, if the estate owns nothing, the estate got a good deal. The Bankruptcy Court first had

21

to determine whether the estate owned the disputed interest or had authority to compromise it.

The written Settlement Order confirms the missing predicate. The order did not determine that Serv Trust's Goldsboro interest was property of the estate. The order refers to payment for redemption of Serv Trust's interest, but the operative transfer clause conveys only the right, title, and interest of the Trustee, Debtor, and bankruptcy estate.

The order does not transfer Serv Trust's own property. It does not adjudicate that Serv Trust's interest belonged to the estate. It does not bind Serv Trust, 6789 Goldsboro LLC, the current trustee, or the beneficiaries. If the estate owned no Serv Trust interest, the settlement transferred no Serv Trust property.

The missing Section 541 determination could not be supplied by settlement approval, by the written Settlement Order, by a creditor-filed adversary against the Trustee, or by disputed allegations about absent non-debtor parties.

## VIII. THE STATE-COURT PROCEEDING COULD NOT SUBSTITUTE FOR THE MISSING ADVERSARY OR SECTION 541 DETERMINATION

The Trustee and King Parties relied on the January 12, 2023 state-court "Order Entering Partial Judgment and Stay" as a substitute for the adversary proceeding and Section 541 determination the Bankruptcy Code required. That reliance was improper.

A creditor-prosecuted state-court action could not itself make Serv Trust's Goldsboro interest property of Myers's bankruptcy estate. Property of the estate is defined by the Bankruptcy Code, not by state-court shorthand, creditor allegations, disputed findings, or nonfinal partial orders.

The Trustee was not the plaintiff in the state-court action. The Trustee did not prosecute an estate claim in that action. The Trustee did not obtain a judgment transferring Serv Trust property to the estate. The Trustee did not obtain possession, turnover, title, control, or a Section

22

541 adjudication.

Even if the King Parties eventually obtain a final state-court judgment, that judgment would be a judgment in a creditor action prosecuted by the King Parties. It would not automatically accrue to the benefit of Myers's bankruptcy estate. It would not be a Trustee recovery judgment. It would not substitute for an adversary proceeding by the Trustee against Serv Trust and the necessary parties. It would not itself vest Serv Trust's Goldsboro interest in the bankruptcy estate.

Nor could the state-court proceeding adjudicate Serv Trust's property rights through Myers. Myers was not serving as Serv Trust's trustee on January 3, 2023. He had resigned as trustee in May 2022. The current Serv Trust trustee was not before the state court. Serv Trust's beneficiaries were not before the state court. The trust agreement was not before the state court.

The January 12, 2023 partial order therefore could not bind Serv Trust, the current trustee, the beneficiaries, or 6789 Goldsboro LLC through Myers. If the Trustee wanted the estate to claim Serv Trust's Goldsboro interest, the Trustee had to bring the claim himself, in the Bankruptcy Court, through the required adversary proceeding, against the necessary parties, with proper service. He did not.

The Bankruptcy Court's July 3, 2025 oral ruling recognized the finality problem. The Court stated that if the King declaratory judgment case and the Goldsboro breach-of-contract case were "substantively consolidated or consolidated for all purposes," then the alter-ego order "may not be a final judgment." The Montgomery County Circuit Court did consolidate those cases for all purposes. Accordingly, the state-court order could not supply a final estate-property predicate for the Settlement Order.

The Bankruptcy Court nevertheless treated the nonfinal state-court order as valid and

23

effective unless revised by the state court or reversed on appeal. That was not enough. Even if a nonfinal state-court order has operative effect within the state-court case until revised, that does not make it a final judgment capable of binding absent trust beneficiaries, the current trustee, 6789 Goldsboro LLC, or the bankruptcy estate in a Rule 9019 proceeding. Nor does it authorize the Bankruptcy Court to dispense with a Trustee-filed adversary proceeding, service, due process, and a final Section 541 adjudication.

The District Court later relied on the wrong ACM mandate to support finality, but this Rule 60(b) motion is directed to the Bankruptcy Court's July 3, 2025 Settlement Order. The controlling point here is that the Bankruptcy Court approved the settlement despite recognizing that the state-court order might not be final if the state cases were consolidated for all purposes, and despite the absence of any independent bankruptcy adjudication that Serv Trust's Goldsboro interest was estate property.

## IX. KING LACKED STANDING TO FILE THE ADVERSARY

King lacked standing to file the adversary proceeding.

Standing is not created by interest in a dispute, hostility toward the debtor, litigation history, or the hope that a bankruptcy ruling may be useful elsewhere. A bankruptcy adversary proceeding requires a plaintiff with a direct bankruptcy stake.

King had no monetary claim against Myers. King had no judgment against Myers. King had no right to receive a distribution from Myers's bankruptcy estate. King had no direct pecuniary interest in the administration of Myers's bankruptcy case. King's dispute concerned Serv Trust and Goldsboro, not a debt owed by Myers.

King's own counsel admitted the point in state court. VerStandig told Judge Dwyer that the King Parties were not asserting a monetary claim against Serv Trust or Myers and that Myers

24

was present only as a necessary party. That admission defeats any later attempt to treat King as a bankruptcy creditor with standing to file an adversary in Myers's bankruptcy case.

The King proofs of claim did not cure King's lack of standing to file the adversary. A proof of claim may assert a right to payment from the estate. It does not authorize a claimant to file an adversary seeking declaratory relief concerning Serv Trust property, 6789 Goldsboro LLC, or rights under the Goldsboro Operating Agreement. Nor can a late proof-of-claim procedure create Article III standing or bankruptcy standing that otherwise does not exist.

Because King lacked standing, the King adversary could not serve as the vehicle for Rule 9019 settlement approval. Rule 9019 presupposes a valid matter within the Bankruptcy Court's authority and a compromise within the Trustee's lawful authority. It does not permit a trustee to validate an adversary filed by a party without standing by converting it into a settlement vehicle.

## X. MARYLAND TRUST LAW AND SECTION 541 PRECLUDE TREATING SERV TRUST PROPERTY AS PROPERTY OF MYERS'S ESTATE WITHOUT A PROPER FINAL ADJUDICATION

Serv Trust is a non-debtor Maryland trust with an express spendthrift provision. Myers was not the settlor. Myers was not a beneficiary. At most, Myers once served in a fiduciary capacity. A fiduciary office is not beneficial ownership of trust property.

Maryland trust law precludes treating Serv Trust property as Myers's bankruptcy-estate property merely because Myers served as trustee. Maryland Estates & Trusts Section 14.5-509 provides that trust property is not subject to the personal obligations of a trustee, even if the trustee becomes insolvent or bankrupt. Thus, trustee status did not make Serv Trust property property of Myers's personal bankruptcy estate.

Maryland law also makes a spendthrift provision valid and enforceable. A beneficial interest subject to a valid spendthrift restriction may not be judicially foreclosed, attached, transferred, or reached before distribution except as provided by statute. A creditor cannot do

25

indirectly through alter-ego allegations, settlement approval, or disputed background allegations what Maryland trust law bars directly.

The Bankruptcy Code respects the same limitations. Section 541(c)(2) preserves enforceable restrictions on transfer of a beneficial interest in a trust. Section 541(d) provides that the estate receives no greater interest than the debtor held. If Myers held only fiduciary authority or bare legal title as trustee, the estate received no beneficial ownership of Serv Trust property.

No court analyzed the Serv Trust trust agreement in a proceeding capable of binding the current trustee, beneficiaries, 6789 Goldsboro LLC, and other necessary parties. No court finally determined trustee powers, beneficiary rights, settlor intent, revocability, discretionary distribution protections, spendthrift restrictions, or what legal or equitable interest, if any, Myers held in Serv Trust or Serv Trust's Goldsboro interest. Rule 9019 approval could not supply those missing determinations.

## XI. THE SETTLEMENT ORDER VIOLATED DUE PROCESS TO THE EXTENT IT PURPORTS TO BIND ABSENT NONPARTIES OR AFFECT THEIR PROPERTY RIGHTS

A person or entity is not bound by a judgment in litigation to which that person or entity was not made a party. The required procedure is not optional. Before a court can adjudicate property rights, the persons and entities whose rights are at stake must be brought before the court through a complaint, proper service, and an opportunity to be heard.

Serv Trust was not a plaintiff or defendant in a Trustee-filed adversary proceeding. 6789 Goldsboro LLC was not a party to a Trustee-filed adversary proceeding. The current Serv Trust trustee was not before the Court as the representative of the trust. The Serv Trust beneficiaries were not parties. Those absent parties did not consent to final adjudication of their property rights by an Article I bankruptcy court through a Rule 9019 settlement hearing.

The Bankruptcy Court therefore could not determine, directly or indirectly, that Serv

26

Trust's Goldsboro interest was property of Myers's estate, that the Trustee could compromise it, that it could be redeemed through the settlement structure, or that absent non-debtors were bound by the settlement. Those determinations required a complaint, proper service, necessary parties, and an adjudication by a court with authority to enter the judgment.

The due-process defect independently renders the Settlement Order void to the extent it purports to affect absent nonparty rights or Serv Trust property.

## XII. THE BANKRUPTCY COURT HAD TO DECIDE MYERS'S OBJECTIONS TO THE KING PROOFS OF CLAIM BEFORE USING THOSE CLAIMS AS PART OF THE SETTLEMENT STRUCTURE

The King proofs of claim were filed in the main bankruptcy case. Myers objected to them. Once Myers objected, the claims were not allowed claims, and the Bankruptcy Court had to decide the objections before treating the King claims as valid claims against the estate or as a proper predicate for settlement approval.

After Myers objected, King could not withdraw the claims as of right. Bankruptcy Rule 3006 provides that, after an objection is filed, a creditor may withdraw a proof of claim only by court order after notice and hearing and on such terms as the court deems proper. The claims therefore could not be treated as automatically withdrawn or moot.

The July 3, 2025 oral ruling confirms the problem. The Court overruled Myers's claim objections as moot because the King claims were being withdrawn in connection with the settlement, but the same ruling stated that the King claims were deemed withdrawn only when the Settlement Order became final and non-appealable. Thus, when the Court overruled the objections as moot, the claims had not yet been finally withdrawn, the Settlement Order was subject to appeal and reconsideration, and Myers's objections remained unresolved.

The Bankruptcy Court could not use the King claims as part of the structure supporting King's participation, King standing, party-in-interest status, and settlement approval while

27

refusing to adjudicate Myers's objections to those same claims. The same claims could not be operative for standing and settlement purposes but moot for objection purposes.

Myers is filing, or intends to file, a separate Rule 60(b) motion in the main bankruptcy case directed to the claim-objection order. That motion will address the claim-objection order directly. This motion addresses the related but distinct problem that the Settlement Order itself rests on unresolved, objected-to, and not-finally-withdrawn King claims.

## XIII. THE SETTLEMENT ORDER RESTS ON HYPOTHETICAL JURISDICTION AND CANNOT STAND

The Bankruptcy Court approved a settlement whose practical object was payment for redemption of "Serv Trust's interest" in 6789 Goldsboro LLC. But the Court did not determine whether that interest was property of the estate.

If Serv Trust's Goldsboro interest was property of the estate, the Trustee first had to establish that through a proper adversary proceeding. If Serv Trust's Goldsboro interest was not property of the estate, the Bankruptcy Court lacked authority to affect it. The Court could not avoid the threshold estate-property issue by approving a transfer of whatever interest the Trustee, Debtor, or estate might have. The "if any" question was the jurisdictional question.

A court cannot exercise hypothetical jurisdiction over property rights. The Settlement Order should therefore be vacated as void to the extent it rests on an unresolved estate-property predicate or purports to affect rights in Serv Trust property without a valid adjudication that those rights are property of the estate.

## XIV. TRUSTEE ACCOUNTABILITY, BOND RIGHTS, AND THE NEED FOR A FULL EVIDENTIARY RECORD

Myers requests a full evidentiary record because the issues raised by this motion concern the Trustee's authority, the Trustee's business judgment, the Trustee's handling of alleged non-estate property, the source and disposition of settlement funds, the existence of reimbursement or

28

indemnity arrangements, the role of professionals, and potential claims implicating the Trustee's bond.

A Chapter 7 trustee is a fiduciary and acts under bond. If the Trustee accepted, transferred, administered, compromised, monetized, or disposed of property that was not property of the estate, or if the Trustee relied on a conflict-tainted settlement structure to obtain payment for alleged rights never adjudicated as estate property, those facts are material not only to Rule 60(b) relief but also to potential surcharge, disgorgement, professional-fee review, contempt, sanctions, and claims on the Trustee's bond.

The $150,000 settlement payment and any related fee-reimbursement, indemnity, side-payment, or professional-payment arrangements are therefore material. The Court approved a settlement that included payment by the King Parties to the Trustee and reimbursement of the Trustee's fees and expenses for appeals and reconsideration-related proceedings. Myers is entitled to discovery and an accounting concerning the source, timing, receipt, deposit, use, disposition, and reporting of those funds, as well as any related payments by King, Goldsboro, or any related person or entity to Schlossberg, Mastro, Trustee's counsel, VerStandig, Offit Kurman, Pelletier, Lynch, accountants, appraisers, or other professionals.

The Trustee-bond issue is concrete and already preserved. On June 26, 2026, Myers requested from the Office of the United States Trustee the current Chapter 7 trustee bond, blanket bond, declarations, schedules, riders, endorsements, renewals, amendments, continuation certificates, and any case-specific or supplemental bond documents covering Roger Schlossberg from January 1, 2017 through the present. On June 29, 2026, Assistant United States Trustee Jeanette Rice responded that Chapter 7 trustee bonds are filed with the Clerk of the Bankruptcy Court and directed Myers to request copies of Schlossberg's bonds from the Clerk. **Exhibit F**.

This confirms that the bond documents are obtainable court-filed materials and that the bond issue is directly tied to Trustee accountability, estate administration, and the requested accounting and discovery.

At minimum, the Trustee should file a verified accounting and the parties and professionals should preserve and produce documents sufficient to identify the source, receipt, deposit, use, disposition, and reporting of all settlement-related funds, reimbursements, indemnity obligations, fee payments, side payments, professional payments, and Trustee-bond coverage connected to the Settlement Order, the King claims, the alleged Serv Trust redemption, the adversary proceeding, the state-court litigation, and related appeals or reconsideration proceedings.

## XV. ACCOUNTING, TARGETED DISCOVERY, PAYMENT TRACING, AND SETTLEMENT-RELATED DISCLOSURES

Myers requests targeted discovery and an accounting concerning all consideration, payments, reimbursements, fee payments, indemnity payments, transfers, credits, side agreements, promises, or other value exchanged or promised in connection with the July 3, 2025 Settlement Order, the December 11, 2023 settlement-procedure order, the King adversary proceeding, the King proofs of claim, the alleged Serv Trust redemption, and the related Goldsboro/Serv Trust litigation.

The Settlement Order itself made payment and reimbursement central to approval. The oral ruling described the settlement as including payment of $150,000 by the King Parties to the Trustee for the benefit of the estate and also included a provision under which the King Parties would reimburse the Trustee for reasonable legal fees and expenses incurred in connection with appeals and later extended that reimbursement obligation to reconsideration-related proceedings. The ruling also deemed King Claim Nos. 21, 22, and 23 withdrawn only when the order became

final and non-appealable. These terms make the source, timing, amount, recipient, purpose, and use of settlement-related payments material to the Rule 60(b) inquiry.

Myers requests discovery and an accounting sufficient to determine:

1. whether the $150,000 settlement payment was paid;

2. when the $150,000 was paid;

3. who paid the $150,000;

4. the source of the $150,000;

5. who received the $150,000;

6. where the $150,000 was deposited;

7. whether the $150,000 remains in the estate account, was distributed, was escrowed, was transferred, was commingled, or was otherwise used;

8. whether the Trustee, Mastro, the Trustee's counsel, Goldsboro, Offit Kurman, VerStandig, the King Parties, or any related person or entity entered into any side agreement, reimbursement agreement, indemnity agreement, fee-shifting agreement, oral agreement, written agreement, or informal understanding concerning the settlement, appeals, reconsideration proceedings, claim withdrawals, dismissal of the adversary, redemption of Serv Trust's interest, or payment of fees;

9. whether King, Goldsboro, or any related person or entity paid or reimbursed Schlossberg, Mastro, the Trustee's counsel, Offit Kurman, VerStandig, Pelletier, Lynch, Goldsboro's counsel, accountants, appraisers, or any other person or entity in connection with the Settlement Order, the adversary proceeding, the state-court litigation, the Serv Trust K-1, the 6789 Goldsboro LLC tax return, the alleged redemption, or related appeals;

31

10. whether any settlement-related funds were paid directly or indirectly to the Trustee, Trustee's counsel, Mastro, Goldsboro, Offit Kurman, VerStandig, King, or any affiliate, client trust account, escrow account, law firm account, estate account, or third-party account;

11. whether any payment was made by Goldsboro to Schlossberg, Mastro, Trustee's counsel, the King Parties, VerStandig, Offit Kurman, or any related person or entity;

12. whether any payment was made by King or the King Parties to Schlossberg, Mastro, Trustee's counsel, Goldsboro, Offit Kurman, VerStandig, Pelletier, Lynch, accountants, appraisers, or related persons or entities;

13. whether any payment was made by or for Goldsboro or King to fund litigation, appeals, reconsideration, settlement approval, claim withdrawal, dismissal, or defense of the Settlement Order;

14. whether any estate funds, settlement funds, trust funds, Goldsboro funds, King funds, or third-party funds were used to pay counsel or expenses connected to the settlement structure;

15. whether any payment, reimbursement, or promise of payment affected the Trustee's independence, business judgment, settlement recommendation, litigation position, or decision not to file a Trustee adversary proceeding against Serv Trust and necessary parties;

16. whether any payment, reimbursement, or promise of payment affected the presentation of facts to the Court, including facts concerning the alleged redemption, the Serv Trust K-1, the 6789 Goldsboro LLC tax return, the "pick a date" communication, the King proofs of claim, and the claimed withdrawal of those

32

claims;

17. whether any settlement proceeds, reimbursements, fee payments, or related payments were reported to the Court, the United States Trustee, creditors, or parties in interest;

18. whether the Trustee filed or should file a report, accounting, application, supplement, or disclosure concerning receipt, use, disposition, or reimbursement of settlement-related funds;

19. the identity of the applicable Trustee bond or bonds, surety, effective dates, coverage limits, aggregate limits, case-specific increases, riders, endorsements, renewals, amendments, and continuation certificates covering Schlossberg during the period relevant to the Settlement Order, the $150,000 settlement payment, any fee reimbursements, and any administration or disposition of alleged Serv Trust/Goldsboro interests;

20. the meaning, implementation, and current status of the Settlement Order's "final and non-appealable" condition, including whether King Claim Nos. 21, 22, and 23 have been treated as withdrawn, when, by whom, on what authority, and whether any party has acted inconsistently with that condition while appeals, rehearing, or Rule 60 proceedings remain pending;

21. who drafted each version of the proposed Settlement Order, who reviewed it, who requested changes, and who added or approved language concerning appeal and reconsideration fee reimbursement;

22. any communications and drafts concerning preparation, revision, submission, and entry of the proposed Settlement Order;

23. any common-interest agreement, joint-defense agreement, cooperation agreement,

indemnity agreement, fee-sharing agreement, reimbursement agreement, or informal arrangement among the Trustee, King Parties, Goldsboro, VerStandig, Offit Kurman, Mastro, or any related person concerning the settlement, appeals, claims, redemption, or defense of the Settlement Order; and

24. all conflict checks, conflict disclosures, conflict waivers, engagement letters, termination letters, and retention communications concerning VerStandig, Offit Kurman, Pelletier, Lynch, Goldsboro, King, Serv Trust, 6789 Goldsboro LLC, Myers, the Trustee, and any related representation concerning the Goldsboro property or alleged redemption.

The accounting should include trust-account ledgers, escrow records, wire confirmations, deposit records, canceled checks, invoices, fee statements, reimbursement requests, and communications sufficient to trace every dollar paid, received, reimbursed, escrowed, transferred, commingled, or applied in connection with the Settlement Order.

The requested discovery is proportional and directly tied to the relief sought. The Trustee's business judgment, the fairness of the Rule 9019 process, the integrity of the settlement, the validity of the payment/reimbursement structure, the alleged withdrawal of King claims, and the potential existence of side agreements cannot be evaluated without discovery into payments, consideration, conflicts, and implementation.

To the extent any party or professional withholds responsive documents based on privilege, work product, common-interest, joint-defense, or confidentiality, Myers requests a privilege log identifying the date, author, recipient, subject matter, asserted privilege, and basis for withholding.

Myers therefore requests that the Court require the Trustee and the King Parties to file

verified disclosures under penalty of perjury identifying all payments, reimbursements, indemnity obligations, side agreements, escrow arrangements, fee-defense agreements, settlement-defense agreements, claim-withdrawal consideration, dismissal consideration, and professional-payment arrangements connected to the Settlement Order, the King claims, the adversary proceeding, the alleged Serv Trust redemption, and related appeals or reconsideration proceedings.

## XVI. EX PARTE, OFF-DOCKET, CHAMBERS, CLERK, AND PROPOSED-ORDER COMMUNICATIONS

Myers requests disclosure and production of any ex parte communications, off-docket communications, proposed-order communications, chambers communications, clerk communications, email communications, letters, telephone communications, or other communications between the Court or Court staff and any party, counsel, professional, or representative concerning the Settlement Order, the proposed form of order, settlement implementation, payment timing, fee reimbursement, appeal or reconsideration reimbursement, claim withdrawal, adversary dismissal, docketing of dismissal papers, proposed findings, proposed language, or any other matter relating to the July 3, 2025 Settlement Order or its implementation.

This request includes communications by or involving the Trustee, Trustee's counsel, Mastro, the King Parties, VerStandig, Goldsboro, Offit Kurman, Pelletier, Lynch, or any related person or entity. To the extent any such communications occurred, Myers requests that they be identified, preserved, and produced, and that the record be supplemented accordingly.

Myers does not know whether any such communications occurred, but because the Settlement Order was prepared after an oral ruling, included material settlement terms, and was followed by implementation, claim-withdrawal, dismissal, and reimbursement issues, any off-

35

docket communications concerning those matters are material to the Rule 60(b), Rule 60(d), accounting, discovery, and evidentiary-hearing requests.

## XVII. PRESERVATION OF DOCUMENTS, ELECTRONIC RECORDS, AND FINANCIAL RECORDS

Myers requests that the Court direct all parties and counsel to preserve all documents, electronically stored information, communications, billing records, trust-account records, wire records, bank records, invoices, settlement communications, engagement letters, conflict waivers, fee agreements, reimbursement agreements, indemnity agreements, accountant communications, tax-return communications, K-1 communications, appraisal communications, metadata, and payment records relating to:

1. the Goldsboro property transaction;

2. 6789 Goldsboro LLC;

3. Serv Trust;

4. the alleged Serv Trust redemption;

5. the 2018 Serv Trust K-1;

6. the 6789 Goldsboro LLC tax return;

7. the October 2019 email chain;

8. the "pick a date" communication;

9. the King declaratory action;

10. the Goldsboro collection action;

11. the consolidated Maryland action;

12. the December 11, 2023 settlement-procedure order;

13. the King proofs of claim;

14. the King adversary proceeding;

36

15. the July 3, 2025 Settlement Order;

16. the $150,000 settlement payment;

17. any reimbursement or payment of Trustee fees, Trustee counsel fees, Mastro fees, Schlossberg fees, VerStandig fees, Offit Kurman fees, Goldsboro fees, accountant fees, appraisal fees, or appeal/reconsideration expenses;

18. communications among or between King, VerStandig, Goldsboro, Offit Kurman, Pelletier, Lynch, Mastro, Schlossberg, Trustee's counsel, accountants, appraisers, and any related person or entity;

19. any side agreements, oral agreements, written agreements, informal understandings, or undisclosed arrangements relating to settlement, redemption, claim withdrawal, dismissal, fee reimbursement, appeal reimbursement, reconsideration expenses, or the defense of the Settlement Order; and

20. any ex parte, off-docket, chambers, clerk, proposed-order, scheduling, settlement-implementation, claim-withdrawal, dismissal, fee-reimbursement, or payment-related communications with the Court or Court staff concerning the Settlement Order, the form of order, the adversary dismissal, the King claim withdrawals, appeal/reconsideration fee reimbursement, or implementation of the settlement.

The preservation request is necessary because the Rule 60(b)(2), Rule 60(b)(3), Rule 60(b)(6), Rule 60(d)(1), and Rule 60(d)(3) issues concern conflict, fraud, misconduct, payment flows, undisclosed agreements, and counsel-directed alteration or sanitization of the documentary record. The Court should preserve the status quo and prevent destruction or alteration of relevant evidence while the Rule 60 motion and any related appeals are pending.

## XVIII. RULE 2014, PROFESSIONAL COMPENSATION, AND DISCLOSURE ISSUES

Myers requests that the Court require the Trustee and all estate professionals involved in the Settlement Order to supplement their Rule 2014 disclosures and any retention or compensation disclosures to identify all connections with the King Parties, Goldsboro, VerStandig, Offit Kurman, Pelletier, Lynch, Mastro, the Trustee, Trustee's counsel, accountants, appraisers, and any person or entity paying or reimbursing fees or expenses related to the settlement, appeal, reconsideration, or defense of the Settlement Order.

If discovery shows undisclosed compensation, reimbursement, indemnity, conflicts, side agreements, or materially incomplete Rule 2014 disclosures, Myers preserves the right to seek disgorgement, fee disallowance, sanctions, disqualification, and other relief against any estate professional or professional whose compensation or role affected the Settlement Order.

Myers also preserves the right to object to, seek review of, or seek disgorgement of any compensation, reimbursement, or payment to the Trustee, Trustee's counsel, Mastro, or any estate professional arising from or related to the Settlement Order, the King adversary, the King claims, or defense of the settlement.

## XIX. SEGREGATION OF FUNDS, IMPLEMENTATION, AND NO MOOTNESS

Myers requests preservation and segregation of settlement-related funds so that relief is not rendered impracticable. If settlement proceeds, reimbursement payments, or related funds have been distributed, transferred, applied to fees, or commingled, the Court should require a verified accounting and preserve the ability to order disgorgement, surcharge, turnover, clawback, restoration, or other appropriate relief.

Implementation or partial implementation of the Settlement Order does not moot Rule 60 relief. If funds have been paid, distributed, reimbursed, transferred, applied to fees, or commingled, the Court retains authority to order accounting, segregation, disgorgement,

surcharge, turnover, restoration, clawback, or other relief necessary to remedy consequences of a void or otherwise defective order.

Pending adjudication of this motion, no party should rely on the Settlement Order as an adjudication that Serv Trust's Goldsboro interest is property of the estate, that Serv Trust was validly redeemed, that the Trustee had authority over Serv Trust assets, that Serv Trust beneficiaries have no rights, or that 6789 Goldsboro LLC or any absent nonparty is bound.

Myers's request for an accounting, discovery, preservation, segregation of funds, or evidentiary hearing does not ratify the Settlement Order, concede that the estate owned any Serv Trust interest, concede that the Trustee had authority over Serv Trust property, or waive any voidness, due-process, standing, jurisdictional, claim-objection, conflict, fraud, or bond-related argument.

## XX. FULL EVIDENTIARY HEARING, TARGETED DISCOVERY, AND ACCOUNTING ARE REQUIRED

Myers requests a full evidentiary hearing, targeted discovery, and a verified accounting concerning the factual issues raised by this motion.

The issues raised here are not limited to legal disagreement with the Settlement Order. They include estate-property status, Trustee authority, payment flows, professional reimbursements, conflicts, fraud, misconduct, claim withdrawal, the alleged Serv Trust redemption narrative, the $150,000 settlement payment, fee-reimbursement arrangements, side agreements, and potential Trustee-bond issues.

The prior Rule 9019 hearing was not a trial of these issues. The Bankruptcy Court's oral ruling expressly stated that the King Parties and Trustee were not asking the Court to determine whether Serv Trust assets were property of the estate or whether the Trustee had authority to administer Serv Trust assets. The Court also stated that it was not required to define the rights

39

and interests being settled or transferred. Those statements confirm that the existing record is not an adjudicated record on the factual issues now raised.

A full evidentiary hearing should include testimony from, at minimum, Schlossberg, Mastro, VerStandig, Pelletier, Lynch, Brian King, a Goldsboro representative, any accountant involved in the Serv Trust K-1 or 6789 Goldsboro LLC tax return, and any person with knowledge of the settlement payment, fee reimbursements, indemnity agreements, side agreements, or payment flows.

Targeted discovery should include bank records, trust-account records, wire records, settlement communications, fee agreements, indemnity agreements, reimbursement agreements, attorney invoices, accountant communications, tax-return communications, K-1 communications, appraisal/redemption communications, common-interest agreements, joint-defense agreements, conflict waivers, engagement letters, termination letters, order-drafting communications, and communications concerning the Settlement Order and defense of the Settlement Order.

The evidentiary record is necessary to determine the Trustee's authority, the source and disposition of settlement funds, the existence and terms of any reimbursement or indemnity arrangements, the role of professionals, the integrity of the settlement process, and whether the facts support relief under Rule 60(b), Rule 60(d), Bankruptcy Rule 9024, Bankruptcy Rule 8008, Rule 9019, Rule 3006, due process, professional-compensation principles, disgorgement, surcharge, sanctions, contempt, or claims implicating the Trustee's bond.

These disclosures are necessary because the Settlement Order cannot be fairly evaluated without knowing who paid whom, who represented whom, who drafted or altered the redemption narrative, who funded the settlement and its defense, and whether any undisclosed conflict,

40

reimbursement, indemnity, side agreement, or off-docket communication affected the Trustee's business judgment or the Court's Rule 9019 analysis.

## XXI. NOTICE TO THE UNITED STATES TRUSTEE

Myers is serving this motion on the United States Trustee because the motion raises issues concerning Trustee authority, estate administration, professional compensation, settlement proceeds, reimbursement and indemnity arrangements, conflicts, disclosure obligations, preservation of estate funds, and potential bond-related matters.

Service on the United States Trustee is not a substitute for the relief requested from this Court, but it is appropriate given the fiduciary, estate-administration, professional-compensation, disclosure, payment-flow, and bond issues raised by the Settlement Order and related implementation.

## XXII. STATUS CONFERENCE

Myers requests that, after responses are filed, the Court set a status conference to establish a schedule for targeted discovery, verified accounting, preservation issues, supplemental briefing, and an evidentiary hearing.

## XXIII. INDICATIVE RULING UNDER BANKRUPTCY RULE 8008

If the Court concludes that any pending appeal limits its authority to grant immediate relief, Myers requests an indicative ruling under Bankruptcy Rule 8008(a)(3). The Court should state that it would grant this Rule 60(b) motion, or that the motion raises substantial issues, under Rule 60(b)(1), (2), (3), (4), (5), and/or (6).

An indicative ruling is particularly appropriate because related appeals are already pending before the District Court concerning the same adversary proceeding, including Case No. 8:26-cv-02175-TDC, which arises from the Bankruptcy Court's May 26, 2026 order denying

41

Myers's protective motion concerning the April 15, 2026 orders. Those appeals involve overlapping issues concerning the Bankruptcy Court's authority, party status, indispensable parties, counsel conflict, judicial disqualification, and the adversary structure. The present motion seeks relief from the underlying July 3, 2025 Settlement Order itself.

## XXIV. RESERVATION OF RIGHTS AND NO WAIVER

Myers expressly reserves all rights, claims, objections, defenses, appeals, sanctions requests, disqualification requests, discovery requests, accounting requests, disgorgement requests, surcharge requests, contempt requests, clawback requests, restoration requests, turnover requests, claim-objection arguments, Rule 60(b) arguments, Rule 60(d) arguments, Rule 9024 arguments, Rule 8008 arguments, Rule 3006 arguments, Rule 9019 arguments, Rule 7001 arguments, due-process arguments, jurisdictional arguments, constitutional arguments, Trustee-bond arguments, and independent-action arguments in the main bankruptcy case, this adversary proceeding, the pending District Court appeals, and any related proceedings.

Nothing in this motion should be construed as a waiver, narrowing, abandonment, election of remedies, consent to jurisdiction, consent to final adjudication, consent to the Settlement Order, consent to the December 11, 2023 settlement-procedure order, consent to the King adversary, consent to the withdrawal of King claims, consent to the claim-objection ruling, consent to the use of Rule 9019 as a substitute for an adversary proceeding, or consent to any adjudication affecting Serv Trust, 6789 Goldsboro LLC, the Serv Trust beneficiaries, the current trustee, Myers, or other absent or affected parties.

Myers further preserves the right to seek additional relief based on discovery, including relief against the Trustee, the Trustee's professionals, the King Parties, Goldsboro, VerStandig, Offit Kurman, Pelletier, Lynch, Mastro, accountants, appraisers, or any related person or entity,

42

to the extent the evidence establishes undisclosed payments, conflicts, fraud, misconduct, concealment, improper reimbursement, improper indemnity, improper settlement consideration, off-docket communications, or any other matter affecting the integrity of the Settlement Order.

Myers also preserves the right to seek surcharge, disgorgement, sanctions, contempt, disqualification, professional-fee review, claim-objection relief, Rule 60(d) relief, independent-action relief, fraud-on-the-court relief, and relief against the Trustee's bond. Nothing in this motion, including the request for accounting, discovery, preservation, segregation, or evidentiary hearing, ratifies the Settlement Order, concedes estate ownership of Serv Trust property, concedes Trustee authority, waives voidness, or consents to any adjudication affecting Serv Trust, 6789 Goldsboro LLC, beneficiaries, the current trustee, Myers, or other absent or affected parties.

## XXV. EXHIBITS

Exhibit A – October 10-11, 2019 email chain concerning the Serv Trust K-1, 6789 Goldsboro LLC tax return, redemption language, VerStandig, King, Pelletier, Lynch, and accountant communications.

Exhibit B – June 18, 2013 Lynch email to Myers and Brian King confirming Lynch/Offit Kurman involvement in the Goldsboro property transaction and stating that both Myers and King were clients.

Exhibit C – June 7, 2018 Souza letter to VerStandig giving notice of conflict and intent to seek disqualification.

Exhibit D – June 13, 2018 VerStandig response letter concerning his representation of Goldsboro LLC and the King Parties.

Exhibit E – August 14, 2018 order consolidating 6789 Goldsboro LLC v. Serv Trust and

43

Brian King, et al. v. Serv Trust for all purposes.

**Exhibit F** – June 29, 2026 email from Assistant United States Trustee Jeanette Rice

advising that Chapter 7 Trustee bonds are filed with the Clerk and that Myers should

request Roger Schlossberg's bond documents from the Clerk.

## XXVI. RELIEF REQUESTED

**WHEREFORE**, Debtor Gregory B. Myers respectfully requests that the Court enter an

order:

1. granting this motion under Rule 60(b)(1), Rule 60(b)(2), Rule 60(b)(3), Rule

   60(b)(4), Rule 60(b)(5), Rule 60(b)(6), Bankruptcy Rule 9024, Rule 60(d)(1), and

   Rule 60(d)(3);

2. vacating the July 3, 2025 Settlement Order as void to the extent it purports to

   adjudicate, bind, transfer, compromise, redeem, extinguish, or otherwise affect any

   right, title, interest, claim, or defense of Serv Trust, the current Serv Trust trustee, the

   Serv Trust beneficiaries, 6789 Goldsboro LLC, Myers, or any other absent nonparty

   in or concerning Serv Trust property;

3. holding that the December 11, 2023 settlement-procedure order was interlocutory,

   merged into the July 3, 2025 Settlement Order, and is reviewable and challengeable

   as part of Myers's Rule 60(b) attack on the Settlement Order;

4. vacating the July 3, 2025 Settlement Order because it rests on the interlocutory

   December 11, 2023 settlement-procedure order, which created a procedure not

   authorized by the Bankruptcy Code, Bankruptcy Rules, or due process;

5. holding that the Trustee was required to file a proper adversary proceeding against

   Serv Trust and necessary parties before any bankruptcy court could adjudicate or

44

affect Serv Trust's Goldsboro interest;

6. holding that Rule 9019 could not substitute for the missing Section 541 and Rule 7001 adjudication;

7. holding that no final state-court judgment determined that Serv Trust's Goldsboro interest was property of Myers's bankruptcy estate;

8. holding that neither the Settlement Order nor any related oral ruling binds Serv Trust, 6789 Goldsboro LLC, the current trustee, the beneficiaries, or other absent nonparties;

9. holding or declaring that nothing in the April 15, 2026 orders, the May 26, 2026 order, or the pending appeal in Case No. 8:26-cv-02175-TDC cures, moots, waives, or precludes Myers's Rule 60(b) challenge to the July 3, 2025 Settlement Order;

10. holding or declaring that the Settlement Order does not moot, waive, preclude, or cure Myers's separate Rule 60(b) challenge to the main-case order overruling Myers's objections to King Claim Nos. 21, 22, and 23 as moot;

11. ordering a full evidentiary hearing on the factual issues raised in this motion;

12. ordering the Trustee and the King Parties to file verified disclosures under penalty of perjury identifying all payments, reimbursements, indemnity obligations, side agreements, escrow arrangements, fee-defense agreements, settlement-defense agreements, claim-withdrawal consideration, dismissal consideration, and professional-payment arrangements connected to the Settlement Order, the King claims, the adversary proceeding, the alleged Serv Trust redemption, and related appeals or reconsideration proceedings;

13. ordering the Trustee to file a verified accounting of the $150,000 settlement payment,

all fee reimbursements, all appeal/reconsideration reimbursement payments, all indemnity arrangements, all side agreements, and all settlement-related consideration;

14. ordering the Trustee to preserve and segregate all funds received under or related to the Settlement Order, including the $150,000 payment and any fee-reimbursement, appeal-reimbursement, reconsideration-reimbursement, indemnity, or related payments, pending adjudication of this motion and any related appeals;

15. permitting targeted discovery concerning settlement funds, payment flows, fee reimbursements, indemnity agreements, professional payments, conflicts, the alleged Serv Trust redemption, the Serv Trust K-1, the 6789 Goldsboro LLC tax return, the "pick a date" communication, the King claims, the Trustee's authority, and the Trustee's bond;

16. permitting discovery under the Federal Rules of Bankruptcy Procedure, including Rules 7026 through 7037, and/or examination and document production under Rule 2004 to the extent the Court determines that the requested discovery should proceed in the main bankruptcy case rather than solely in this adversary proceeding;

17. requiring production of all written settlement agreements, drafts, term sheets, emails, side agreements, indemnity agreements, reimbursement agreements, fee-payment agreements, dismissal agreements, claim-withdrawal agreements, escrow instructions, wire instructions, and communications concerning implementation or defense of the Settlement Order;

18. requiring disclosure, preservation, and production of any ex parte, off-docket, chambers, clerk, proposed-order, settlement-implementation, claim-withdrawal, dismissal, fee-reimbursement, appeal/reconsideration reimbursement, or payment-

related communications with the Court or Court staff concerning the Settlement Order or its implementation;

19. requiring the Trustee and estate professionals to supplement any Rule 2014 disclosures, retention disclosures, fee disclosures, conflict disclosures, and compensation disclosures to identify all relationships, payments, reimbursements, indemnity obligations, fee-defense agreements, or other connections involving the King Parties, Goldsboro, VerStandig, Offit Kurman, Pelletier, Lynch, Mastro, the Trustee, Trustee's counsel, accountants, appraisers, or related entities;

20. requiring the Trustee, or alternatively the Clerk to the extent appropriate, to identify and produce the trustee bond, blanket bond, declarations, schedules, riders, endorsements, renewals, continuation certificates, and any case-specific or supplemental bond documents covering Roger Schlossberg for the period relevant to the Settlement Order and related administration;

21. directing all parties, counsel, professionals, accountants, and related entities to preserve documents, electronically stored information, billing records, bank records, trust-account records, wire records, settlement records, communications, fee agreements, reimbursement agreements, indemnity agreements, tax records, K-1 records, appraisal records, metadata, and documents relating to the Goldsboro property, Serv Trust, 6789 Goldsboro LLC, the alleged redemption, the Settlement Order, and all related payment flows;

22. requiring any party or professional withholding responsive documents based on privilege, work product, common-interest, joint-defense, or confidentiality to provide a privilege log identifying the date, author, recipient, subject matter, asserted

47

privilege, and basis for withholding;

23. authorizing supplemental briefing after completion of targeted discovery, verified accounting, and any evidentiary hearing;

24. setting a status conference after responses are filed to establish a schedule for targeted discovery, verified accounting, preservation issues, supplemental briefing, and an evidentiary hearing;

25. declaring that, pending adjudication of this motion, no party may rely on the Settlement Order as an adjudication that Serv Trust's Goldsboro interest is property of the estate, that Serv Trust was validly redeemed, that the Trustee had authority over Serv Trust assets, that Serv Trust beneficiaries have no rights, or that 6789 Goldsboro LLC or any absent nonparty is bound;

26. declaring that no stipulation of dismissal, claim withdrawal, settlement implementation act, payment, reimbursement, or docket entry entered under or in reliance on the Settlement Order shall be treated as binding on Myers, Serv Trust, the current trustee, the Serv Trust beneficiaries, 6789 Goldsboro LLC, or any absent nonparty pending adjudication of this motion;

27. preserving Myers's right to seek clawback, restoration, turnover, disgorgement, surcharge, or other relief against any recipient of settlement-related funds, reimbursements, or professional payments if the Settlement Order is vacated or if discovery shows the funds were paid, transferred, applied, or received under a void or defective order;

28. preserving Myers's right to seek surcharge, disgorgement, sanctions, contempt, professional-fee review, disqualification, independent-action relief, fraud-on-the-

court relief, claim-objection relief, and relief against the Trustee's bond based on the evidence developed;

29. alternatively, if the Court concludes that it cannot grant immediate relief because of the appeal posture, entering an indicative ruling under Bankruptcy Rule 8008 stating that the Court would grant the motion or that the motion raises a substantial issue; and

30. granting such other and further relief as is just and proper.

Dated: July 2, 2026

Respectfully submitted,

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2026, I caused the foregoing DEBTOR'S MOTION TO VACATE JULY 3, 2025 SETTLEMENT ORDER PURSUANT TO FED. R. CIV. P. 60(b)(1), 60(b)(2), 60(b)(3), 60(b)(4), 60(b)(5), AND 60(b)(6), MADE APPLICABLE BY FED. R. BANKR. P. 9024, PRESERVING RELIEF UNDER FED. R. CIV. P. 60(d)(1) AND 60(d)(3), AND REQUEST FOR INDICATIVE RULING UNDER FED. R. BANKR. P. 8008, together with all exhibits, to be filed with the Clerk of the Bankruptcy Court and a true and correct copy of same was served upon all parties registered to receive service by CM/ECF, including the following:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

_____
Gregory B. Myers, *pro se*